IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DONALD S. WILLEY, ET AL., | * | |
| *Plaintiffs*, | * | |
| v. | * | No. 1:23-cv-02299-ELH |
| ANTHONY G. BROWN, ET AL., | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

# DEFENDANTS ANTHONY G. BROWN AND JAMES W. PHILLIPS, JR.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

ANTHONY G. BROWN
Attorney General of Maryland

ROBERT A. SCOTT
Federal Bar No. 24613
RYAN R. DIETRICH
Federal Bar No. 27945
JOSHUA R. CHAZEN
Federal Bar No. 06837
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland  21202
rscott@oag.state.md.us
410-576-7055

October 13, 2023                                      Attorneys for Defendants

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................. 1

STATUTORY BACKGROUND .......................................................................................... 2

PROCEDURAL BACKGROUND ....................................................................................... 4

STANDARD OF REVIEW ................................................................................................... 5

ARGUMENT .......................................................................................................................... 6

I.  PLAINTIFFS' CLAIMS FOR DAMAGES AGAINST ATTORNEY GENERAL BROWN AND SHERIFF PHILLIPS IN THEIR OFFICIAL CAPACITIES ARE NOT VIABLE. ............. 6

II. ELEVENTH AMENDMENT IMMUNITY BARS PLAINTIFFS' DAMAGE CLAIMS AGAINST ATTORNEY GENERAL BROWN AND SHERIFF PHILLIPS IN THEIR OFFICIAL CAPACITIES. ................................................................................................ 8

III. THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS AGAINST SHERIFF PHILLIPS IN HIS INDIVIDUAL CAPACITY BECAUSE HE MAINTAINS QUALIFIED IMMUNITY. .................................................................................................................. 10

IV. PLAINTIFFS' CLAIMS AGAINST DEFENDANTS BROWN AND PHILLIPS FURTHER FAIL TO STATE A CLAIM UPON WHICH THE COURT CAN GRANT RELIEF. ........................................................................................................................ 12

    A.  Plaintiffs Failed to State a Claim That Defendants Brown and Phillips Violated the Fourth Amendment. ............................................................... 12

    B.  Plaintiffs Failed to State a Claim That Defendants Brown and Phillips Violated the Second Amendment. ............................................................. 13

    C.  Mr. Willey Failed to State a Claim That He is a Class of One under the Equal Protection Clause of the Fourteenth Amendment. ....................... 13

CONCLUSION ................................................................................................................... 16

## INTRODUCTION

In 2010, the Supreme Court in *McDonald v. City of Chicago* assured the States that, consistent with historical tradition, "experimentation with reasonable firearms regulations [may] continue under the Second Amendment." 561 U.S. 742, 785 (2010). Along with 20 other States and the District of Columbia, Maryland heeded that call in 2018 when it enacted House Bill 1302, which established a process by which a petitioner could seek an "extreme risk protective order" ("ERPO") preventing a respondent, for a limited time, from purchasing or possessing a firearm. *See* Md. Code Ann., Pub. Safety §§ 5-601 – 5-610 (LexisNexis 2022). True to the substantive limitations of the Second Amendment, the ERPO laws challenged here are designed to provide a mechanism to "ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111, 2138 n.9 (2022). And because this vital public safety measure fulfills that objective with appropriate procedural guardrails, and without imposing any constitutionally significant burdens on any law-abiding, responsible Maryland gun owner, it is constitutional. Thus, plaintiffs fail to state a claim upon which the Court can grant relief. Further, plaintiffs' request for damages does not comport with law. Plaintiffs' claims fail for the additional reason that the government actors have Eleventh Amendment and qualified immunity. Therefore, the Court should grant defendants Anthony G. Brown and James W. Phillips, Jr.'s motion to dismiss and dismiss the complaint with prejudice as to any claims asserted against them.

## STATUTORY BACKGROUND

An ERPO is a civil protective order. Pub. Safety § 5-601; *see also United States v. Somerlock*, 602 F. Supp. 3d 791, 804-06 (D. Md. 2022). Modeled on domestic violence protective orders,[1] Maryland's statutory scheme allows a state judge or state district court commissioner to enter an ERPO "to prohibit the respondent from possessing a firearm," if the judge or commissioner "finds that there are reasonable grounds to believe that the respondent poses an immediate and present danger of causing personal injury to the respondent, the petitioner, or another by possessing a firearm." Pub. Safety §§ 5-603, 5-604.

An ERPO petition must (1) set forth "specific facts" as to why the respondent poses a danger, (2) explain the basis for the petitioner's knowledge, and (3) describe any known firearms believed to be possessed by the respondent. *Id*. § 5-602(a)(1)(iii) (v). A petitioner files a petition for an ERPO under the penalty of perjury. *Id*. § 5-602(a)(1)(i).

Not just anyone can file a petition for an ERPO. The law requires instead that a petition may only be filed by a physician, psychologist, licensed clinical professional counselor, licensed clinical marriage or family therapist, law enforcement officer, cohabitant of the respondent, or a person related to the respondent by blood, marriage, or adoption. *Id.* § 5-601(e)(2).

---

[1] *See* Md. Code Ann., Family Law §§ 4-504 — 4-512.1 (LexisNexis 2019); *see also* Fiscal and Policy Note – Revised, House Bill 1302 (2018) ("The bill is modeled on statutory provisions that set forth a process by which an individual may seek relief from abuse by filing a petition for a domestic violence protective order.").

2

Generally, the petitioner files the petition with the state district court. *Id.* § 5-602(b)(1). However, if the state district court is closed, the petitioner files the petition with a state district court commissioner. *Id.* § 5-602(b)(2). In this instance, the commissioner may enter an interim ERPO, which lasts no more than two business days and is followed during that time by a hearing on a temporary ERPO. *Id.* § 5-603. Otherwise, a state district court judge may enter a temporary ERPO, which lasts no more than seven days and is followed during that time by a hearing on a final ERPO. *Id.* § 5-604. Following the entry of an interim or temporary ERPO, the respondent shall surrender to law enforcement authorities any firearm and ammunition in the respondent's possession and shall not purchase or possess any firearm or ammunition for the duration of the interim or temporary ERPO. *Id.* §§ 5-603(a)(3), 5-604(a)(3).

Although a district court judge can enter a temporary ERPO *ex parte*, a judge shall provide respondent with an opportunity to be heard on the issue of whether the court should enter a final ERPO. *Id.* § 5-605(a). At the hearing on the determination of entry of a final ERPO, the judge may enter a final ERPO "to prohibit the respondent from possessing a firearm if the judge finds by clear and convincing evidence that the respondent poses a danger of causing personal injury to the respondent, the petitioner, or another by possessing a firearm." *Id.* § 5-605(c)(1)(ii). In making this determination, the court can review all relevant open and shielded court records involving the petitioner and respondent. *Id.* § 5-605(d)(1). The duration of a final ERPO may not exceed one year. *Id*. § 5-605(f)(1).

3

## PROCEDURAL BACKGROUND

On August 28, 2023, plaintiffs, Donald S. Willey and the Second Amendment Foundation, filed their first amended complaint (the "amended complaint"). (ECF 5.) Plaintiffs assert a widespread challenge to Maryland's laws regarding ERPOs under the Second, Fourth, and Fourteenth Amendments, as well as malicious use of process under Maryland law. (ECF 5, at 24-40.) Plaintiffs bring this action against four defendants: Anthony G. Brown, in his official capacity as Attorney General of Maryland; James W. Phillips, Jr., personally and in his official capacity as Sheriff of Dorchester County, Maryland; Dorchester County, Maryland; and Susan E. Webb, personally and in her official capacity as Director of Planning and Zoning for Dorchester County, Maryland. This motion to dismiss is brought on behalf of Attorney General Brown and Sheriff Phillips only.

In Count One, plaintiffs challenge the ERPO laws under the Fourth Amendment. They claim that, because an ERPO is equivalent to a warrant in that it permits the seizure of a respondent's firearms, such an order may issue only upon a finding of "probable cause." (ECF 5 at 24 ¶ 90.) Plaintiffs then point out that the ERPO laws allow the entry of an interim or temporary ERPO on a finding of "reasonable grounds," and in turn argue that this standard is constitutionally deficient because it "is lower than the constitutionally required 'probable cause' standard." (ECF 5 at 27-28 ¶ 99.) In addition, plaintiffs argue that the ERPO laws violate the Fourth Amendment because they "authorize searches and seizures based upon [a] finding of a subjective and undefined forbidden personal characteristic of the targeted individual (being a 'danger'), rather than upon an alleged

4

objective and defined underlying violation of one or more laws." (ECF 5 at 28 ¶ 100 (emphasis omitted).) Plaintiffs assert Count One against all defendants.

In Count Two, plaintiffs challenge Maryland's ERPO laws as violating the Second Amendment. (ECF 5 at 30-36 ¶¶ 107-29.) Relying on the principles set forth in *Bruen*, plaintiffs argue that the ERPO laws are unconstitutional because there was no distinctly similar historical analogue at the time of the Founding that authorized the disarming of dangerous individuals. (ECF 5 at 35 ¶ 125.) Plaintiffs assert Count Two against all defendants.

In Count Four, Mr. Willey claims that this is a "class-of-one" equal protection case and asserts a violation of the Fourteenth Amendment. (ECF at 38 ¶¶ 133-34.) Mr. Willey claims that defendants treated him differently from others similarly situated without rational basis for disparate treatment and was the only citizen of Dorchester County intentionally targeted by defendants. (ECF 5 at 38 ¶ 134.) Mr. Willey asserts Count Four against defendants Webb, Phillips, and Dorchester County.

Counts Three, Five and Six are asserted against Dorchester County, Maryland and Susan E. Webb, personally and in her official capacity as Director of Planning and Zoning for Dorchester County, Maryland (the "County Defendants") only and are therefore not the subject of this motion to dismiss.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its

5

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations "must be enough to raise a right to relief above the speculative level." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 71 (4th Cir. 2016) (citation omitted). Although the Court must "take the facts in the light most favorable to the plaintiff," it "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Wag More Dogs, Ltd. Liability Corp. v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (citation and internal quotation marks omitted). Nor may the Court credit "'naked assertions devoid of further factual enhancement.'" *United States ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

### I. PLAINTIFFS' CLAIMS FOR DAMAGES AGAINST ATTORNEY GENERAL BROWN AND SHERIFF PHILLIPS IN THEIR OFFICIAL CAPACITIES ARE NOT VIABLE.

Plaintiffs assert Counts One and Two against defendants Attorney General Brown and Sheriff Phillips, and further assert Count Four against defendant Phillips.[2] Plaintiffs further assert these counts as violations of 42 U.S.C. § 1983. As part of their requested relief for Counts One, Two, and Four, plaintiffs ask for compensatory, punitive, and/or nominal damages, as well as attorneys' fees and costs. (ECF 5 at 40.) However, defendants Brown and Phillips cannot be sued for damages in their official capacities under § 1983.

---

[2] Plaintiffs also assert all counts against defendants Webb and Dorchester County.

Thus, the Court should dismiss claims for damages against Attorney General Brown and Sheriff Phillips in their official capacities.

> Section 1983 states:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . .

42 U.S.C. § 1983

Accordingly, claims brought pursuant to § 1983 apply only to "persons." Neither "a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). In *Will*, a State of Michigan employee sued the state police and the director of state police for alleged violations of the Michigan Constitution and the United States Constitution. *Id.* at 60. The Supreme Court, in upholding the Michigan Supreme Court's dismissal of the state police and director, explained that when Congress enacted § 1983, Congress did not intend to override well-established immunities under the common law, including the well-established sovereign immunity of a State. *Id.* at 67. The court further explained that, although the Director of State Police was a person in the most literal sense, a "suit against a state official in his or her official capacity is not a suit against the official but is rather a suit against the official's office," and as such, "is no different from a suit against the State itself." *Id.* at 70-71.

Consequently, plaintiffs cannot maintain a § 1983 against defendants Brown and Phillips in their official capacities for monetary damages. *Id.*; *see also Manikhi v. Mass*

7

*Transit Admin.*, 360 Md. 333, 360 (2000) (holding that Maryland state agency was not a "person" under § 1983); *Ritchie v. Donnelly*, 324 Md. 344, 355 (1991) (stating that "an action for money damages under § 1983 cannot be maintained against a state, state agency, or a state official sued in his official capacity"). And while there are limited circumstances in which sheriffs in Maryland may be considered a county official, *see Santos v. Frederick County Bd. of Comm'rs*, 346 F. Supp. 3d 785, 792-98 (D. Md. 2018), that is not the case here where the allegations are that Sheriff Phillips was enforcing state law. *See McMillian v. Monroe County, Ala.*, 520 U.S. 781, 790 (1997). For these reasons, the Court should dismiss Counts One, Two, and Four against defendants Brown and Phillips in their official capacities to the extent those counts seek damages.

## II. ELEVENTH AMENDMENT IMMUNITY BARS PLAINTIFFS' DAMAGE CLAIMS AGAINST ATTORNEY GENERAL BROWN AND SHERIFF PHILLIPS IN THEIR OFFICIAL CAPACITIES.

Plaintiffs' claims for damages against Attorney General Brown and Sheriff Phillips in their official capacities must also be dismissed because the Eleventh Amendment of the United States Constitution bars a suit in federal court against a State, one of its agencies or departments, or one of its officials acting in an official capacity, without a valid abrogation or waiver of the State's sovereign immunity. U.S. CONST. amend. XI; *see also Puerto Rico Aqueduct and Sewer Auth. v. Metcalfe and Easy, Inc.*, 506 U.S. 139, 144-45 (1993); *Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989); *Pennhurst State Sch. & Hosp. v. Haldeman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). "The ultimate guarantee of the Eleventh

8

Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Board of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356, 363 (2001). "A State's constitutional interest in immunity encompasses not merely whether it may be sued, but where it may be sued." *Pennhurst,* 465 U.S. at 99.

Although Maryland waived its sovereign immunity for certain actions brought in its state courts under the Maryland Torts Claims Act, Md. Code Ann., State Gov't §§ 12-101 – 12-110, it has not waived its immunity under the Eleventh Amendment for suits in federal courts. *Dixon v. Baltimore City Police Dep't*, 345 F. Supp. 2d 512, 513 (D. Md. 2003). And Maryland did not waive sovereign immunity in this case. Nor did defendants Brown or Phillips have their sovereign immunity abrogated by any of the claims for damages asserted in the amended complaint. Since this suit names Attorney General Brown, in his official capacity as Attorney General for the State of Maryland, and Sheriff Phillips, in his official capacity as Sheriff of Dorchester County, as defendants, the Eleventh Amendment bars plaintiffs from prosecuting damage claims against them in federal court. *Puerto Rico Aqueduct and Sewer Auth.*, 506 U.S. at 144-45; *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997) ("We believe that, because of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte*."). Thus, this court should dismiss the claims for damages in Counts One, Two and Four against Attorney General Brown and against Sherriff Phillips in his official capacity.

### III. THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS AGAINST SHERIFF PHILLIPS IN HIS INDIVIDUAL CAPACITY BECAUSE HE MAINTAINS QUALIFIED IMMUNITY.

Plaintiffs' § 1983 claim against Sheriff Phillips in his personal capacity in Count Four also fails because Sheriff Phillips is protected by qualified immunity. None of the actions alleged by Sheriff Phillips in the amended complaint violated any clearly established constitutional rights of which a reasonable public official would have known. In fact, the plaintiffs allege no specific actions by Sheriff Phillips at all. Rather, the amended complaint alleges that the service of the ERPO in this case was performed by "deputies." (ECF 5 at 20-21 ¶¶ 73-77.)

In addition, the alleged actions of Sheriff Phillips' deputies in carrying out the court orders were objectively reasonable, "assessed in light of the legal rules that were clearly established at the time [the action] was taken.'" *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) (quoting *Anderson v. Creighton*, 483 US. 635, 639 (1987)). Even assuming the truth of the allegations asserted, Sheriff Phillips' actions did not violate any clearly established constitutional right of which a reasonable public official would have known. Therefore, Sheriff Phillips is entitled to qualified immunity.

Here, plaintiffs have not identified any clearly-established right that Sheriff Phillips violated. For purposes of determining qualified immunity, law is clearly established if it "has been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state." *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998), *affirmed*, 526 U.S. 603 (1999). "The contours of the right must be sufficiently clear that a reasonable person would understand that what he is doing violates

that right." *Wilson*, 526 U.S. at 614-15 (quoting *Anderson*, 483 U.S. at 640). The Supreme Court has emphasized "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)). Rather, 'the dispositive question is whether the violative nature of *particular* conduct is clearly established.'" *Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892, 907 (4th Cir. 2016) (emphasis in original) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). For qualified immunity not to attach, the unlawfulness of the conduct must be "beyond debate." *White*, 580 U.S. at 79 (citation omitted). "In other words, immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.*

In the context of an unchallenged law, when a sheriff's office takes immediate and legally sound steps to effectuate the purposes of a properly issued and facially valid judicial order, the law entitles him or her to qualified immunity. Given the status of Maryland's ERPO laws at the time Sheriff Phillips' office acted, and the quickly evolving rights afforded to law-abiding, responsible citizens under the Second Amendment, Sheriff Phillips is entitled to qualified immunity. *See*, *e.g.*, *Hulbert v. Pope*, 70 F.4th 726, 729 (4th Cir. 2023) (holding that police officer was entitled to qualified immunity as a matter of law against First and Fourth Amendment claims after he ordered protestors to move back a short distance, and arrested them when they failed to do so, because any unlawfulness of officer's order was not clearly established); *Lefemine v. Wideman*, 672 F.3d 292, 301 (4th Cir. 2012) (holding sheriff's department employees entitled to qualified immunity for asking protestors to remove large, graphic pictures because applicable case law was

11

"ambiguous" at the time) (overruled on other grounds by *Lefemine v. Sideman*, 568 U.S. 1 (2012)); *see also Burgess v. Town of Wallingford*, 569 Fed. Appx. 21, 23 (2d Cir. 2014) (holding law enforcement officers entitled to qualified immunity because the alleged constitutional right violated, the right to carry a gun openly in public, was not clearly established law); *Sandberg v. Englewood*, 727 Fed. Appx. 950, 961-62 (10th Cir. 2018) (same).

### IV. PLAINTIFFS' CLAIMS AGAINST DEFENDANTS BROWN AND PHILLIPS FURTHER FAIL TO STATE A CLAIM UPON WHICH THE COURT CAN GRANT RELIEF.

In addition to the reasons stated above, the Court should dismiss Counts One, Two, and Four as to defendants Brown and Phillips because plaintiffs fail to state a claim as to each of those counts.

#### A. Plaintiffs Failed to State a Claim That Defendants Brown and Phillips Violated the Fourth Amendment.

Defendants hereby incorporate the arguments relating to Count I made in their opposition to motion for preliminary injunction, filed contemporaneously with this motion. (ECF 24 at 8-12.) The ERPO laws do not violate the Fourth Amendment because the statutory standard of "reasonable grounds" is, under Maryland law, synonymous with "probable cause." Accordingly, because an ERPO may issue only upon probable cause notwithstanding the statutes' use of the phrase "reasonable grounds," Maryland's ERPO laws pass constitutional muster. Furthermore, plaintiffs' claim that the ERPO laws impermissibly rely on a finding that a respondent is a "danger" ignores the fact that

predictive judgments, like the one inherent in an ERPO, are commonplace in the law, including in the context of the Second Amendment.

### B. Plaintiffs Failed to State a Claim That Defendants Brown and Phillips Violated the Second Amendment.

Defendants hereby incorporate the arguments relating to Count II made in their opposition to motion for preliminary injunction. (ECF 24 at 12-22.) The ERPO laws do not run afoul of the Second Amendment because they are consistent with this Nation's historical tradition of allowing the government to disarm individuals that are properly deemed to be dangerous.

### C. Mr. Willey Failed to State a Claim That He is a Class of One under the Equal Protection Clause of the Fourteenth Amendment.

Plaintiffs' equal protection claim in Count Four against Sheriff Phillips under § 1983 fails because the amended complaint does not allege that Sheriff Phillips had any personal involvement in the enforcement of the ERPO against Willey. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section.") (quotation marks and citation omitted). Here, plaintiffs allege only that some deputies from Sheriff Phillips' office went to Willey's house to serve and enforce the ERPO and emergency evaluation order issued by the court. (ECF 5 at 20-21 ¶¶ 73-77.) That is not sufficient to state a § 1983 claim against Sheriff Phillips because he is not alleged to have personally participated. *Wright*, 766 F.2d at 850.

13

The equal protection claim against Sheriff Phillips also fails because the amended complaint does not allege facts showing that Sheriff Phillips treated Mr. Willey differently than other similarly situated citizens.

The Supreme Court has recognized that "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601-02 (2008); *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (explaining that a "class of one" claim exists where "plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment").

To state a class-of-one equal protection claim, a plaintiff must allege that she has been treated differently than others who are similarly situated. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). To establish that others are similarly situated, a plaintiff "'must show an extremely high degree of similarity between [herself] and the persons to whom [she] compare[s]' herself." *Willis v. Town of Marshall*, 275 F. Ap'x 227, 233 (4th Cir. 2008) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)). "The 'similarly situated' standard requires a plaintiff to identify persons materially identical to him or her who has received different treatment." *Just Puppies, Inc. v. Frosh*, 565 F. Supp. 3d 665, 731 (D. Md. 2021) (citation omitted).

In this case, the facts alleged in the amended complaint demonstrate that Sheriff Phillips had *nothing to do with* the decision to issue an ERPO against Mr. Willey. Rather,

14

the ERPO was issued by the court in response to a petition filed by Ms. Webb. (ECF 5 at 17-20, ¶¶ 63-72.) Accordingly, to the extent Mr. Willey's equal protection claim is based on the theory that he was unfairly singled out because of his disputes with county government, that alleged violation was not the result of any action by Sheriff Phillips, and his claim against Sheriff Phillips fails as a matter of law.

To the extent that Mr. Willey's equal protection claim is based on the theory that Sheriff Phillips treated him differently in the manner the ERPO was served, that claim also fails because the amended complaint does not identify anyone else against whom the court issued an ERPO, let alone allege that Sheriff Phillips treated such others differently than Mr. Willey. As a result, the amended complaint alleges no unequal treatment by Sheriff Phillips and fails to state a valid claim for an equal protection violation.

The amended complaint alleges that the District Court of Maryland in Dorchester County issued a temporary ERPO requiring him to surrender his firearms and undergo an involuntary mental health evaluation, "and directing law enforcement to serve and enforce the ERPO." (ECF 5 at 20 ¶ 72.) Mr. Willey further alleges that several sheriff's deputies came to his house later that day to seize his guns and ammunition and to take him to a local medical center for the mental health evaluation. (ECF 5 at 20-21 ¶¶ 73-77.) But Mr. Willey fails to allege that any other person that was subject to a similar ERPO was treated any differently.

The amended complaint alleges that the appropriate "similarly situated" individuals for purposes of his equal protection claim, are "other citizens of Dorchester County or Fishing Creek" who "received, and later contested, citations or notices of infractions under

15

the County Code," and that Mr. Willey was "intentionally targeted" by Sheriff Phillips "with involuntary confinement and service and enforcement of the" ERPO. (ECF 5 at 38 ¶ 134.) But, as shown above, Sheriff Phillips had no role in deciding to issue the ERPO. That decision was made by the court. Further, other residents of Dorchester County who received zoning citations but were not the subject of an ERPO are not, by definition, similarly situated with respect to the manner in which an ERPO was served because those residents were never served with an ERPO.

## CONCLUSION

Defendants Brown and Phillips' motion to dismiss should be granted.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland


/s/ Robert A. Scott
_____
ROBERT A. SCOTT
Federal Bar No. 24613
RYAN R. DIETRICH
Federal Bar No. 27945
JOSHUA R. CHAZEN
Federal Bar No. 06837
Assistant Attorneys General
200 Saint Paul Place
20th Floor
Baltimore, Maryland  21202
rscott@oag.state.md.us
410-576-7055

October 13, 2023                                    Attorneys for Defendants

16