IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| DONALD S. WILLEY, ET AL. | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: 1:23-CV-2299-ELH |
| ANTHONY G. BROWN, ET AL. | * | |
| Defendants. | * | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Dorchester County (the "County") and Susan Webb, by undersigned counsel, pursuant to Local Rule 105.1, submit this Memorandum in support of their Motion to Dismiss.

### I. Introduction

Plaintiffs' assert legal claims related to the issuance of an Extreme Risk Protective Order ("ERPO") under state law against Plaintiff. The County Planning and Zoning Officer submitted a Petition for the ERPO which was granted on June 15, 2023, based on her submission and testimony regarding threats against her and her staff about which she had been warned by others. At the follow up hearing on June 22, 2023, the Court dismissed the case upon the request of Petitioner which did based on an agreement that future contacts regarding Mr. Willey's compliance issues would be through Mr. Willey's counsel.

The Amended Complaint contains the following Counts:

> Count I-Violation of Fourth and Fourteenth Amendment-42 U.S.C. § 1983
> Count II-Violation of Second and Fourteenth Amendment- 42 U.S.C. §1983
> Count III-Violation of First and Fourteenth Amendment- 42 U.S.C. § 1983
> Count IV- Violation of Fourteenth Amendment- 42 U.S.C. § 1983 (Equal Protection Class of One)
> Count V- Violation of Fourteenth Amendment- 42 U.S.C. § 1983 (Stigma Plus)
>  Count VI-Malicious Use of Process

Plaintiffs' have mounted a challenge to a Maryland statute they refer to as the "red flag law" that is codified at Public Safety Article, 5-601, et seq. of the Maryland Annotated Code. The unfortunate vehicle they have selected for their constitutional challenge to the statute is the Extreme Risk Protective Order ("ERPO") issued regarding Mr. Willey based upon Ms. Webb's Petition and hearing testimony. Neither the County nor Ms. Webb deserved to be dragged into this litigation and unfairly maligned the way they have been. The case should be dismissed as to these Defendants for two fundamental reasons, as well as others.

First, there is absolutely no basis to contend that it was clearly established that the statute was unconstitutional at the time Ms. Webb filed under it. The Attorney General is tasked with defending the constitutionality of Maryland statutes like the one at issue. These Defendants hereby incorporate herein the legal defense of the statute contained in the State's Opposition to Motion for Preliminary Injunction and in support of its Motion to Dismiss and will not belabor that matter further herein.

Second, as a matter of law, the temporary ERPO was properly granted based on Ms. Webb's truthful testimony, which is easily discerned from the recording of that proceeding. For yet additional reasons, the Amended Complaint generally fails to state a claim against these Defendants.

## II. Motions to Dismiss

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the Rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 n.3 (2007) (citation omitted). A complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient under the Rule. *Twombly,* 550 U.S. at 555-56.

A defendant may test the adequacy of a complaint by way of a motion under Rule 12(b)(6). *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008). In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face.*"* *Twombly*, 550 U.S. at 570; see *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions . . . .'" (citation omitted)); *see also Simmons v. United Mortgage and Loan Inv.,* 2011 WL 184356, *10 (4th Cir. Jan. 21, 2011); *Andre v. Clark*, 561 F. 3d 261, 266 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F. 3d 298, 302 (4th Cir. 2008).

In resolving a Rule 12(b)(6) motion, the court is not required to accept legal conclusions drawn from the facts. See *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.,* 579 F. 3d 380, 385-86 (4th Cir. 2009). To satisfy the minimal requirements of Rule 8(a)(2), however, the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. Thus, where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (citation omitted).

Applying these principles here, establishes that the claims against the County and Ms. Webb should be dismissed.

**III. Argument**

A. The County and Ms. Webb Committed No Unlawful Act

Plaintiff's claim against the County and Ms. Webb comes down to the speculation that at the County's behest Ms. Webb made up a story out of thin air to secure an ERPO to vex Mr. Willey. This comes from a misreading of the bare bones ERPO form; and was obviously uninformed by the evidentiary basis presented to the Court on which it properly granted the temporary ERPO. A review of the hearing transcript eradicates Plaintiffs' speculated wrongdoing by these Defendants.

At the ERPO hearing for the temporary order, Ms. Webb testified as follows:

4

      So we have a zoning violation case on a property—private property that he owns. We've got a court order for it to be complied with by the end of May that wasn't done so we're currently in the process of getting contractors to clean it. It is a very extreme case. My last visit there he became violent. Didn't make any threats at that point. Mr. Bennett is here. He is my zoning inspector. He is a witness to all of this. Since then, on Thursday the 8th we got a call from one of the contractors that we have asked to give us a bid that he was approached by several residents neighbors that he is threatening to kill anybody that comes there from the county, that he is prepared. The next day I got a call from a counsel person that he was told personally by Mr. Willey that he was planning on shooting me at the property that he was already waiting and then I got a call Monday from his neighbor and she said she felt she needed to warn me about what he is saying throughout the community that he is waiting. He is waiting for us to come and he is waiting to kill me and anybody else from the department that comes. So I am concerned about the safety of my staff.

*See*, Transcript attached as Exhibit 1 at pp. 2-3.[1]

      The ERPO was properly granted.

---

[1] The County submits this exhibit can be considered in conjunction with this Motion to Dismiss under Rule 12(b)(6). *See*, *Phillips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (On Motion to Dismiss "we may properly take judicial notice of matters of public record. . . We may also consider documents attached to the complaint, *see* Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic. *See Blankenship v. Manchin*, 471 F.3d 523, 526 n. 1 (4th Cir. 2006)." "A court may also 'consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity.' *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558, 199 L. Ed. 2d 447 (Dec. 11, 2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012)." *See*, *Fusaro v. Davitt*, 327 F.Supp. 3d 907, 916, 2018 U.A. Dist. LEXIS 149851, *17-18, 2018.

Ms. Willey's filing of the Petition stemmed from the advice of the Office of States' Attorney upon learning that multiple citizens from different places had taken it upon themselves to warn Ms. Webb and her staff member that Mr. Willey had made specific threats to use firearms against County Planning and Zoning staff. *See*, Exhibit 1 at 4 ("I spoke to the state's attorney shortly ago before I came here. She advised me to come over and go through this procedure …"). The varied sources of warnings regarding threats by Mr. Willey included a neighbor, a potential cleanup contractor who declined interest due in large part to learning from neighbors of threats Plaintiff had made against County staff and a County Councilman.

Plaintiffs speculate and argue that the Court relied on a standard less than probable cause to issue the ERPO. Again, the transcript does not support Plaintiffs' speculation. The Court ruled that "[c]ourt finds that the Respondent posed an immediate and present danger to cause personal injury to the Petitioner and others." Exhibit 1 at 4. The District Court Judge later went on to *sua sponte* order an emergency mental health evaluation as follows:

> Having found probable cause under Title 10, subtitle 6 of the (inaudible) shown symptoms of a mental disorder and present a danger to the life and safety of themselves or others. The Court refers the Defendant for an emergency evaluation as well.

*See,* Exhibit 1 at 6. For the foregoing reasons and those below, all Counts should be dismissed as to these Defendants.

Count One alleges unlawful seizure based on the Fourth Amendment and an alleged lack of probable cause for the seizure. In fact, as shown above the Court believed there was probable cause. *See*, Exhibit 1 at 4 and 6.

Count Two alleges infringement of Second Amendment rights. Ms. Webb had no reason to believe the statute under which she was advised to proceed was unconstitutional. For the reasons stated in the State's briefing, it is not. But even if it were to be held unconstitutional, it was certainly not clearly established and Ms. Webb would be entitled to qualified immunity. *See*, *City and Cnty. Of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015).[2]

Count Three alleges retaliation for Mr. Willey exercising his constitutional rights to petition government by challenging citations and his freedom of speech to call Ms. Webb "stupid." Amended Complaint at 132. On the basis stated above regarding the reasons and actions of Ms. Webb in seeking the ERPO, there is no plausible claim that it was the product of unlawful retaliation.

Count Four alleges violation of the Equal Protection Clause asserting that Plaintiff Willey is a class of one who was treated differently than others. Interestingly, Count Four indicates that others were treated similarly and also challenged citations, except that they did not experience an ERPO filing. The

---

[2]"Public officials are immune from suit under 42 U.S.C. 1983 unless they have 'violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'" This lawsuit challenging the validity of the statute and the 39-page Amended Complaint and 37-page Motion for Preliminary Injunction reinforce that the alleged invalidity of the statute was not "sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it." *Id.* (internal citations omitted).

Amended Complaint does not specify any violations that were similar to Plaintiff Willey's.[3] There is no plausible claim, given the materially distinguishing feature of the threats by Mr. Willey that were reported to Ms. Webb.

Moreover, the Supreme Court's decision in *Engquist v. Oregon Department of Agriculture*, 555 U.S. 591 (2008) calls into question the vitality of a "class of one" equal protection claim itself. In *Mathis v. McDonough*, 2014 U.S. Dist. LEXIS 108699 the District Court noted this question in the context of discretionary government decision-making. *Id.* at *74.

Even if the claim continues to exist, Plaintiff would need to show that "he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" by alleging enough factual matter to plausibly show that there was not any conceivable basis that rationally supported enforcement of the" provisions at issue). *Id.* citing *Rapp V. Dutcher*, 557 F.App'x 444, 449 (6th Cir. 2014). Given the failure to comply with the Consent Order (Amended Complaint, Exhibit E) and the communications regarding threats that form context of the ERPO, Plaintiffs have not pled plausible factual matter to show similarity or the lack of rationality for enforcement and therefore has not stated a plausible claim for relief. In fact, he admits that others

---

[3] Given the focus on the red flag law, it is unclear whether Plaintiffs attempt to make an independent claim for selective enforcement. The repeated notices of violation and failure to correct them on multiple of Mr. Willey's properties tell their own story; but if Plaintiffs are truly pursuing this as an independent claim and actually suggesting the violations were "de minimis" these Defendants will then have no reasonable choice but to burden this record with the photographs of the property.

8

were issued citations and challenged them, but there is no suggestion that those persons also failed to comply with an order or made threats in the community against Ms. Webb or any other County employee who would come to their property.

Count Five alleges a "stigma plus" claim that Mr. Willey was stigmatized by being characterized as a danger. However, as the transcript elucidates, Ms. Webb only repeated the information regarding threats that were credibly reported to her from multiple varied sources. Plaintiffs also complain of Mr. Willey being sent for a mental health evaluation. Ms. Webb did not even suggest such an evaluation and the Court ordered it *sua sponte* after expressly finding probable cause to do so. *See*, Exhibit 1 at 6.

Count Six alleges Malicious Use of Process. The elements of this tort are:

1. A prior civil proceeding was instituted by the defendant.
2. The proceeding was instituted without probable cause.
3. The proceeding was instituted with malice.
4. The proceeding terminated in favor of the plaintiff.
5. Damages were inflicted upon the plaintiff by arrest or imprisonment, by seizure of property, or other special injury which would not necessarily result in all suits prosecuted to recover for a like cause of action."

*See,* Berman v. Karvounis, 308 Md. 259, 266 (1987), citing *Keys v. Chrysler Credit Corp.*, 303 Md. at 407, 494 A.2d at 205; *see also Wesko v. G.E.M., Inc.*, 272 Md. at 197, 321 A.2d at 532; *Hooke v. Equitable Credit Corp.*, 42 Md.App. 610, 612-613, 402 A.2d 110 (1979); and *Maryland Tort Law, supra*, § 5.1.

This claim should be dismissed at this stage for two alternative reasons. First, there was probable cause. Second, the matter was not terminated in Mr. Willey's favor, but was dismissed at the request of Ms. Webb based on an agreement of the parties that future contacts regarding Mr. Willey's compliance issues would occur through his counsel. *See*, Exhibit 2, transcript of June 22, 2023 hearing, at 3.[4]

There are additional alternative reasons for dismissal identified below.

### B. The County is Immune from Liability for The Alleged State Law Tort of Malicious Use of Process in Count Six

Plaintiffs seek to hold the County vicariously liable under *respondeat superior* liability for Count Six, Malicious Use of Process. As Plaintiffs claim seeking an ERPO was a governmental act, this Count should also be dismissed on the grounds of governmental immunity.

In ordinary tort actions, municipalities are immune from suit with respect to non-constitutional torts when they exercise "governmental" rather than "proprietary" or "corporate" functions. *Anne Arundel County v. McCormick*, 323 Md. 688, 695 (1991). This governmental immunity is available against all claims arising from the performance of a governmental function, regardless of the particular theory. Thus, governmental immunity is equally available against a

---

[4]THE COURT: And this matter is scheduled for extreme risk protective order final hearing. And Ms. Webb, Mr. Dodd (Mr. Willey's attorney) has represented to the court that you're requesting a dismissal. Is that correct?

SUSAN WEBB: Correct. We have made an agreement as far as any communication going forward being handled.

claim for general negligence as it is against a negligence claim rooted in allegations of negligent hiring, training, supervision, or retention. *See, e.g.*, *Livesay v. Baltimore, supra,* 384 Md. 1, 20 (2004)(County entitled to governmental immunity in action alleging that County, through the alleged acts or omissions of its correctional officers, breached duty of care owed to inmate); *Farrell v. Theurer*, 149 Md. App. 424, 429, *rev'd on other grounds sub nom*. *Theurer v. Farrell*, 376 Md. 65 (2003). Governmental immunity attaches to all government acts even if a plaintiff alleges that the actions were performed with actual malice. *See, Wilkerson v. Baltimore County*, 218 Md. 271, 273 (1958).

Code enforcement by its terms involves the enforcement of law and this case allegedly stems from issuance of citations and other activity related to the enforcement of law. Code enforcement is a governmental function. *See, E. Eyring & Sons v. Baltimore, 253 Md. 380 (*1969*)*. In *E. Eyring & Sons*, the Court quoted with approval from 7 McQuillin, *Municipal Corporations* (3d ed.), Section 24.507 as follows:

> . . . . The enactment and enforcement of
> building codes and ordinances constitute
> a governmental function. The primary purpose of
> such codes and ordinances is to secure to the municipality
> as a whole the benefits of a well-ordered municipal
> government, or, as sometimes expressed, to protect the
> health and secure the safety of occupants of buildings, and
> not to protect the personal or property interests of
> individuals."

*Id.* at 384.

Direct suit against a local government was recently rejected in *Talley v. Anne Arundel County*, 2021 U.S. Dist. LEXIS 17742, 2021 WL 4244759 and has been repeatedly rejected in this District:

> Plaintiff argues the [LGTCA] waives the County's immunity … **This is incorrect.** The Court of Appeals of Maryland has long held that 'the LGTCA does not waive any preexisting immunity against suit held by the local government or its employees." Instead the LGTCA designates a local government as a de-facto "insurer" obligated to indemnify its employees unless they acted with malice or gross negligence. (Emphasis supplied).

*See, Talley* at *17 citing *Rounds v. Maryland-National Cap. Park and Planning Comm'n*, 441 Md. 621, 639 (2015) and *Hansen v. City of Laurel*, 420 Md. 670, 679-80 (2011).

C. The Federal Claims Should Alternatively be Dismissed For Failure to State a Claim

The allegations specified against the County are as follows:

85. As to all claims for relief set forth below, to the extent they are personal to Willey, the deprivations of and infringements upon his fundamental and clearly established constitutional rights occurred pursuant to the official policies or customs of Dorchester County, to wit: selective enforcement of the County Code against Willey and the targeted use of the Webb Petition to retaliate against him for his legal resistance to said selective enforcement. These policies were sanctioned by Webb and by Phillips, as the highest-ranking Code enforcement and state law enforcement officials, respectively, in the County, both of whom had final policymaking authority; and both of whom knew in all instances that Willey had fundamental and clearly established constitutional rights that any objectively reasonable person would have known.[5]

---

[5] The Attorney General's Office has responded to the lawsuit on behalf of the state constitutional officer who serves as the Sheriff for Dorchester County, who is State personnel, rather than a County employee. In Maryland, the Sheriff holds an elected office created by the Maryland Constitution in Article IV, Section 44. For purposes of

12

There is no respondeat superior liability under Section 1983. *See*, *Brooks v. St. Charles Hotel Operating, LLC*, 2023 U.S. Dist. LEXIS 171143, *28, citing *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) ("[T]here is no respondeat superior liability under § 1983." (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (holding that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"))).

In order to present a plausible complaint, and therefore to survive a preliminary motion to dismiss a *Monell* claim, the factual allegations in a complaint must "be enough to raise a right to relief above the speculative level." *See, Twombly,* at 555.

Plaintiff's claim falls short of properly alleging an unconstitutional policy or custom. A plaintiff may demonstrate the existence of an official policy in three ways: (1) a written ordinance or regulation; (2) certain affirmative decisions of policymaking officials; or (3) in certain omissions made by policymaking officials that "manifest deliberate indifference to the rights of citizens." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).

"Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted

---

tort liability, by statute, the sheriff and his deputies are defined State Personnel under the Maryland Tort Claims Act. *See* SG § 12-101(a)(6).

legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Board of Comm'rs of Bryan Cty*, 520 U.S. at 403-04. Here, Plaintiff fails to identify any express written policy that compelled the alleged violation of his constitutional rights. There is no "policy" at issue here as that term is typically understood and these Defendants submit Counts 1-3 do not fit the structure of such a claim. There is no claim of a policy that was generally applied to a class of individuals on some unlawful basis. Plaintiff fails to allege a single example of the unconstitutional conduct other than the one he allegedly experienced.

Plaintiff instead appears to claim that he was singled out and treated differently as an individual, as he lays out in his claims in Counts 4-5 ("Class of One" and "Stigma Plus"). Counts 4-5 fail for the reasons stated earlier in the Memorandum.

## IV. Conclusion

For these reasons, Defendants' Motion to Dismiss the Complaint should be granted as to all counts against the County and Ms. Webb.

Respectfully submitted,

_____/s/_____
William C. Dickerson
Federal Bar No. 10791
Wdickerson@lgit.org
7225 Parkway Drive
Hanover, Maryland 21076
Office (443) 561-1700
Facsimile (443) 561-1701
Counsel for Defendants
Dorchester County and Webb