IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| DONALD S. WILLEY and THE SECOND AMENDMENT FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> ANTHONY G. BROWN, in his official capacity as Attorney General of Maryland, DORCHESTER COUNTY, Maryland, SUSAN E. WEBB, personally and in her official capacity as Director of Planning & Zoning for Dorchester County, Maryland, and JAMES W. PHILLIPS, JR., in his official capacity as Sheriff of Dorchester County, Maryland, <br><br> Defendants. | No.: 1:23-cv-02299-BAH |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS ANTHONY G. BROWN AND JAMES W. PHILLIPS, JR.'S MOTION TO DISMISS**

## **TABLE OF CONTENTS**

I.   INTRODUCTION .......................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 1

   A.  **Plaintiffs Do Not Seek Damages Against Brown or Phillips in Their Official Capacities** ............................................................................................................... 1

   B.  **Phillips, In His Individual Capacity, Is Not Entitled To Qualified Immunity** ........... 2

      1.  **Phillips Violated Clearly Established Law** ................................................... 2

      2.  **Phillips is Liable As A Supervisory Official** ................................................. 5

   C.  **Plaintiffs' Claims Against Defendants Brown and Phillips State A Claim As To Counts One, Two, and Four** ...................................................................................... 6

      1.  **Plaintiffs Have Stated A Claim For Violation Of The Fourth Amendment** ............ 6

      2.  **Plaintiffs Have Stated A Claim For Violation Of The Second Amendment** ........... 9

      3.  **Willey Has Stated A Claim That He Is A Class Of One Under The Equal Protection Clause** ........................................................................................ 10

III. CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

Cases

*Baynard v. Malone*,
  268 F.3d 228 (4th Cir. 2001) .................................................................................................. 5

*Brent v. City of Cumberland Police Department*,
  2023 WL 7132332 (D. Md. Oct. 27, 2023) ............................................................................ 11

*Burley v. Baltimore Police Dep't*,
  422 F. Supp. 3d 986 (D. Md. 2019) ......................................................................................... 5

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ................................................................................................................. 9

*Engquist v. Oregon Department of Agriculture*,
  555 U.S. 591 (2008) ............................................................................................................... 11

*Griffin v. Wisconsin*,
  483 U.S. 868 (1987) ................................................................................................................. 3

*Gustafson v. Alloyd Co.*,
  513 U.S. 561 (1995) ................................................................................................................. 7

*Hibbs v. Winn*,
  542 U.S. 88 (2004) ................................................................................................................... 7

*Illinois v. McArthur*,
  531 U.S. 326 (2001) ................................................................................................................. 3

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010) ................................................................................................................. 9

*Motor Vehicle Administration v. Shepard*,
  399 Md. 241 (2007) ................................................................................................................. 8

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
  142 S. Ct. 2111 (2022) ......................................................................................................... 4, 9

*New Jersey v. T.L.O.*,
  469 U.S. 325 (1985) ................................................................................................................. 4

*Saucier v. Katz*,
   533 U.S. 194 (2001) ............................................................................................................. 11

*Sullivan v. Stroop*,
   496 U.S. 478 (1990) ............................................................................................................... 8

*United States v. Crawford*,
   552 F. App'x 240 (4th Cir. 2014) .......................................................................................... 3

*United States v. Daniels*,
   77 F.4th 337 (5th Cir. 2023) .................................................................................................. 9

*United States v. Jones*,
   60 F.4th 230 (4th Cir. 2023) .................................................................................................. 8

*United States v. Sowards*,
   690 F.3d 583 (4th Cir. 2012) ................................................................................................. 4

*United States v. Taylor*,
   142 S. Ct. 2015 (2022) ........................................................................................................... 7

*Williams v. Taylor*,
   529 U.S. 362 (2000) ............................................................................................................... 7

*Willis v. Town of Marshall, North Carolina*,
   275 F. App'x 227 (4th Cir. 2008) ........................................................................................ 11

*Willowbrook v. Olech*,
   528 U.S. 562 (2000) ............................................................................................................. 11

*Wilson v. Layne*,
   141 F.3d 111 (4th Cir. 1998) ................................................................................................. 2

*Yates v. Terry*,
   817 F.3d 877 (4th Cir. 2016) ............................................................................................... 11

Constitutional and Statutory Provisions

42 U.S.C. § 1988 .......................................................................................................................... 2

MD. CODE ANN., PUB. SAFETY §§ 5-601 et seq. ................................................................... 3, 4, 8

U.S. CONST. amend. IV ............................................................................................................ 3, 9

Other Authorities

HB 1302 ............................................................................................................................... 7

Joseph G.S. Greenlee, *Disarming the Dangerous: The American Tradition of Firearms Prohibitions*,
 16 DREXEL L. REV. (2023) (forthcoming) ................................................................... 10

*Lyles v. Maryland*,
 2020 Md. Sp. App. Ct. Briefs LEXIS 1753 (Md. Sp. App. Ct. June 19, 2020) .......................... 6

**I.      INTRODUCTION**

Plaintiffs Donald S. Willey ("Willey") and The Second Amendment Foundation ("SAF" and, collectively with Willey, "Plaintiffs") hereby submit this Memorandum of Law in Opposition to Defendants Attorney General Anthony G. Brown ("AG Brown") and Sheriff James W. Phillips, Jr.'s ("Phillips" and, collectively with AG Brown, "Defendants") Motion to Dismiss [ECF 25] Plaintiff's First Amended Complaint [ECF 5] (the "FAC").

**II.     ARGUMENT**

As an initial matter, Plaintiffs do not seek damages against Defendants in their official capacities, rendering moot their immunity arguments. Phillips' argument that he is entitled to qualified immunity in his individual capacity is without merit. First, he violated clearly established law by: (1) seizing Willey's property and his person based on a warrant issued on less than probable cause or a violation of the law; and (2) confiscating Willey's firearms. Second, even if Phillips was not present during the seizures, he is liable under § 1983 as a supervisory official. Plaintiffs have also stated a claim under the Fourth and Second Amendments, and Willey has stated a claim as a class of one under the Equal Protection Clause.

    **A.     Plaintiffs Do Not Seek Damages Against Brown or Phillips in Their Official Capacities**

Defendants argue that they are immune from damages claims in their official capacities. Defendants Anthony G. Brown and James W. Phillips, Jr.'s Memorandum of Law in Support of Motion to Dismiss [ECF 25-1] ("Mot.") at 6-9. Plaintiffs do not seek damages against Brown or Phillips in their official capacities. That is, with respect to Brown and Phillips in their official capacities, Plaintiffs seek (1) a preliminary and permanent injunction enjoining enforcement and implementation of the Maryland Red Flag Law ("RFL"); (2) a declaration that the RFL violates

1

the Second, Fourth, and Fourteenth Amendments to the United States Constitution; and (3) attorneys' fees and costs under 42 U.S.C. § 1988. *See generally* FAC at 40.

### B. Phillips, In His Individual Capacity, Is Not Entitled To Qualified Immunity

Defendants' argument that Phillips, in his individual capacity, is entitled to qualified immunity as to count four. Mot. at 10-12. In particular, Defendants argue that (1) Phillips did not violate any of Willey's clearly established constitutional rights because he was enforcing Maryland's red flag laws; and (2) Phillips is not liable because he did not personally seize Willey's property and subject him to an involuntary mental health evaluation, but instead had his deputies do so. Defendants are wrong on both counts.

#### 1. Phillips Violated Clearly Established Law

As to Defendants' first argument, there is no doubt that the law was clearly established at the time Willey and his property were seized. Defendants correctly note that the law is clearly established if it "has been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state." Mot. at 10 (quoting *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998), *aff'd*, 526 U.S. 603 (1999)). But Phillips violated both the Fourth and Second Amendments to the Constitution, as incorporated against Maryland by the Fourteenth Amendment.

##### a. Phillips Violated The Fourth and Fourteenth Amendments

As explained in more detail in the Memorandum in Support of Plaintiffs' Motion for a Preliminary Injunction [ECF 15-1] ("PI Mot.") at 16-21, Phillips' conduct violated the Fourth and Fourteenth Amendments to the Constitution, as interpreted by the Supreme Court and the Fourth Circuit. The Fourth Amendment protects the American people from unreasonable searches and seizures: "The right of the people to be secure in their persons, houses, papers, and effects, against

2

unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. And the Supreme Court has held "that where the matter is of such a nature as to require a judicial warrant, it is also of such a nature as to *require probable cause*." *Griffin v. Wisconsin*, 483 U.S. 868, 877 (1987) (emphasis added). Indeed, "seizures of personal property are unreasonable within the meaning of the Fourth Amendment, without more, unless . . . accomplished pursuant to a judicial warrant, issued by a neutral magistrate after a finding of probable cause." *Illinois v. McArthur*, 531 U.S. 326, 330 (2001) (cleaned up). The Fourth Circuit is in accord. *See United States v. Crawford*, 552 F. App'x 240, 245 (4th Cir. 2014) (same). Thus, the Fourth Amendment's command of requiring warrants to be issued upon "probable cause" is clearly established.

The Maryland RFL allows so-called "extreme risk protective order" ("ERPO") warrants to be issued on less than "probable cause." MD. CODE ANN., PUB. SAFETY §§ 5-603(a)(1) (allowing entry of interim ERPO upon "reasonable grounds to believe that the respondent poses an immediate and present danger of causing personal injury to the respondent, the petitioner, or another by possessing a firearm"); 5-604(a)(1) (allowing entry of temporary ERPO upon "reasonable grounds to believe that the respondent poses an immediate and present danger of causing personal injury to the respondent, the petitioner, or another by possessing a firearm"). Phillips' seizure of Willey and his property based upon a warrant issued on "reasonable grounds"—a threshold far below "probable cause," PI Mot. at 17-19—therefore clearly violates the Fourth Amendment, as authoritatively interpreted by the Supreme Court and the Fourth Circuit.

Phillips also violated clearly established Fourth and Fourteenth Amendment law by enforcing the Maryland RFL against Willey, which authorizes Interim and Temporary ERPOs to

3

issue based on the subjective and undefined personal characteristic of a respondent being a so-called "danger"—rather than upon an alleged violation of one or more laws. *See* PI Mot. at 19-21. As the Supreme Court has explained, "a search—even one that may permissibly be carried out without a warrant—must be based upon 'probable cause' *to believe that a violation of the law has occurred*." *New Jersey v. T.L.O.*, 469 U.S. 325, 340 (1985) (emphasis added); *see also United States v. Sowards*, 690 F.3d 583, 588 (4th Cir. 2012) ("Probable cause exists if, given the totality of the circumstances, the officer had reasonably trustworthy information . . . sufficient to warrant a prudent [person] in believing that the petitioner *had committed or was committing an offense*.") (emphasis added). The Maryland RFL, however, allows the issuance of a warrant upon there being "reasonable grounds" to believe that a person is a "danger." *See* MD. CODE ANN., PUB. SAFETY §§ 5-603(a)(1), 5-604(a)(1). And the highly subjective and vague characteristic of being a "danger" to others is certainly not the "commi[ssion of] an offense." *Sowards*, 690 F.3d at 588. For this additional reason, Phillips' violation of the Fourth and Fourteenth Amendments in enforcing the plainly unconstitutional RFL was clearly established.

### b.    Phillips Violated The Second and Fourteenth Amendments

Phillips' conduct in seizing Willey's firearms also violates the Second and Fourteenth Amendments to the Constitution, as interpreted by the Supreme Court of the United States. *See generally* PI Mot. at 21-26. In order to disarm Willey consistent with the Second Amendment, Phillips must "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2127 (2022). To comply with the Second Amendment, laws targeting longstanding societal problems (such as dangerous persons) must be "distinctly similar" to a historical analogue. *Id.* at 2131. As discussed in Plaintiffs' motion for preliminary injunction, there

4

are no founding era analogues to the Maryland RFL. *See* PI Mot. at 23-26; Plaintiffs' Reply Memorandum in Support of Motion for Preliminary Injunction ("PI Reply") at 13-15. Thus, Phillips' conduct also violated clearly established Second Amendment law by seizing Willey's firearms.

### 2. Phillips is Liable As A Supervisory Official

Defendants' argument that Phillips is not liable because it was his deputies that seized Willey's guns, took custody of Willey, and subjected him to an involuntary mental health evaluation, Mot. at 10, is without merit. "Liability of supervisory officials under § 1983" is found when a Court finds "supervisory indifference or tacit authorization of subordinates." *Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986, 1013 (D. Md. 2019) (quoting *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001)). More specifically, the elements of a supervisory liability claim under § 1983 are: "(1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.* Here, Plaintiffs have pled supervisory liability. In particular, Plaintiffs pled that (1) Phillips "is the County's final policymaker with respect to enforcement of Maryland's criminal laws and certain civil laws, such as the RFL," and supervises the deputies in Dorchester County, First Amended Complaint [ECF 5] ("FAC") ¶ 18; *see also id.* ¶ 85 (Phillips "had final policymaking authority; and . . . knew in all instances that Willey had fundamental and clearly established constitutional rights that any objectively reasonable person would have known"); (2) Phillips is the "final policymaker with respect to . . . the RFL," and

therefore gave at least tacit (if not express) authorization to his deputies to enforce the RFL, *id.* ¶ 18; and (3) Phillips' policy in having his deputies execute unconstitutional warrants led directly to his deputies violating Willey's Fourth Amendment rights, *id.* ¶ 85.

However, to the extent the Court is inclined to dismiss Phillips for this reason, Plaintiffs respectfully request leave to file a second amended complaint to plead in greater detail Phillips' role in supervising his deputies including, for example, previously allowing his deputies to enforce the RFL on multiple occasions.

    **C.**    **Plaintiffs' Claims Against Defendants Brown and Phillips State A Claim As To Counts One, Two, and Four**

Plaintiffs have stated a claim as to Counts One, Two, and Four.

    **1.**    **Plaintiffs Have Stated A Claim For Violation Of The Fourth Amendment**

Defendants incorporate their arguments from their opposition to Plaintiffs' motion for a preliminary injunction, Mot. at 12. In response, Plaintiffs incorporate their arguments from their motion for preliminary injunction, as well as their reply brief in support. PI Mot. at 16-21; PI Reply at 2-14.

Defendants argue that the Maryland RFL does not violate the "probable cause" requirement of the Fourth Amendment because "reasonable grounds" is "synonymous with" "probable cause". Mot. at 12. This argument is beyond disingenuous. As discussed in Plaintiffs' motion for preliminary injunction, PI Mot. at 18, the Attorney General (AG Brown's predecessor) argued before the Court of Special Appeals that "a warrant may issue only upon 'probable cause,' and that 'reasonable grounds' is a lesser standard than probable cause." Brief of Attorney General, *Lyles v. Maryland*, 2020 Md. Sp. App. Ct. Briefs LEXIS 1753, at *3 (Md. Sp. App. Ct. June 19,

6

2020). (ECF 15-8). It now comes to this Court making the opposite argument. The Court should not countenance AG Brown interpreting a Maryland statute based on his preferred result.

AG Brown would have this Court permit the continued violation of constitutional rights under the Maryland RFL by improperly ascribing the same meaning to "reasonable grounds" and "probable cause." Mot. at 12. But these two standards are wholly distinct and should not be conflated. Indeed, words matter, particularly in this case, as first demonstrated by the revealing words of then-Delegate Geraldine Valentino-Smith, the sponsor of the RFL legislation (HB 1302), who asserted during floor debate that the burden of proof would be on RFL respondents, thereby betraying the Legislature's intent to cut corners and skirt constitutional requirements.

The relevant canons here include the surplusage canon (*verba cum effectu sunt accipienda*) and the canon of consistent usage. In sum, when these canons are properly applied, the true meaning of the RFL's statutory text becomes clear: "reasonable grounds" and "probable cause" are separate standards with separate meanings. *See generally* PI Reply at 2-13.

Under the surplusage canon, "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . ." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citation omitted); *see also Williams v. Taylor,* 529 U.S. 362, 404 (2000) (Courts must "give effect, if possible, to every clause and word of a statute."); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (Rejecting an "interpretation that violates the rule against 'ascribing to one word a meaning so broad' that it assumes the same meaning as another statutory term."). The Supreme "Court does not lightly assume [a legislature] adopts two separate clauses *in the same law* to perform the same work." *United States v. Taylor*, 142 S. Ct. 2015, 2016 (2022) (emphasis added). Thus, under the surplusage canon, this Court cannot assume "reasonable grounds" is "synonymous with" "probable cause."

7

The same is so under the canon of consistent usage. Under that canon, "identical words used in different parts of the same act are intended to have the same meaning," *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990), and "a material variation in terms suggests a variation in meaning," *United States v. Jones*, 60 F.4th 230, 235 (4th Cir. 2023) (quoting Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* at 170 (2012)). Finally, the Maryland Court of Appeals has held that "'reasonable grounds' . . . means 'reasonable articulable suspicion' and **not** preponderance of the evidence or **probable cause**." *Motor Vehicle Administration v. Shepard*, 399 Md. 241, 254 (2007) (emphases added).

The clearest evidence that the two standards at issue are wholly distinct is the fact that the Maryland Legislature deliberately drafted, edited, and enacted the RFL with *five* references to the "probable cause" standard in the statute (MD. PUB. SAFETY §§ 5-603(a)(4), 5-604(a)(4), 5-605(c)(4), 5-607, 5-610(b)) and *two* references to the "reasonable grounds" standard (MD. PUB. SAFETY §§ 5-603(a)(1), 5-604(a)(1)). The two references to "reasonable grounds" relate to the core Fourth Amendment problem at issue in this action: judges issue Interim and Temporary ERPOs if they find "*reasonable grounds* to believe that the respondent poses an immediate and present danger of causing personal injury to the respondent, the petitioner, or another by possessing a firearm." The "probable cause" standard, on the other hand, relates to the whether the respondent "meets the requirements for emergency evaluation . . . ." (two references: §§ 5-603(a)(4), 5-604(a)(4), 5-605(c)(4)), and seizure of firearms after the initial search and seizure in an RFL proceeding (two instances: §§ 5-607, 5-610(b)). The Maryland Legislature deliberately assigned the two standards at issue here for different purposes within the statute, and deliberately selected the lower "reasonable grounds" standard for searches and seizures pursuant to Interim and Temporary ERPOs in order to make it easier for law enforcement to seize firearms and

8

ammunition. But a desire to make search and seizure easier does not trump the Fourth Amendment's command that "**no Warrants shall issue, but upon probable cause**." U.S. CONST. amend. IV (emphasis added). The Maryland Legislature made a choice to lower the standard for searches and seizures when issuing warrants for Interim and Temporary ERPOs, but this choice runs afoul of the Fourth Amendment, and should not stand.

### 2. Plaintiffs Have Stated A Claim For Violation Of The Second Amendment

Defendants' incorporate their arguments from their opposition to Plaintiffs' motion for a preliminary injunction, Mot. at 13. In response, Plaintiffs incorporate their arguments from their motion for preliminary injunction, as well as their reply brief in support of their motion for preliminary injunction. PI Mot. at 21-26; PI Reply at 13-15. As discussed in the preliminary injunction briefs, *Bruen*, 142 S. Ct. at 2118, 2127, "demands a test rooted in the Second Amendment's text, as informed by history" and requires Defendants to "affirmatively prove that [the RFL] is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." Defendants have failed to carry their "heavy burden," *United States v. Daniels*, 77 F.4th 337, 342 (5th Cir. 2023), because Defendants have similarly failed to identify any historically analogous regulation that mirrors "how the challenged law burdens the right to armed self-defense, and why the law burdens that right." *Bruen*, 142 S. Ct. at 2133 (citing *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010); *District of Columbia v. Heller*, 554 U.S. 570, 599 (2008)).

In its opposition to Plaintiffs' motion for preliminary injunction, Defendants compare Willey to "intoxicated people, drug addicts, and minors." Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction [ECF 24] ("PI Opp'n") at 14. But the RFL, without any guiding criteria, does not define who may be considered "dangerous" and these laws are therefore poor analogues. Similarly, the so-called "loyalist" laws, PI Opp'n at 13, were *wartime measures*

9

during the Revolutionary War and disarmed the United States' enemies. Loyalist laws were adopted by American colonies and localities in a military, wartime context and served a military, wartime purpose. The Loyalist Laws existed for a dual purpose: to disarm enemy combatants and to transfer confiscated arms to the patriot cause. Joseph G.S. Greenlee, *Disarming the Dangerous: The American Tradition of Firearms Prohibitions*, 16 DREXEL L. REV. at 53 (2023) (forthcoming); *see also* Paltzik Declaration at ¶ 49. Since Willey is not an enemy combatant, deprivation of his Second Amendment rights does not serve a military purpose, the Loyalist Laws are an exceedingly poor fit. In sum, Defendants have failed to meet their heavy burden and Plaintiffs have without a doubt stated a claim under the Second and Fourteenth Amendments.

### 3. Willey Has Stated A Claim That He Is A Class Of One Under The Equal Protection Clause

Defendants first argue that Phillips cannot be liable because he did not personally seize Willey's firearms or force him to undergo an involuntary mental health examination. Mot. at 13. Phillips' argument is without merit for the reasons discussed in Section II(A)(2), *supra*.

Next, Defendants argue that Phillips did not treat Willey differently than other similarly situated citizens. Mot. at 14-16. As the FAC explains:

> Willey was treated differently from others similarly situated without rational basis for this disparate treatment. Willey, like some other citizens of Dorchester County or Fishing Creek, received, and later contested, citations or notices of infractions under the County Code. However, Willey was the only citizen of the County or Fishing Creek intentionally targeted . . . with a red flag proceeding . . .

FAC ¶ 134. Defendants argue that the relevant similarly situated citizens are those whose rights *were also violated* in also having had their weapons confiscated and having been forced to undergo an involuntary mental health evaluation under an unconstitutional statute. But if the relevant similarly situated citizens were only those whose constitutional rights were violated, then it would be impossible to ever establish a class of one claim. Instead, the relevant similarly situated citizens,

10

as pled in the FAC, are citizens who received citations under the County Code but were not subjected to unconstitutional retaliation in violation of the Constitution. This allegation, assumed to be true at the motion to dismiss stage, is the epitome of a "class-of-one" equal protection claim, "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 563 (2000). Defendants argue that Plaintiffs have failed to show the requisite degree of similarity between Willey and other similarly situated individuals. Mot. at 14. However, at this stage, Plaintiffs' allegations must be viewed in the light most favorable to them. *Yates v. Terry*, 817 F.3d 877, 884 (4th Cir. 2016) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Thus, Plaintiffs' allegations, taken as true, are sufficient to plead a "class of one" claim.

Next, Defendants argue that an equal protection "class of one" claim is no longer valid under *Engquist v. Oregon Department of Agriculture*, 555 U.S. 591 (2008). Mot. at 14. But that is not what the Court held in *Engquist*. The narrow holding in *Engquist* was that a class of one equal protection claim not be brought "in the public employment context." *Id.* at 594. Since the case at bar has nothing to do with public employment, *Engquist* is inapposite.

Moreover, due to its inherently factual nature, it is generally inappropriate to decide a class of one claim on motion to dismiss. Indeed, the Fourth Circuit has held that "whether a plaintiff bringing such a claim is similarly situated to those who have been treated differently is a factual issue for a jury." *Willis v. Town of Marshall, North Carolina*, 275 F. App'x 227, 233 (4th Cir. 2008) (cleaned up). *Willis* has been explicitly upheld in recent years by the United States District Court for the District of Maryland in *Brent v. City of Cumberland Police Department*, stating that "the Fourth Circuit has continued to cite pre-*Engquist* cases, including *Willis*, as good law regarding class-of-one claims post-*Engquist.*" No. CV JKB-22-1349, 2023 WL 7132332, at *6 (D.

Md. Oct. 27, 2023) (acknowledging *Engquist's* modification to class of one jurisprudence but stating that the uneven application of the law against a disfavored individual without a rational basis still can give rise to a class of one claim).

This Court should deny Defendants' motion as to Willey's class of one claim and allow it to proceed to discovery and trial.

### III.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [ECF 25] should be denied in its entirety.

Date: December 20, 2023					Respectfully Submitted,

							By:	/s/ Serge Krimnus

								Edward A. Paltzik, Esq. (Bar. No. 30,785)
								Serge Krimnus, Esq. (Bar No. 22,072)
								**Bochner PLLC**
								1040 Avenue of the Americas, 15th Fl.
								New York, New York 10018
								(646) 971-0685
								edward@bochner.law
								serge@bochner.law
								*Attorneys for Plaintiffs*