IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **DONALD S. WILLEY, ET AL.** | * | |
| **Plaintiffs,** | * | |
| v. | * | Case No.: 1:23-CV-2299-ELH |
| **ANTHONY G. BROWN, ET AL.** | * | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*

<u>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**</u>

Defendants Dorchester County (the "County") and Susan Webb, by undersigned counsel, pursuant to Local Rule 105.1, submit this Reply Memorandum in support of their Motion to Dismiss.

The County and Ms. Webb presented her testimony from the Extreme Risk Protective Order ("ERPO") hearing. From a reading Plaintiff's Opposition, it seems as if they still have not read it; or are engaging in willful blindness. For this reason, the testimony that appears to form the basis for all the claims against these Defendants bears repeating below:

> So we have a zoning violation case on a property—private property that he owns. We've got a court order for it to be complied with by the end of May that wasn't done so we're currently in the process of getting contractors to clean it. It is a very extreme case. My last visit there he became violent. Didn't make any threats at that point. Mr. Bennett is here. He is my zoning inspector. He is a witness to all of this. Since then, on Thursday the 8th we got a call from one of the contractors that we have asked to give us a bid that he was approached by several residents neighbors that he is threatening to kill anybody that comes there from the county, that he is prepared. The next day I got a call from a counsel person that he was told

>personally by Mr. Willey that he was planning on shooting me at the property that he was already waiting and then I got a call Monday from his neighbor and she said she felt she needed to warn me about what he is saying throughout the community that he is waiting. He is waiting for us to come and he is waiting to kill me and anybody else from the department that comes. So I am concerned about the safety of my staff.

*See*, Transcript attached as Exhibit 1 at pp. 2-3.

Plaintiffs complain that Ms. Webb did not contact the police with these concerns (Opposition at 8). However, her testimony demonstrates that she did contact law enforcement, namely the Office of States' Attorney. Ms. Webb pursued the ERPO because that law enforcement office, advised her to do so after learning that multiple citizens had warned Ms. Webb and her staff member that Mr. Willey had made specific threats to use firearms against County Planning and Zoning staff. *See*, Exhibit 1 at 4 ("I spoke to the state's attorney shortly ago before I came here. She advised me to come over and go through this procedure …").

Plaintiffs do not address the testimony upon which the Court entered the ERPO, They instead seize upon three listed dates in the ERPO form. Plaintiffs surmise wrongly that Ms. Webb was swearing that Mr. Willey threatened her in her presence. That appears nowhere in her testimony. Ms. Webb testified that she was told that Mr. Willey had threatened her and her staff. The dates in the Petition (June 8, 9 and 12), are the three dates that Ms. Webb received notice from others that Mr. Willey had made threats against her and her staff. Her testimony on that is completely clear as follows:

> [O]n Thursday the 8th we got a call from one of the contractors that we have asked to give us a bid that he was approached by several residents neighbors that he is threatening to kill anybody that comes there from the county, that he is prepared. The next day I got a call from a counsel person that he was told personally by Mr. Willey that he was planning on shooting me at the property that he was already waiting and then I got a call Monday from his neighbor and she said she felt she needed to warn me about what he is saying throughout the community that he is waiting.

*See*, Transcript attached as Exhibit 1 at pp. 2-3. It takes no further evidence to demonstrate that June 8 corresponds to June 8, "the next day" corresponds to June 9 and Monday corresponds to June 12. In the face of this clarity, Plaintiffs doubled down. Inexplicably, Plaintiffs again called this public servant who had been informed she was subject to death threats a perjurer in this litigation and elsewhere. These Defendants respectfully request that the Court put an end to this now.

Plaintiffs also complain that the ERPO filing did not occur until "*thirteen* days" after the interaction at Mr. Willey's property on June 2. However, that is because the filing was obviously prompted by the notifications of threats on June 8, 9 and 12, and under the circumstances, the connection alleged by Plaintiffs is not plausible.[1]

Also, contrary to Plaintiffs' arguments, there was ample probable cause to support the ERPO. The Court ruled that "[c]ourt finds that the Respondent posed an immediate and present danger to cause personal injury to the Petitioner and others." Exhibit 1 at 4.

---

[1] These Defendants have focused on arguments and material which they believe are dispositive at this stage. The failure to address the myriad distractions from the dispositive matters in Plaintiff's Opposition should not be taken as agreement or any waiver, including obviously other arguments regarding qualified immunity that are deemed unnecessary for purposes of this Motion.

3

The District Court Judge later went on to *sua sponte* order an emergency mental health evaluation as follows:

> Having found probable cause under Title 10, subtitle 6 of the (inaudible) shown symptoms of a mental disorder and present a danger to the life and safety of themselves or others. The Court refers the Defendant for an emergency evaluation as well.

*See,* Exhibit 1 at 6.

All claims against these Defendants fail for the foregoing reasons. There are additional alternative reasons some specific claims fail that are addressed further below.

Plaintiffs argue that the Supreme Court's decision in *Engquist v. Oregon Department of Agriculture*, 555 U.S. 591 (2008) that calls into question the vitality of a "class of one" equal protection claim itself is limited to public employment context. In *Mathis v. McDonough*, 2014 U.S. Dist. LEXIS 108699, at *74-76, this Court described the state of the law as follows:

> Taking a cue from the Supreme Court's reasoning, a number of courts have questioned whether "class of one" claims in the context of discretionary decision-making remain viable after *Engquist. See, e.g., Rapp v. Dutcher,* 557 F. App'x 444, 449 (6th Cir. 2014); *Flowers v. City of Minneapolis, Minn.,* 558 F.3d 794, 799-800 (8th Cir. 2009) ("[W]e conclude that while a police officer's investigative decisions remain subject to traditional class-based equal protection analysis, they may not be attacked in a class-of-one equal protection claim."); *United States v. Moore,* 543 F.3d 891, 898-99 (7th Cir. 2008) ("[A] class-of-one equal protection challenge . . . is just as much a 'poor fit' in the prosecutorial discretion context as in the public employment **[*75]** context" because "there is no readily apparent standard against which departures can be assessed for arbitrariness."); *see also Uzoukwu v. Prince George's Community College Bd. of Trustees,* 2013 U.S. Dist. LEXIS 115262, 2013 WL 4442289, at *9-10 (D. Md. Aug. 15, 2013) (Chasanow, J.)

4

> (dismissing class-of-one equal protection claim as not viable after *Engquist* in the public education context).
>
> To date, the Fourth Circuit has not addressed the impact of *Engquist* on the viability of class-of-one equal protection claims.*See Sansotta v. Town of Nags Head,* 724 F.3d 533, 542 n.13 (4th Cir. 2013) (observing that other circuits have discussed the impact of *Engquist* on class-of-one claims, but concluding that "such discussion is not necessary to resolving the claim before us"). Nevertheless, subsequent to *Engquist,* the approaches of other courts cast significant doubt on the viability of a class-of one theory in this context.

Judges in this Court have applied the *Engquist* principles in at least three additional cases where government discretionary decision-making was involved outside the context of public employment. *See*, *Uzoukwu v. Prince George's Community College*, 2013 U.S. Dist. LEXIS 115262 at **28-30 (Class of one not applied in public community college context); *Jones v. Prince George's Cnty. Pub. Schs,*, 2016 U.S. Dist. LEXIS 100037 at **12-15 (Class of one claim not available concerning punishment for violation of school policies.) and *Morgan v. Prince George's County*, 2010 U.S. Dist. LEXIS 72585 at **26-28 (Class of one claim not available for discretionary conduct involving claim of excessive use of force by police.).

    Even if the claim continues to exist in this context, Plaintiff cannot plausibly plead that "he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" *Id.* citing *Rapp V. Dutcher*, 557 F.App'x 444, 449 (6th Cir. 2014). In this regard, the *Mathis* Court observed:

> Even assuming, *arguendo,* that a "class of one" equal protection claim remains viable, defendants argue that this claim must be dismissed, *see* Mem. at 17, because plaintiff has failed adequately to allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech,* 528 U.S. at 564 (quotation marks omitted). *See also Rapp,* 557 F. App'x at 449-50 (assuming that a "class of one" claim survives *Engquist,* a plaintiff "must plead and prove" **[*76]** both intentional mistreatment and a lack of a rational basis for a difference in treatment, by alleging "enough factual matter to plausibly show there was not '*any* conceivable basis' that rationally supported the enforcement of the" provisions at issue) (emphasis in original; citation omitted).

*Mathis* at **75-76.  Plaintiffs fall short of meeting this standard and the rational basis for the actions of these Defendants is clear.  Mr. Willey admits that others were issued citations and challenged them, but there is no suggestion that those persons also failed to comply with an order or made threats in the community against Ms. Webb or any other County employee who would come to their property.

Count Five alleges Mr. Willey was stigmatized by being characterized as a danger.  However, as the transcript elucidates, Ms. Webb only repeated the information regarding threats that were credibly reported to her from multiple varied sources.  Plaintiffs also complain of Mr. Willey being sent for a mental health evaluation.  Ms. Webb did not even suggest such an evaluation and the Court ordered it *sua sponte* after expressly finding probable cause to do so.  *See*, Exhibit 1 at 6.  Although Plaintiffs assail the basis for the emergency evaluation, Plaintiffs' own Amended Complaint (Exhibit K at 4) contains a letter from Mr. Willey's mental health provider dated June 21, 2023, showing that she was

**currently** treating him for his diagnosed conditions of "ADHD, Hoarding and PTSD" for which he was on medication.

Plaintiffs misapprehend the application of Maryland immunity law to its common law Malicious Use of Process claim. The governmental character of the action is dispositive of any claim against the County.

Plaintiffs claim that the ERPO proceeding was terminated in Mr. Willey's favor because it was tantamount to sustaining a demurrer. Under Maryland law a demurrer is equivalent to a dismissal for failure to state a claim. *See*, *Fowlkes v. Choudhry*, 472, Md 688, 705 (2021), citing *Maryland-National Capital Park and Planning Commission v. Town of Washington Grove*, 408 Md. 37, 94 n. 28, 968 A.2d 552 (2009)("At common law, the demurrer was a procedural pleading filed by defendants seeking to have a plaintiff's complaint dismissed for some legal deficiency affirmatively appearing in the complaint. . . . Maryland Rule 2-322(b)(2), providing for the defense by motion to dismiss for failure to state a claim upon which relief can be granted, is the modern equivalent of the demurrer." (internal citations omitted). The disposition was not analogous to granting a demurrer. An ERPO was in fact issued with probable cause and based on the same evidence, it appears clear one would have been issued again at the final hearing. The record is clear that Ms. Webb was willing to abandon seeking a final order based on agreement as to how future communications would occur. *See*,

Exhibit 2, transcript of June 22, 2023 hearing, at 3.[2] Plaintiffs' argument demonstrates the unfortunate principle of no good turn going unpunished.

Unable to identify a policy to rely upon to support claims under § 1983, Plaintiffs say that Ms. Webb was a final policymaker for the County. However, it is not plausible to suggest that she was a final policymaker regarding seeking ERPO's against persons who make threats against County employees. One would think a policy would not even be necessary to address threats of criminal behavior and, if there were, the head of Planning and Zoning would not functionally be that policymaker.

For these reasons and those stated in their original Memorandum, Defendants' Motion to Dismiss the Complaint should be granted as to all counts against the County and Ms. Webb.

                                              Respectfully submitted,

                                              _____/s/_____
                                              William C. Dickerson
                                              Federal Bar No. 10791
                                              Wdickerson@lgit.org
                                              7225 Parkway Drive
                                              Hanover, Maryland 21076
                                              Office (443) 561-1700
                                              Facsimile (443) 561-1701
                                              Counsel for Defendants
                                              Dorchester County and Webb

---

[2] THE COURT: And this matter is scheduled for extreme risk protective order final hearing. And Ms. Webb, Mr. Dodd (Mr. Willey's attorney) has represented to the court that you're requesting a dismissal. Is that correct?

SUSAN WEBB: Correct. We have made an agreement as far as any communication going forward being handled.