IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

------------------------------------------------------X
DONALD S. WILLEY and THE SECOND      Case No. 1:23-cv-02299-BAH
AMENDMENT FOUNDATION,

       Plaintiffs,

  -against-

ANTHONY G. BROWN, in his
official capacity as Attorney General of
Maryland, DORCHESTER COUNTY,
Maryland, SUSAN E. WEBB, personally
and in her official capacity as Director of
Planning & Zoning for Dorchester County,
Maryland, and JAMES W. PHILLIPS, JR.,
personally and in his official capacity as
Sheriff of Dorchester County, Maryland,

       Defendants.
------------------------------------------------------X

**PLAINTIFFS' REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

   A. Plaintiffs are Likely To Succeed on Their Fourth Amendment Claim ......................... 1

   a. Delegate Valentino-Smith's Revealing Words .................................................. 3

   b. The Surplusage Canon: Different Terms Within The Same Statute Have ................. 4
      Different Meanings ................................................................................. 4

   B. Plaintiffs are Likely To Succeed on Their Second Amendment Claim ...................... 13

III. Conclusion .................................................................................................................. 15

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Albright v. Oliver*,
  510 U.S. 266 (1994) ............................................................................................................... 12

*Arthur Andersen LLP v. United States*,
  544 U.S. 696 (2005) ............................................................................................................... 13

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
  501 U.S. 104 (1991) ................................................................................................................. 5

*Bethel World Outreach Ministries v. Montgomery Cnty. Council*,
  706 F.3d 548 (4th Cir. 2013) ................................................................................................... 5

*Bostock v. Clayton Cnty., Georgia*,
  140 S. Ct. 1731 (2020) ........................................................................................................... 13

*Equal Rts. Ctr. v. Equity Residential*,
  798 F. Supp. 2d 707 (D. Md. 2011) ......................................................................................... 7

*Florida Pub. Telecomm. Ass'n v. FCC*,
  54 F.3d 857 (D.C. Cir. 1995) ................................................................................................... 7

*Gamble v. United States*,
  139 S. Ct. 1960 (2019) ........................................................................................................... 14

*Gustafson v. Alloyd Co.*,
  513 U.S. 561 (1995) ................................................................................................................. 5

*Helvering v. Stockholms Enskilda Bank*,
  293 U.S. 84 (1934) ................................................................................................................... 7

*Henson v. Santander Consumer USA Inc.*,
  137 S. Ct. 1718 (2017) ............................................................................................................. 5

*Hibbs v. Winn*,
  542 U.S. 88 (2004) ................................................................................................................... 5

*I.N.S. v. Cardoza-Fonseca*,
  480 U.S. 421 (1987) .............................................................................................................. 6, 7

*IBP, Inc., v. Alvarez*,
  546 U.S. 21 (2005) .................................................................................................................. 5

*In re O.P.*,
  470 Md. 225 (2020) ............................................................................................................. 8, 9

*Mackey v. Lanier Collection Agency & Service, Inc.*,
  486 U.S. 825 (1988) ................................................................................................................ 5

*Motor Vehicle Administration v. Shepard*,
  399 Md. 241 (2007) ............................................................................................................. 8, 9

*New York State Rifle and Pistol Association v. Bruen*,
  142 S. Ct. 2111 (2022) ..................................................................................................... 13, 14

*Russello v. United States*,
  464 U.S. 16 (1983) .................................................................................................................. 6

*SAS Inst. Inc. v. Iancu*,
  138 S. Ct. 1348 (2018) ............................................................................................................ 4

*Sullivan v. Stroop*,
  496 U.S. 478 (1990) ................................................................................................................ 7

*Turkiye Halk Bankasi A.S. v. United* States,
  598 U.S. 264 (2023) .............................................................................................................. 13

*United States DOL v. N.C. Growers Association*,
  377 F.3d 345 (4th Cir. 2004) .................................................................................................. 7

*United States v. Graham*,
  608 F.3d 164 (4th Cir. 2010) .................................................................................................. 4

*United States v. Jones*,
  60 F.4th 230 (4th Cir. 2023) ................................................................................................... 8

*United States v. Menasche*,
  348 U.S. 528 (1955) ................................................................................................................ 4

*United States v. Ron Pair Enterprises, Inc.*,
  489 U.S. 235 (1989) ................................................................................................................ 4

*United States v. Simms*,
  914 F.3d 229 (4th Cir. 2019) .................................................................................................. 4

*United States v. Taylor*,
  142 S. Ct. 2015 (2022) .................................................................................................................. 5

*Williams v. Taylor*,
  529 U.S. 362 (2000) ..................................................................................................................... 5

*Wisconsin Cent. Ltd. v. United States*,
  138 S. Ct. 2067 (2018) .................................................................................................................. 6

Constitutional and Statutory Provisions

MD. CODE ANN., FAM. LAW § 4-504.1(b) (LexisNexis 2019) ....................................................... 11

MD. CODE ANN., HEALTH-GEN § 10-623 (LexisNexis 2019) ....................................................... 12

MD. CODE ANN., TRANSP. § 16-205.1 ............................................................................................. 9

U.S. CONST. amend. IV ................................................................................................................... 3

Rules

FED. R. CIV. P. 65 ............................................................................................................................ 1

Other Authorities

HB 1302 ................................................................................................................................ 1, 2, 3

*Lyles v. State*,
  2020 WL 6158444 (Md. Ct. Spec. App. Oct. 21, 2020) ............................................................... 9

**I.      INTRODUCTION**

Plaintiffs Donald S. Willey ("Willey") and the Second Amendment Foundation ("SAF") respectfully submit this Reply Memorandum in Support of their Motion for a Preliminary Injunction (the "Motion") pursuant to FED. R. CIV. P. 65 prohibiting enforcement of Maryland's "red flag law" (the "Maryland RFL" or the "RFL," 2018 MD. HB 1302, codified at PUB. SAFETY §§ 5-601 *et seq*.), which violates the Fourth, Second, and Fourteenth Amendments to the United States Constitution. Plaintiffs submitted their initial Memorandum in Support of the Motion on September 8, 2023. (ECF 15-1). Defendant Attorney General Anthony G. Brown ("AG Brown"), joined by Defendant James W. Phillips, Jr., submitted an Opposition to the Motion on October 13, 2023 [ECF 24] ("Opp'n"). Defendants Dorchester County and Susan E. Webb did not submit any substantive opposition to the Motion but rather simply joined in AG Brown's Opposition [ECF 29]. For the reasons set forth below, AG Brown's Opposition misses the mark by a wide margin, and the Motion should be granted.

**II.     ARGUMENT**

   **A.      Plaintiffs are Likely To Succeed on Their Fourth Amendment Claim**

Plaintiffs' Fourth Amendment claims are straightforward: (a) the Maryland RFL authorizes state District Court commissioners and judges to issue "extreme risk protective orders" ("ERPOs" or an "ERPO") on a standard less than "**probable cause**" called "**reasonable grounds**"; and (b) the RFL authorizes searches and seizures based upon a subjective and undefined personal characteristic of the targeted individual (being a "**danger**"), rather than upon the objective and defined metric of *an alleged underlying violation of one or more laws*. Either (a) *or* (b) are sufficient to grant a preliminary injunction. Since the Claim (b) argument in the Opp'n is without merit, Claim (a) only is addressed in this Reply Memorandum.

1

### i. Words Matter: The "Reasonable Grounds" Standard, the RFL Sponsor's Casual Disregard for Constitutional Rights, And The Canons of Interpretation

AG Brown would have this Court permit the continued violation of constitutional rights under the Maryland RFL by improperly ascribing the same meaning to "reasonable grounds" and "probable cause." (Opp. at 6). But these two standards are wholly distinct and should not be conflated. Indeed, words matter, particularly in this case, as first demonstrated by the revealing words of then-Delegate Geraldine Valentino-Smith, the sponsor of the RFL legislation (HB 1302), who asserted during floor debate that the burden of proof would be on RFL respondents, thereby betraying the Legislature's intent to cut corners and skirt constitutional requirements. Second, the Supreme Court of the United States has always recognized that words matter, and, to that end, often relies on the canons of statutory interpretation detailed by the late Justice Antonin Scalia and co-author Professor Bryan A. Garner in *Reading Law: The Interpretation of Legal Texts* (2012) ("Scalia & Garner"). The relevant canons here include the surplusage canon (*verba cum effectu sunt accipienda*) and the canon of consistent usage. When these canons are properly applied, the true meaning of the RFL's statutory text becomes clear: "reasonable grounds" and "probable cause" are separate standards with separate meanings.

The clearest evidence that the two standards at issue are wholly distinct is the fact that the Maryland Legislature deliberately drafted, edited, and enacted the RFL with *five* references to the "probable cause" standard in the statute (PUB. SAFETY §§ 5-603(a)(4), 5-604(a)(4), 5-605(c)(4), 5-607, 5-610(b)) and *two* references to the "reasonable grounds" standard (PUB. SAFETY §§ 5-603(a)(1), 5-604(a)(1)). The two references to "reasonable grounds" relate to the core Fourth Amendment problem at issue in this action: judges issue Interim and Temporary ERPOs if they find "*reasonable grounds* to believe that the respondent poses an immediate and present danger of

causing personal injury to the respondent, the petitioner, or another by possessing a firearm." The "probable cause" standard, on the other hand, relates to the whether the respondent "meets the requirements for emergency evaluation . . . ." (three references: §§ 5-603(a)(4), 5-604(a)(4), 5-605(c)(4)), and seizure of firearms after the initial search and seizure in an RFL proceeding (two instances: §§ 5-607, 5-610(b)). The Maryland Legislature deliberately assigned the two standards at issue here for different purposes within the statute, and deliberately selected the lower "reasonable grounds" standard for searches and seizures pursuant to Interim and Temporary ERPOs in order to make it easier for law enforcement to seize firearms and ammunition. But a desire to make search and seizure easier does not trump the Fourth Amendment's command that "**no Warrants shall issue, but upon probable cause** . . . ." U.S. CONST. amend. IV (emphasis added). The Maryland Legislature made a choice to lower the standard for searches and seizures pursuant to Interim and Temporary ERPOs, but this choice does not comport with the Fourth Amendment, and should not stand.

### a. Delegate Valentino-Smith's Revealing Words

During videorecorded debate on HB 1302, Delegate Valentino-Smith—questioned by a colleague who expressed concerns that RFL respondents would be forced to prove a negative (that they are not dangerous)—shockingly asserted that RFL respondents would bear the burden of proof, which is **_never_** the case in American law when constitutional rights are at stake: "Well, then they're [RFL respondents] going to have to prove why they're *not* [dangerous] based on the evidence presented" (emphasis added).[1] This was no mistake: several minutes later, Valentino-Smith again asserted that "you [RFL respondents] have to convince a court that you're not [dangerous].[2] As discussed

---

[1] https://mgahouse.maryland.gov/mga/play/726b586c-881f-4cf9-b78a-5c1a52c41c24?catalog/03e481c7-8a42-4438-a7da-93ff74bdaa4c (*see* exchange beginning at 2:40:53).

[2] *Id*. (*see* remarks at 2:51:23).

3

below, AG Brown attempts to portray the Legislature's use of "reasonable grounds" instead of "probable cause" as an innocent drafting mistake rather than a "deliberate attempt" to lower the standard for search and seizure and make it easier for law enforcement to confiscate firearms. (Opp'n at 8-9). But Valentino-Smith's words—the very words of the Bill's *sponsor*—paint a very different picture of casual, deliberate, and flagrant disregard for constitutional rights and standards. This was a sponsor who clearly intended to ease the path for law enforcement to seize firearms and had no problem cutting corners to achieve this goal.

### b. The Surplusage Canon: Different Terms Within The Same Statute Have Different Meanings

"The well-established rule against surplusage" protects against statutory interpretations that would "empty . . . phrase[s] . . . of meaning." *United States v. Simms*, 914 F.3d 229, 241 (4th Cir. 2019) (citing *United States v. Menasche*, 348 U.S. 528, 538-39 (1955)). Where the state attempts to introduce a "reinterpretation" of statutory language, the result can be to "drain the phrase . . . of any effect, violating a *cardinal rule* of statutory construction." *Simms*, 914 F.3d at 242 (emphasis added); *see also United States v. Graham*, 608 F.3d 164, 176 (4th Cir. 2010) ("In the face of the unambiguous words of the statute, we cannot construe [the statute] to add language that Congress omitted.").

Consistent with this rule, the Supreme Court has consistently emphasized the importance of interpreting statutes as written, recently observing that courts "need not and will not invent an atextual explanation for [legislative] drafting choices when the statute's own terms supply an answer." *SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1357 (2018). "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.'" *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) (citation omitted). Indeed, it is well-settled that when

interpreting a statute, a court must presume that the enacting legislature did not intend to draft superfluous provisions. *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 112 (1991) ("[O]f course we construe statutes, where possible, so as to avoid rendering superfluous any parts thereof."); *see also Bethel World Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548, 557 (4th Cir. 2013) (same). Analysis under this presumption is two-fold.

First, "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . ." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citation omitted); *see also Williams v. Taylor,* 529 U.S. 362, 404 (2000) (Courts must "give effect, if possible, to every clause and word of a statute."); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (Rejecting an "interpretation that violates the rule against 'ascribing to one word a meaning so broad' that it assumes the same meaning as another statutory term.").

Second, "[u]nder usual rules of statutory interpretation, the Court does not lightly assume [a legislature] adopts two separate clauses *in the same law* to perform the same work." *United States v. Taylor*, 142 S. Ct. 2015, 2016 (2022) (emphasis added); *see also Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 839 n.14 (1988) ("[O]ur decision does not suffer from the evil of rendering duplicate two statutory provisions simultaneously adopted by Congress."). Thus, courts presume that differences in language within the same statute convey differences in meaning, while identical words within the same statute carry the same meaning. *See Henson v. Santander Consumer USA Inc.,* 137 S. Ct. 1718, 1723-24 (2017); *IBP, Inc., v. Alvarez*, 546 U.S. 21, 34 (2005). Consistent with this presumption, the "ordinary, contemporary, and

common meaning" of words controls. *Wisconsin Cent. Ltd. v. United States,* 138 S. Ct. 2067, 2074 (2018).

In a noteworthy example of these surplusage principles applied, *I.N.S. v. Cardoza–Fonseca*, the Supreme Court considered the interplay between two provisions of the Immigration and Nationality Act of 1952 (the "INA") as amended by the Refugee Act of 1980 (which added a new § 208(a) and amended existing § 243(h) to the INA) in the context of the respondent asylum seeker's request for withholding of deportation. 480 U.S. 421, 423, 427 (1987). At issue was which standard of proof governed deportation determinations in the context of asylum applications under § 208(a): the "well-founded fear" standard (defined in §§ 208(a) and 101(a)(42)) versus the "clear probability" standard (defined in amended § 243(h)). *Id*. at 429-30. The Supreme Court found that Congress intended that the two standards have different meanings:

> The different emphasis of the two standards which is so clear on the face of the statute is significantly highlighted by the fact that the same Congress simultaneously drafted § 208(a) and amended §243(h). In doing so, Congress chose to maintain the old standard in § 243(h), but to incorporate a different standard in § 208(a).

*Id*. at 432. Since there was a "contrast between the language used in the two standards . . . Congress intended the two standards to differ." *Id*. This conclusion was in accord with clear precedent on the interpretation of different standards within a single statute: "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted).

In the case at bar, as in *Cardoza-Fonseca*, the relevant provisions of the Maryland RFL—PUB. SAFETY §§ 5-603(a)(4), 5-604(a)(4), 5-605(c)(4), 5-607, and 5-610(b) (the "probable cause" provisions) and §§ 5-603(a)(1), 5-604(a)(1) (the "reasonable grounds" provisions)—were drafted and enacted "simultaneously" by the Maryland Legislature in 2018. *See Cardozo-Fonseca*, 480

6

U.S. at 432. Yet, AG Brown demands that this Court ignore the unambiguous intent demonstrated by the Legislature to use differently-worded standards of proof within the RFL. When presented with the standards "well-founded fear" versus "clear probability" in *Cardozo-Fonseca*, the Supreme Court held: "[w]e simply cannot conclude that the standards are identical." 480 U.S. at 431. The same reasoning plainly applies here, where all of the relevant provisions of the Maryland RFL were enacted at the same time and with the same legislative intent, the differing word choices are not superfluous, and there is no basis to rewrite or reform the Legislature's words. One of the core functions of the Maryland Legislature is to select word combinations that comport with the United States and Maryland Constitutions. But when the Legislature intentionally selects words that render a statute—here, the RFL—non-compliant with the United States Constitution, it is not this Court's job to rescue that statute by substituting or editing word choices, here, "reasonable grounds." Again, words matter. *See, e.g., Equal Rts. Ctr. v. Equity Residential*, 798 F. Supp. 2d 707, 730 (D. Md. 2011) (quoting *Florida Pub. Telecomm. Ass'n v. FCC,* 54 F.3d 857, 860 (D.C. Cir. 1995) (collecting cases) ("Nonetheless, the court is constrained by the presumption that 'when Congress uses different language in different sections of a statute, it does so intentionally.'").

      c.     **The Canon of Consistent Usage: Identical Words Within the Same Statute Have the Same Meaning**

A close companion to the surplusage canon is the canon of consistent usage. This canon dictates that "identical words used in different parts of the same act are intended to have the same meaning." *Helvering v. Stockholms Enskilda Bank,* 293 U.S. 84, 87 (1934). Generally, there is a presumption of consistent usage. *Sullivan v. Stroop,* 496 U.S. 478, 484 (1990) ("[The] normal rule of statutory construction [is] that identical words used in different parts of the same act are intended to have the same meaning.") (internal citations omitted)); *see also United States DOL v. N.C. Growers Association,* 377 F.3d 345, 352 n.8 (4th Cir. 2004). Further, the presumption of consistent

7

usage also provides that "a material variation in terms suggests a variation in meaning." Scalia & Garner, at 170. This proposition was applied by the Fourth Circuit in *United States v. Jones*, 60 F.4th 230, 231 (4th Cir. 2023), in which the statute in question used "or" multiple times throughout the text, each time as a *disjunctive* term. The Court held that the two uses of the word "and" as a conjunctive term was sufficient evidence to require that the third "and" be similarly construed as *conjunctive*. *Id.* at 231, 235. Specifically, the Court opined that "[t]o adopt the Government's interpretation . . . 'we would have to believe that Congress meant to invoke the plain meaning of these words at every time *except* in [the disputed instance].'" *Id.* at 235 (emphasis in original).

Similarly, the Maryland RFL uses "probable cause" as the standard of proof for every instance *except* "reasonable grounds" for the issuance of Interim and Temporary ERPOs. By adopting the "reasonable grounds" standard, the Legislature deliberately lowered the standard of proof for search and seizure in order to make it easier to confiscate firearms. Under the canon of consistent usage, the two instances of "reasonable grounds" in §§ 5-603(a)(4) and 5-604(a)(4) should be accorded identical meaning, while the instances of "probable cause" in §§ 5-603(a)(4), 5-604(a)(4), 5-605(c)(4), 5-607, and 5-610(b) should be accorded identical meaning.

### d.   AG Brown's Counterarguments

AG Brown makes several counterarguments, none of which are sufficient to overcome the surplusage canon or the canon of consistent usage.

First, AG Brown makes much of one case from the Court of Appeals of Maryland, *In re O.P.*, 470 Md. 225, 265 (2020) (Opp'n at 6), arguing based on *O.P.* that "reasonable grounds" and "probable cause" are "synonymous standards." AG Brown's reading of *O.P.* is quite simply wrong, while inexplicably ignoring a separate and critically important Court of Appeals case, *Motor Vehicle Administration v. Shepard*, 399 Md. 241 (2007), that came to the opposite conclusion. As

8

an initial matter, while the Court did state in one instance in *O.P.* that "[reasonable grounds] has *often* [not always] been used essentially as a synonym for probable cause," *O.P.*, 470 Md. at 265 (emphasis added), this was a general and non-definitive statement. More importantly, the context in the case at bar is entirely distinguishable from *O.P.,* since here, unlike *O.P.*, the issue is the use of different standards within the *same* statute rather than comparison of usage between *different* statutes, thus making the surplusage canon applicable.

Second, just as important as the need for proper context is AG Brown's failure to bring *Shepard* to this Court's attention. In *Shepard*, the respondent's driver's license was suspended pursuant to MD. CODE ANN., TRANSP. § 16-205.1 after he refused to take an alcohol concentration test after a traffic stop; an administrative law judge upheld the suspension, and the Circuit Court vacated the suspension. 399 Md. at 243. Reversing the lower court's vacatur, the Court of Appeals considered and rejected the respondent's argument that " 'reasonable grounds' as used in the statute means 'probable cause.'" *Id*. The Court of Appeals held:

> [Respondent] argues that "reasonable grounds" means "a preponderance of the evidence standard" or at the very least, probable cause. *We disagree and hold that the term "reasonable grounds"* as used in § 16-205.1 *means "reasonable articulable suspicion"* and *not* preponderance of the evidence or *probable cause*.

*Id*. at 254 (emphases added). But that is not all. The Court unequivocally reiterated its holding: "**_As we have indicated, reasonable grounds means less than probable cause_**." *Id*. at 259 (emphasis added). This is an inconvenient quote for AG Brown, which is perhaps why it was excluded from the Opposition.

Next, AG Brown attempts to dismiss the fact that the Maryland AG's Office conceded that "reasonable grounds" is a lesser standard than "probable cause" in *Lyles v. State*, No. 1536, 2020 WL 6158444 (Md. Ct. Spec. App. Oct. 21, 2020), *cert. denied*, *Lyles v. State*, 474 Md. 190, 253 A.3d 621 (Md. Mar 1, 2021). (*See* ECF 15-8 at 4).  The AG's Office, in its appellate brief, wrote:

9

"The State agrees with Lyles that a warrant may only issue upon 'probable cause,' **and that 'reasonable grounds' is a lesser standard than 'probable cause.'**" (ECF 15-8 at 4) (emphasis added). The AG argues that "Plaintiffs have presented no case law establishing that [the AG's *Lyles* brief] is conclusively binding in subsequent cases," that the context here is different, and that the assistant AG's concession was "unnecessary" (whatever that means). (Opp'n at 8). But what AG Brown misses is that Plaintiffs never argued that the AG's brief is "conclusively binding." The *Lyles* brief does, however, demonstrate the AG's lack of credibility in this Court and is yet another piece of evidence that "reasonable grounds" and "probable cause" are not synonymous here. And, the context of *Lyles*—a criminal search warrant—is actually not meaningfully different from the context of firearms seizures in RFL proceedings, which are quasi-criminal in nature. The context is quite similar, in fact.

      AG Brown then argues that the appearance of "probable cause" in five instances of the RFL is meaningless because "the different nomenclature . . . appears to be a function of how the legislation came together." (Opp'n at 8). The AG goes on to argue that "the ERPO laws' use of different terminology for the same standard appears to be more a function of last-minute legislative patchwork than a deliberate attempt to require the use of different standards." (*Id*. at 9). This argument is contradicted by Delegate Valentino-Smith's statement of intent to cut corners with constitutional safeguards, which is certainly more evidence of intent than the speculation the AG has offered. The "patchwork" and "last-minute" claims are vague, purely speculative, and do not meaningfully address the surplusage canon or the canon of consistent usage. The AG offers no factual or legal citations and appears to be guessing about how the legislation came together. Such guesswork also smacks of desperation, as the AG appears to be asking this Court to excuse the

10

Legislature's word selections as an accident or innocent mistake because legislators were in a "last-minute" rush (in any event, the AG offers no evidence that this is even true).

The only support AG Brown offers for this "patchwork" and "last-minute" argument is the AG's conjecture that "the general infrastructure of the ERPO laws was borrowed from the domestic violence protective order ("DVPO") statutes, which use the "reasonable grounds" standard. (Opp'n at 9) (citing MD. CODE ANN., FAM. LAW § 4-504.1(b) (LexisNexis 2019)). But this argument actually undermines the AG's position because DVPOs issued under the Family Law are very different than ERPOs issued under the RFL. The DVPO statute exists to provide "relief from abuse" for petitioners, FAM. LAW § 4-504 (a), whereas the RFL exists to confiscate firearms from individuals deemed to "present an immediate and present danger . . . by possessing a firearm," PUB. SAFETY §§ 5-603, 5-604. The "nomenclature" in the DVPO statute is also a poor fit for the RFL because the DVPO statute, unlike the RFL, *does not* implicate Fourth Amendment search and seizure concerns, as the relief available under the Family Law is not a species of warrant but rather is *injunctive* in nature—a petitioner may obtain an order (injunction) requiring the respondent to refrain from engaging in certain conduct, such as contacting the petitioner, or requiring the respondent to remain away from certain locations. Neither of these injunctions involve search and seizure of personal effects. Moreover, nowhere does the DVPO statute mention the terms "firearm" or "firearms" and nowhere does it use the term "surrender" or any other term relating to search and seizure.

In light of the clear differences between the Family Law and the RFL, even if AG Brown's speculation that the RFL was modeled on the DVPO statute is correct, this actually confirms that Maryland's Legislature deliberately chose an exceptionally poor analogue (the Family Law) on which to model the RFL. Indeed, all the AG has accomplished is showing that the Legislature

11

imported the "reasonable grounds" standard from an old statute that *does not* implicate Fourth Amendment search and seizure (the DVPO statute) into a new statute (the RFL) that *does* implicate Fourth Amendment search and seizure. Thus, the AG furthers Plaintiffs' cause by highlighting the Legislature's deliberate use of a standard ("reasonable grounds") that may be appropriate for an *injunction* under the Family Law (*i.e.,* "refrain from abuse or stay away from a location") but is too low for a *warrant* compelling surrender of firearms or in the alternative search and seizure of said firearms, which must be issued on "probable cause" or higher to comply with the Fourth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("[S]urrender to the State's show of authority constitutes a seizure for the purposes of the Fourth Amendment.")

AG Brown further aids Plaintiffs' case by arguing that the "probable cause" standard appears in several instances in the RFL because the Legislature "imported the language from the stand-alone emergency evaluation statute, which uses the 'probable cause' standard." (Opp'n at 9) (citing MD. CODE ANN., HEALTH-GEN § 10-623 (LexisNexis 2019)). This only clarifies further that the surplusage canon and canon of consistent usage should apply here—the AG concedes that the Legislature imported the "reasonable grounds" standard from the Family Law and separately imported the "probable cause" standard from the Health General law. The AG alleges that the Maryland Legislature deliberately chose two separate standards and deliberately imported them from two wholly unrelated statutory schemes into the RFL. These distinct standards chosen by the Legislature are no stray marks on a page. As the AG apparently concedes, these standards were deliberately cherry-picked from two existing statutes (Family Law and Health General) and are indicative of a legislative intent to require separate burdens of proof for separate judicial actions under the RFL.

12

At bottom, speculation regarding the Legislature's motives is irrelevant: "The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration." *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1749 (2020); *see also Turkiye Halk Bankasi A.S. v. United* States, 598 U.S. 264, 279 (2023) ("But we must interpret the FSIA as written."); *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005) ("The Government suggests that it is questionable whether Congress would employ such an inelegant formulation . . . . Long experience has not taught us to share the Government's doubts on this score, and we must simply interpret the statute as written.") (cleaned up). And the RFL as written undoubtedly violates the Fourth Amendment.

Accordingly, this court should apply the canons, and decline the AG's invitations to rewrite the RFL and to pretend that differing standards were caused by a "last-minute" rush.

  **B.**  **Plaintiffs are Likely To Succeed on Their Second Amendment Claim**

As an initial matter, AG Brown's Second Amendment arguments rest in substantial part on the Declaration of Saul Cornell (ECF 24-1). Accordingly, the arguments in Cornell's Declaration are rebutted in detail in the accompanying Declaration of Edward Andrew Paltzik. As discussed at length in the Reply Declaration of Edward Paltzik in Support of Plaintiffs' Motion for Preliminary Injunction ("Paltzik Decl."), many of Cornell's assertions are either historically wrong or simply meaningless to the outcome here; just as importantly, Cornell's *extreme* animus toward the Second Amendment and gun owners, willingness to distort history to reach desired results, and his lack of credibility as a mouthpiece for the *same* anti-gun point of view in every litigation for which he is retained, are matters of public record.

Moreover, Cornell aside, AG Brown makes multiple incorrect assertions that are grossly out-of-step with *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111, 2118, 2127 (2022), which "demands a test rooted in the Second Amendment's text, as informed by history"

13

and requires AG Brown to "affirmatively prove that [the RFL] is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."

First, the AG offers several irrelevant analogies. The AG compares RFL respondents to "intoxicated people, drug addicts, and minors," who were historically subjected to firearms regulations. (Opp'n at 14). But the RFL doesn't define who might be considered "dangerous" and get swept up into the RFL's boundless net. The RFL, without guiding criteria, subjects *anyone* considered "dangerous" by an *ex parte* petitioner to the burden of an ERPO. The AG also compares RFL respondents to "loyalists and rebels in the 18th century," (Opp'n at 10), knowing full well that this analogy is apples to oranges—so-called "loyalist laws" were *military, wartime* measures from the Revolutionary War. (*See* Paltzik Decl. at ¶¶ 46-50). Also unavailing are the AG's references to legislative developments from "the 20th century," (Opp'n at 10), which are too late in time and not material under the *Bruen* analysis. *Bruen*, 142 S. Ct. at 2132 (The Second Amendment's "meaning is fixed according to the understandings of those who ratified it"); *Gamble v. United States*, 139 S. Ct. 1960, 1975-76 (2019) (explaining *Heller* sought to determine "the public understanding in 1791 of the right codified by the Second Amendment").

Second, the AG attempts to justify the RFL by claiming that "[i]ndividuals subject to interim or temporary ERPOs pose a grave danger to others . . . . their possession of firearms imperils . . . others in the community." (Opp'n at 19). But this is a bizarre argument considering that this very action involves a man wrongly subjected to an ERPO (Willey) and vindicated when Defendant Susan Webb retreated from her false allegations in lieu of further perjury. (ECF 28-3 at 3:9-20). If anything, the egregious facts of Willey's case show exactly why the Maryland RFL flouts *Bruen*: there is no historical tradition of wholesale firearms bans for *possible* or *theoretical* future "dangerous" conduct absent concrete violation of law.

14

Third, the AG blames "technological factors" for why red flag laws appeared only recently, claiming that "only a small fraction of spousal homicides" were committed with a firearm in colonial times. (Opp'n at 19). This is utterly absurd—firearms are not a new technology, were prevalent in colonial times, and were just as available to domestic abusers as in modern times.

### III. CONCLUSION

For the reasons stated herein and in Plaintiffs' Opening Brief (ECF 15-1), the Motion should be granted in its entirety.

Date: December 20, 2023

Respectfully Submitted,

By: /s/ Edward A. Paltzik

Edward A. Paltzik, Esq. (Bar. No. 30,785)
Serge Krimnus, Esq. (Bar No. 22,072)
**Bochner PLLC**
1040 Avenue of the Americas, 15th Floor
New York, New York 10018
(646) 971-0685
edward@bochner.law
serge@bochner.law
*Attorneys for Plaintiffs*

15