# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### NORTHERN DIVISION

-------------------------------------------------------X

DONALD S. WILLEY and THE SECOND
AMENDMENT FOUNDATION,

        Plaintiffs,

    -against-

ANTHONY G. BROWN, in his
official capacity as Attorney General of
Maryland, DORCHESTER COUNTY,
Maryland, SUSAN E. WEBB, personally
and in her official capacity as Director of
Planning & Zoning for Dorchester County,
Maryland, and JAMES W. PHILLIPS, JR.,
personally and in his official capacity as
Sheriff of Dorchester County, Maryland,

        Defendants.

Case No. 1:23-cv-02299-BAH

-------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS
AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

I.  Introduction ........................................................................................................... 1

II.  Factual & Legal Background ................................................................................ 2

    A.  Factual Backrgound ....................................................................................... 2

    B.  Procedural Posture ........................................................................................ 2

III.  Argument............................................................................................................ 3

    A.  The Sufficiency of Plaintiffs' Claims Against Defendants In Their Official Capacities . 3

    B.  Supreme Court Precedent Confirms The State Defendants Are "Persons" Under 42 U.S.C. § 1983 ................................................................................................... 5

    C.  Phillips, In His Individual Capacity, Is Not Entitled To Qualified Immunity ................. 5

        *1.  Phillips Violated Clearly Established Law* .................................................... *6*

        *2.  Phillips is Liable As A Supervisory Official* ................................................. *8*

        *3.  Qualified Immunity Does Not Shield Constitutional Violations Where Facts Are In Dispute* ............................................................................................. *10*

    D.  Plaintiffs Have Exceeded the Pleading Standards And Demonstrated A Likelihood of Success on The Merits of Their Claims ........................................................... 10

        *1.  Plaintiffs are Likely To Succeed on Their Facial Fourth Amendment Challenge* ................................................................................................. *10*

        *2.  The Maryland RFL Fails to Provide Respondents With the Procedural Due Process Demanded by the Fourteenth Amendment* ..................................... *12*

        *3.  RFL Respondents are Not Guaranteed the Right to Counsel in Violation of the Sixth And Fourteenth Amendments* ............................................................. *14*

    E.  Response to State Defendants' Preliminary Injunction Opposition ............................... 16

        *1.  Plaintiffs Will Suffer Irreparable Harm Absent Judicial Intervention* ........................ *16*

        *2.  Balance of Equities and Public Interest*........................................................ *18*

IV.  Conclusion ........................................................................................................ 19

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Almeida–Sanchez v. United States,*
   413 U.S. 266 (1973) ................................................................................................ 6, 12

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................................ 6, 10

*Baynard v. Malone,*
   268 F.3d 228 (4th Cir. 2001) .................................................................................... 6, 9

*Berger v. New York,*
   388 U.S. 41 (1967) .................................................................................................. 6, 12

*Borkowski v. Baltimore County,*
   414 F. Supp. 3d 788 (D. Md. 2019) ............................................................................ 4

*Burley v. Baltimore Police Dep't,*
   422 F. Supp. 3d 986 (D. Md. 2019) ......................................................................... 6, 9

*Caniglia v. Strom,*
   593 U.S. 194 (2021) ........................................................................................... 3, 6, 11

*Chapman v. United States,*
   365 U.S. 610 (1961) .................................................................................................... 17

*Cities4Life, Inc. v. City of Charlotte,*
   341 F.Supp.3d 621 (W.D.N.C. 2018) ..................................................................... 6, 15

*Elrod v. Burns,*
   427 U.S. 347 (1976) ............................................................................................... 6, 17

*Ex Parte Young,*
   209 U.S. 123 (1908) ............................................................................................. 4, 5, 6

*Fitzpatrick v. Bitzer,*
   427 U.S. 445 (1976) ................................................................................................. 4, 6

*In re Gault,*
   387 U.S. 1 (1967) ................................................................................................... 6, 15

*Giovani Carandola, Ltd. v. Bason,*
   303 F.3d 507 (4th Cir. 2002) ................................................................................. 6, 18

*Graham v. Gagnon,*
   831 F.3d 176 (4th Cir. 2016) ........................................................................... 6, 7

*Griffin v. Wisconsin,*
   483 U.S. 868 (1987) ........................................................................................ 6, 8

*Groh v. Ramirez,*
   540 U.S. 551 (2004) ........................................................................................ 6, 7

*Hafer v. Melo,*
   502 U.S. 21 (1991) ............................................................................................... 5

*Illinois v. McArthur,*
   531 U.S. 326 (2001) ........................................................................................ 6, 8

*Johnson v. City of Aiken,*
   278 F.2d 333 (4th Cir. 2002) ............................................................................... 4

*Kentucky v. Graham,*
   473 U.S. 159, (1985) .................................................................................... 4, 5, 7

*Kipke v. Moore,*
   695 F. Supp. 3d 638 (D. Md. 2023) ............................................................... 7, 18

*Legend Night Club v. Miller,*
   637 F.3d 291 (4th Cir. 2001) ......................................................................... 7, 18

*Logan v. Zimmerman Brush Co.,*
   455 U.S. 422 (1982) ...................................................................................... 7, 14

*Malley v. Briggs,*
   475 U.S. 335 (1986) ............................................................................................ 7

*Maryland Shall Issue, Inc. v. Montgomery Cnty., Maryland,*
   2023 WL 4373260 (D. Md. July 6, 2023) ..................................................... 7, 17

*Mathews v. Eldridge,*
   424 U.S. 319 (1976) ...................................................................................... 7, 13

*Messerschmidt v. Millender,*
   565 U.S. 535 (2012) ........................................................................................ 6, 7

*Michigan v. DeFillippo,*
   443 U.S. 31 (1979) ........................................................................................ 7, 12

*Miranda v. Garland,*
   34 F.4th 338 (4th Cir. 2022) .......................................................................... 7, 17

*Mullenix v. Luna*,
    577 U.S. 7 (2015) ........................................................................................ 6

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................................ 7, 16

*Obergefell v. Hodges*,
    576 U.S. 644 (2015) ................................................................................ 7, 19

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ..................................................................................... 6

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) ....................................................................................... 4

*Renzi v. Naphcare, Inc.*,
    2025 U.S. Dist. LEXIS 23111 (M.D.N.C. Feb. 10, 2025) ........................ 10

*Rivas-Villegas v. Cortesluna*,
    595 U.S. 1 (2021) .......................................................................................... 6

*Roe v. Dep't of Def.*,
    947 F.3d 207 (4th Cir. 2020) .................................................................. 7, 18

*Ross v. Army*,
    818 F.2d 875 (Fed. Cir. 1987) ................................................................ 7, 18

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) ...................................................................................... 5

*Sibron v. New York*,
    392 U.S. 40 (1968) .................................................................................. 7, 12

*Spring Commc'ns, Inc. v. Jacobs*,
    571 U.S. 69 (2013) .................................................................................. 7, 15

*Supreme Court of Virginia v. Consumers Union of United States, Inc.*,
    446 U.S. 719 (1980) ................................................................................. 4, 7

*Torres v. Puerto Rico*,
    442 U.S. 465 (1979) ................................................................................ 8, 12

*Turner v. Rogers.*,
    564 U.S. 431 (2011) ................................................................................ 8, 14

*U.S. v. Leon*,
    468 U.S. 897 (1984) ................................................................ 6, 8, 12

*United States v. Crawford*,
    552 F. App'x 240 (4th Cir. 2014) ........................................................ 8

*Vitek v. Jones*,
    445 U.S. 480 (1980) ................................................................ 8, 12, 13

*Will v. Michigan Dep't State of Police*,
    491 U.S. 58 (1989) ...................................................................... 5, 8

*Willingham v. Crooke*,
    412 F.3d 553 (4th Cir. 2005) ............................................................ 10

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .................................................................... 2, 8, 16

*Wolff v. McDonnell*,
    418 U.S. 539 (1974) ..................................................................... 8, 12

*Ybarra v. Illinois*,
    444 U.S. 85 (1979) ...................................................................... 8, 12

<u>Statutes</u>

42 U.S.C. § 1988 ............................................................................. 4, 8

Md. Code Ann., Crim. Proc. §§ 5-213 ....................................................... 8

Md. Code Ann., Pub. Safety §§ 5-601 *et seq.* .................................... *passim*

<u>Other Authorities</u>

11A Wright & Miller, Federal Practice and Procedure § 2948.1 (3d ed. 2022) ...................... 8, 17

## I.    INTRODUCTION

Plaintiffs Donald S. Willey ("Willey") and The Second Amendment Foundation ("SAF" and, collectively with Willey, "Plaintiffs") hereby respond to Defendants Anthony G. Brown and James W. Phillips Jr.'s ("the State Defendants") Motion to Dismiss the Second Amended Complaint and Opposition to Plaintiffs' Renewed Motion for Preliminary Injunction [ECF 63], (Memorandum of Law in Support of Motion to Dismiss, the "Motion to Dismiss" or "MTD.").

Plaintiffs have moved for a preliminary injunction prohibiting enforcement of Maryland's "Red Flag Law" (the "Maryland RFL" or the "RFL"), which violates the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution as set forth in Plaintiffs' Second Amended Complaint (the "SAC") ("Motion for Preliminary Injunction" or "MPI").

The Maryland RFL violates the fundamental constitutional rights of Willey, the members of SAF, and the members of the Maryland public including at least those rights protected by: (a) the Fourth and Fourteenth Amendments because the RFL authorizes state District Court commissioners and judges to issue ERPOs on a standard *less than "probable cause" called "reasonable grounds;"* (b) the Fourteenth Amendment for the separate reasons that the Maryland RFL does not allow a Respondent to present any evidence before issuance of an Interim ERPO, nor does it guarantee that a Respondent will be able to present evidence at a Temporary ERPO hearing, and (c) the Sixth and Fourteenth Amendments since ERPO proceedings are quasi-criminal and the RFL does not inform a Respondent of their right to counsel, nor does it provide such a right.

The State Defendants oppose Plaintiffs' Motion for Preliminary Injunction, arguing that the balance of equities favors this Court's endorsement of an ongoing deprivation of fundamental rights over injunctive relief. MTD at 22 *et seq.*

Additionally, the State Defendants have moved to dismiss the SAC on the grounds that it allegedly seeks improper relief against defendants in their official capacities, that Plaintiffs' claims

against Sheriff Phillips in his personal capacity are barred by the doctrine of qualified immunity, and that the SAC fails to state "any legally viable claim." *Id.* at 14-17.

## II.     FACTUAL & LEGAL BACKGROUND

### A.     Factual Backrgound

As set forth in Plaintiff's Memorandum of Law accompanying the MPI, [ECF 58-1], The Maryland RFL authorizes state District Court commissioners and judges, upon a *civil* petition by a law enforcement officer or private citizen, to immediately issue an *ex parte* warrant ("RFL Warrant"), defined in the RFL as an "extreme risk protective order" (an "ERPO"), compelling the Respondent to surrender their property, including *all* firearms and ammunition in their possession; prohibiting the Respondent from purchasing or possessing firearms or ammunition for the duration of the ERPO; and directing law enforcement to serve and enforce the ERPO. MD. CODE ANN., PUB. SAFETY §§ 5-601 *et seq*. (West 2018). In some cases, ERPOs also require that a Respondent be taken (voluntarily or involuntarily) for a mental health evaluation. *Id.* If the Respondent does not comply with an ERPO, law enforcement officers are directed to impose criminal penalties, including seizure of the Respondent's firearms and ammunition, arrest, fines, and potential imprisonment. *Id*.

### B.     Procedural Posture

On July 25, 2024, this Court declined to issue a preliminary injunction, instead requesting definitive interpretation of the statute at issue from the Supreme Court of Maryland. ECF 43. (the "Certification Order"). Before the Supreme Court of Maryland, the State Defendants altered their arguments, abandoning their previous position that "reasonable grounds" and "probable cause" were synonyms and instead electing to dispute a previously conceded point: that ERPOs are warrants.

The Maryland Supreme Court was unable to resolve the certified questions of law in view of "the State Defendants' changes in position, especially concerning whether an ERPO is effectively a warrant." ECF 49 at 3. This Court accepted the parties' agreement that ERPOs were warrants, and

noted that it was unsurprising in view of recent Supreme Court precedent on the issue. *Id.* (citing *Caniglia v. Strom*, 593 U.S. 194 (2021).

After returning to this Court from the Maryland Supreme Court, Plaintiffs filed a Second Amended Complaint and renewed their Motion for Preliminary Injunction, seeking expedited relief on its Fourth, Fourteenth, and Sixth Amendment claims. Now, the State Defendants oppose Plaintiffs' Motion for Preliminary Injunctive Relief and have made their own Motion to Dismiss Plaintiffs' Second Amended Complaint.

## III.    ARGUMENT

Plaintiffs have far surpassed the pleading requirements of their Fourth, Sixth, and Fourteenth Amendment claims, and have in fact demonstrated a high likelihood of success on the merits of these claims. Plaintiffs, and Maryland residents as a whole, face continued infringement of their Fourth, Sixth, and Fourteenth Amendment rights due the threat that the government will improperly restrict their fundamendtal rights through the issuance of RFL Warrants (ERPOs) against them on a basis less than "probable cause," without the right to counsel, and without a guarantee that they will be able to present evidence at a Temporary ERPO hearing.

For the reasons that follow, this Court should deny the State Defendants' Motion to Dismiss and grant Plaintiffs' Motion for Preliminary Injunction.

### A.    The Sufficiency of Plaintiffs' Claims Against Defendants In Their Official Capacities

The State Defendants have argued that they are immune from damages arising from Plaintiffs' claims against them in their official capacities. MTD at 6-9. *But Plaintiffs do not seek damages against Brown or Phillips in their official capacities.* That is, with respect to Brown and Phillips in their official capacities, Plaintiffs seek (1) a preliminary and permanent injunction enjoining enforcement and implementation of the Maryland RFL in its entirety; (2) declarations that the Maryland RFL violates the Fourth, Sixth, and Fourteenth Amendments to the United States

3

Constitution, and (3) attorneys' fees and costs under 42 U.S.C. § 1988. *See generally,* SAC at 39-40.

Separate from Plaintiffs' prayer for relief in the form of damages is Plaintiffs' request for costs and attorneys' fees pursuant to 42 U.S.C. § 1988. Plaintiffs' claims against the State Defendants fall squarely within the *Ex Parte Young* exception to Eleventh Amendment immunity, which permits suits against government officials seeking injunctive relief. 209 U.S. 123 (1908). Under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar private citizens from suing state officials in their official capacity for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984); *Borkowski v. Baltimore County*, 414 F. Supp. 3d 788, 804 (D. Md. 2019) ("[I]mmunity does not bar a suit against a state official when a plaintiff is seeking prospective relief to end a continuing violation.")

Both the Fourth Circuit and the Supreme Court have held that payment of attorneys' fees is properly tied to liability on the merits. *Johnson v. City of Aiken*, 278 F.2d 333, 337-8 (4th Cir. 2002) (citing *Kentucky v. Graham*, 473 U.S. at 163). So, Plaintiffs' claims seeking reasonable attorneys' fees are permitted.

Additionally, it is worth noting that Congress has *expressly* authorized relief in the form of attorneys' fees for prevailing parties in civil rights actions in 42 U.S.C. § 1988. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 446 (1976). Awards under § 1988 have been extensively evaluated, and the Supreme Court has unanimously held that an award of fees could be entered against a State or state agency, in that case a State Supreme Court, in an injunctive action under § 1983. *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719, 739 (1980).

Plaintiffs' claims against the State Defendants in their official capacities seek forward-looking relief against ongoing Constitutional violations, coupled with an award of relief explicitly authorized by Congress. Such relief decidedly is not barred by Eleventh Amendment immunity.

**B.    Supreme Court Precedent Confirms The State Defendants Are "Persons" Under 42 U.S.C. § 1983**

The State Defendants have argued that because they are State officials acting in their official capacities, claims brought under 42 U.S.C. § 1983 do not apply to them. However, the central case presented in support of this argument confirms that the opposite is in fact true. *Will v. Michigan Dep't State of Police* notes that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." 491 U.S. 58, n.10 (1989) (citing *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14, (1985); *Ex parte Young*, 209 U.S. at 123.).

*Hafer v. Melo* further clarified the Supreme Court's holding, emphasizing that "it has been settled that the Eleventh Amendment provides *no shield* for a state official confronted by a claim that he had deprived another of a federal right under the color of state law." 502 U.S. 21, 30 (1991) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974)) (emphasis added).

Here, the Plaintiffs seek *injunctive* relief against the State Defendants in their official capacities, in addition to an award of attorneys' fees and costs of this action. It is black letter law that state agencies and officials such as the State Defendants are the quintessential "persons" contemplated by § 1983. To hold otherwise would undermine "the principal purpose behind the enactment of § 1983." *Id.*

**C.    Phillips, In His Individual Capacity, Is Not Entitled To Qualified Immunity**

Defendants' argument that Phillips, in his individual capacity, is entitled to qualified immunity as to count four. MTD at 17 *et seq.* In particular, Defendants argue that (1) Phillips did not violate any of Willey's clearly established constitutional rights because he was enforcing

Maryland's red flag laws; and (2) Phillips is not liable because he did not personally seize Willey's property and subject him to an involuntary mental health evaluation, but instead had his deputies do so. Defendants are wrong on both counts.

### 1.    Phillips Violated Clearly Established Law

As to Defendants' first argument, there is no doubt that the law requires a finding of "probable cause" before issuance of a warrant, requires appropriate due process before restrictions of fundamental rights, and requires that individuals facing government deprivations of fundamental rights be informed of their right to an attorney was clearly established at the time Willey and his property were seized. A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (*citing Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (internal quotation marks omitted). Defendants correctly note that qualified immunity is properly considered in cases where an objectively reasonable individual enforces a *valid* warrant issued by neutral, detached members of the judiciary. MTD at 17 *et seq.* However, the State Defendants declined to include the Supreme Court's full statement from *Messerschmidt v. Millender,* which clarified that "the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure *does not end the inquiry into objective reasonableness*." *Messerschmidt*, 565 U.S. 535, 546 (2012) (emphasis added).

Indeed, "a warrant may be so facially deficient. . . that the executing officers cannot reasonably presume it to be valid." *Groh v. Ramirez*, 540 U.S. 551, 552 (2004) (citing *Leon,* 468 U.S., at 923) (An officer who conducted a "clearly unreasonable" search based on a facially invalid warrant was not entitled to qualified immunity). The Supreme Court has held that searches pursuant to warrants are valid only when "(1) the warrant issued was supported by probable cause; or (2) it was not, but the officers executing it reasonably believed that it was." *Pearson v. Callahan*, 555 U.S.

223, 241–42 (2009). An officer cannot excuse his own misconduct in executing a facially invalid warrant by pointing to the greater incompetence of the magistrate. *Malley v. Briggs*, 475 U.S. 335, 346, n.9 (1986). Even assuming *arguendo* that this Court accepts the State Defendants' argument that an ERPO is not a warrant, "a reasonable officer cannot claim to be unaware of the basic rule that, absent consent or exigency, a warrantless search of a home is presumptively unconstitutional." *Groh v. Ramirez*, 540 U.S. 551, 552 (2004).

The Fourth Circuit has further elaborated on this issue, holding that "if it was objectively unreasonable to conclude there was probable cause [supporting the warrant,] then the officers are not immune from suit. *Graham v. Gagnon*, 831 F.3d 176, 183 (4th Cir. 2016). Maryland's ERPO statute permits government intrusion into the home *and* seizure of property on pain of criminal sanctions for noncompliance—all based on "reasonable grounds" and without a protected opportunity to contest the order. "Reasonable grounds" is an ostensibly insufficient safeguard for a right as fundamental as the right to be free from improper government search and seizure of lawfully owned property. Sheriff Phillips, as the holder of "final policymaking authority" as to execution of warrants in Dorchester County, surely knew that Willey had constitutional rights to be free from unconstitutional searches and seizures. There can be no objectively reasonable basis to support a belief that the ERPO was issued on a finding of probable cause, because the Maryland RFL explicitly allows writs authorizing searches and seizures (*i.e.,* warrants) to be issued on a finding of less than "probable cause." MD. CODE ANN., PUB. SAFETY §§ 5-603(a)(1) (authorizing issuance of interim ERPO upon "*reasonable grounds* to believe that the respondent poses an immediate and present danger of causing personal injury to the respondent, the petitioner, or another by possessing a firearm"); 5-604(a)(1) (authorizing issuance of a temporary ERPO upon "*reasonable grounds* to believe that the respondent poses an immediate and present danger of causing personal injury to the respondent, the petitioner, or another by possessing a firearm").

The "probable cause" requirement is one of the most basic elements of law enforcement training in the state of Maryland. The Police Entrance Level Training Objectives published by the Maryland Police Training Training and Standards Commission confirms that all new officers complete training on "Basic Criminal Law Concepts" including, *inter alia,* the definitions of "probable cause," "warrant," and "warrantless," determining whether a search based upon probable cause is valid, the process of obtaining and serving a search warrant, including completing a search warrant affidavit, application, and return, and proper procedure for searching a residence with or without a warrant. Maryland Police Training and Standards Comm'n, Police Entrance Level Training Objectives 2, 14 (Feb. 1, 2024) https://mpctc.dpscs.maryland.gov/regs/PELT_Objectives_2024.pdf (last accessed April 28, 2025). As the Sheriff of Dorchester County and a supervisory officer, Sheriff Phillips was undoubtedly aware of the most basic requirement that "probable cause" be shown before a warrant is issued.

Phillips' seizure of Willey and his property based upon a warrant[1] issued on "reasonable grounds"—a threshold far below "probable cause," clearly violates the Fourth Amendment, as authoritatively interpreted by the Supreme Court and the Fourth Circuit, and as acknowledged by the Maryland Police Training and Standards Commission.

### 2.     Phillips is Liable As A Supervisory Official

Defendants' argument that Phillips is not liable because it was his deputies that seized Willey's guns, took custody of Willey, and subjected him to an involuntary mental health evaluation, is without merit. "Liability of supervisory officials under § 1983" is found when a Court finds

---

[1] In the event that this Court finds ERPOs are not warrants for the purposes of Fourth Amendment analysis, Sheriff Phillips' conduct still violates clearly established law. The Supreme Court has held "that where the matter is of such a nature as to require a judicial warrant, it is also of such a nature as to require probable cause." *Griffin v. Wisconsin*, 483 U.S. 868, 877 (1987) (emphasis added). Indeed, "seizures of personal property are unreasonable within the meaning of the Fourth Amendment, without more, unless . . . accomplished pursuant to a judicial warrant, issued by a neutral magistrate after a finding of probable cause." *Illinois v. McArthur*, 531 U.S. 326, 330 (2001) (cleaned up). The Fourth Circuit is in accord. *See United States v. Crawford*, 552 F. App'x 240, 245 (4th Cir. 2014) (same). Sheriff Phillips was either acting (1) on a warrant not properly supported by probable cause or (2) without a warrant or an exception to the warrant requirement, both of which are Constitutionally impermissible.

"supervisory indifference or tacit authorization of subordinates." *Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986, 1013 (D. Md. 2019) (quoting *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001)). More specifically, the elements of a supervisory liability claim under § 1983 are: "(1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.*

Here, Plaintiffs have pled supervisory liability. In particular, Plaintiffs' SAC states that (1) Phillips "is the County's final policymaker with respect to enforcement of Maryland's criminal laws and certain civil laws, such as the RFL," and supervises the deputies in Dorchester County. SAC at ¶ 16; *see also id.* ¶ 115 (Phillips "had final policymaking authority; and . . . knew in all instances that Willey had fundamental and clearly established constitutional rights that any objectively reasonable person would have known"); (2) Phillips is the "final policymaker with respect to . . . the RFL," and therefore gave at least tacit (if not express) authorization to his deputies to enforce the RFL, *id.* ¶ 16; and (3) Phillips' policy in having his deputies execute unconstitutional warrants led directly to his deputies violating Willey's fundamental rights, *id.* ¶ 115.

Qualified immunity cannot apply in circumstances where, as here, Plaintiffs have plausibly alleged that a state official oversaw or authorized actions—such as the seizure of Mr. Willey's firearms and the involuntary mental health evaluation—that lacked proper procedural safeguards and were based on *ex parte* judicial orders unsupported by probable cause.

### 3. Qualified Immunity Does Not Shield Constitutional Violations Where Facts Are In Dispute

The factual record remains undeveloped, and at this stage, dismissal of claims against Sheriff Phillips on the grounds of qualified immunity is improper. At the motion to dismiss stage, the Court must accept Plaintiffs' allegations as true and draw all reasonable inferences in their favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs have alleged sufficient facts to detail supervisory liability by Sheriff Phillips in the violations of Willey's constitutional rights, warranting discovery at a minimum.

The Fourth Circuit recognizes, however, that "[o]rdinarily, the question of qualified immunity should be decided at the summary judgment stage." *Renzi v. Naphcare, Inc.,* No. 1:24CV211, 2025 U.S. Dist. LEXIS 23111, at *46-47 (M.D.N.C. Feb. 10, 2025) (Declining to rule on qualified immunity at the motion to dismiss stage in a case against sheriff defendants under § 1983 because it "depends upon the more factual questions surrounding Plaintiffs' Fourteenth Amendment claims.") (cleaned up) (citing *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) (noting that a court must reserve for trial the question of material fact concerning whether the alleged conduct occurred).

### D. Plaintiffs Have Exceeded the Pleading Standards And Demonstrated A Likelihood of Success on The Merits of Their Claims

Plaintiffs have (1) pled facts sufficient to state its claims against the State Defendants and (2) demonstrated a high likelihood of success on the merits of these claims.

### 1. Plaintiffs are Likely To Succeed on Their Facial Fourth Amendment Challenge

The State Defendants' contention that "an extreme risk protective order issued against a respondent who does not currently possess a firearm would not result in any search, seizure, or other constitutionally cognizable intrusion on privacy interests" and "would not implicate the Fourth Amendment *at all*," is a full reversal of their prior position in this litigation. This Court resolved the

issue, accepting the State Defendants' concession of Plaintiffs' argument that ERPOs are warrants and waiver of opposition to same. *See* ECF 41 at 16 (the "Memorandum Opinion") ("Defendants have not argued for the applicability of any recognized exception to the warrant requirement, *nor do they contest that the ERPO is effectively a warrant*.").

The State Defendants now ask this Court to find that an ERPO is not a warrant because it "does not authorize a law enforcement officer to affirmatively seize any firearms" and because there are allegedly circumstances in which an ERPO can be constitutionally issued. MTD at 4, 22.

Notwithstanding this Court's acceptance of the State Defendants' concession that ERPOs are warrants, the argument that there are circumstances in which the RFL can be applied constitutionally holds no water. The State Defendants have argued that because it is possible, *after the issuance of an unconstitutional warrant and the execution of an unconstitutional search*, that a Respondent will not to have any firearms or ammunition in their possession, Plaintiffs' challenge fails. *Id.* at 23. Not so. There can be no dispute that a warrant supported by probable cause is a threshold requirement for a government search, absent one of the very limited exceptions to the Fourth Amendment's warrant clause. *Caniglia*, 593 U.S. 194 (collecting cases). The constitutional violation occurs the moment that a defective warrant is issued on reasonable grounds. The possibility that a Respondent may exonerate themselves from an ERPO by having nothing to confiscate—although not impossible in view of the standard below "probable cause"—does not render any part of the processs acceptable under the Fourth Amendment. As a practical matter, it is highly unlikely that a law enforcement officer tasked with serving an ERPO would rely on a representation from a Respondent that they did not have any firearms, rather than conducting a search for weapons.

Despite the State Defendants' contention that it is "questionable whether the Warrant Clause itself acts as any basis to strike down a law," (MTD at 28), these issues have been explicitly and repeatedly resolved by the Supreme Court. "Searches carried out pursuant to statutes, *not yet*

*declared unconstitutional*, purporting to authorize searches and seizures without probable cause or search warrants" implicate the warrant clause of the Fourth Amendment. *U.S. v. Leon*, 468 U.S. 897, 912, n.8 (1984) (*citing Ybarra v. Illinois*, 444 U.S. 85 (1979); *Torres v. Puerto Rico*, 442 U.S. 465 (1979); *Almeida–Sanchez v. United States*, 413 U.S. 266 (1973); *Sibron v. New York*, 392 U.S. 40 (1968); *Berger v. New York*, 388 U.S. 41 (1967)). There is no authority to support departure from longstanding precedent that "statutes which, by their own terms, authorize searches under circumstances which do not satisfy the traditional warrant and probable-cause requirements of the Fourth Amendment" are unconstitutional. *Michigan v. DeFillippo*, 443 U.S. 31, 39 (1979) (cleaned up).

Because ERPOs are warrants under the Fourth Amendment and because "reasonable grounds" is less than probable cause, Plaintiffs have shown a high likelihood of success on the merits of their Fourth Amendment claims.

> **2.    The Maryland RFL Fails to Provide Respondents With the Procedural Due Process Demanded by the Fourteenth Amendment**

Under the Maryland RFL, Temporary ERPOs are impermissibly issued in violation of the Due Process protections afforded by the Fourteenth Amendment. *See* § 5-604 (a)(1) ("After a hearing on a petition, *whether ex parte or otherwise*…") (emphasis added).

Under the Due Process Clause of the Fourteenth Amendment, where fundamental rights, property interests, or liberty interests are implicated, the "right to present evidence is basic to a fair hearing." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974); *Vitek v. Jones*, 445 U.S. 480, 494 (1980) (Due Process Clause requires that the defending party be afforded an opportunity to present documentary evidence and witnesses). Notably, the Fourteenth Amendment does not protect the government's option to afford due process to those facing deprivations of rights. The mere possibility that due process will be satisfied is *not* sufficient to rise to the level of "protection" required by the Fourteenth Amendment, especially when fundamental rights are at stake.

Here, the language of the Maryland RFL guarantees that the government will have the option to allow a RFL Respondent process of law. *See* § 5-604(a)(1) (Authorizing issuance of Temporary ERPO *only* "[a]fter a hearing on a petition, whether *ex parte or otherwise*…") (emphasis added).

However, the Maryland RFL fails to guarantee that RFL Respondents will have their day in court, as protected by the Fourteenth Amendment. *Id.* As set forth more fully in Plaintiffs' Motion for Preliminary Injunction, application of the factors enumerated in *Mathews v. Eldridge,* makes clear that the RFL does not guarantee adequate process for RFL Respondents. 424 U.S. 319, 348 (1976). Specifically, the RFL does not guarantee that a Respondent will have *any* opportunity to present evidence in their defense or respond to questions of fact. *See* § 5-604 ("the judge shall consider all relevant evidence presented by the petitioner; and the amount of time that has elapsed since any of the events described in the petition.")

Additionally, the RFL does not guarantee that a Respondent will have the opportunity to cross-examine witnesses who may provide statements in support of a finding that their rights should be restricted. These proceedings offer no protection to the innocent owner, as demonstrated by Defendant Webb's falsified ERPO petition in this case.

The State Defendants have argued that "[I]n emergency situations where the public safety is threatened, the government may act expediently without first seeking judicial approval." MTD at 45. However, the Maryland RFL explicitly *requires* judicial approval, calling for "a hearing." § 5-604(a)(1). Plaintiffs' claims are not centered around the non-occurrence of a pre-deprivation hearing, since a hearing will take place. Instead, Plaintiffs' claims are focused on the substance of that hearing, including whether a Respondent has any right to present evidence or testify in their own defense before a Temporary ERPO is issued and their rights are restricted.

Accordingly, the Maryland RFL's authorization of a determination "after a hearing, *ex parte* or otherwise" enables courts to restrict the fundamental civil rights of RFL Respondents without

hearing a single word or viewing a shred of evidence from the person subject to the resulting ERPO. This so-called "hearing" does not satisfy the Fourteenth Amendment's requirement that "a meaningful opportunity to be heard" be afforded. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982) (internal citations omitted).

**3.    RFL Respondents are Not Guaranteed the Right to Counsel in Violation of the Sixth And Fourteenth Amendments**

Because ERPO proceedings are civil proceedings involving rights that comprise the core of individual liberty interests, the RFL's failure to provide a right to counsel is especially egregious. The State Defendants argue that because it is possible that an RFL Respondent will retain their own counsel for the purpose of defending themselves during the ERPO Process, Plaintiffs' claim must fail.

However, the Supreme Court has defined that the right to counsel in any given case is dictated by the potential "loss of liberty" and by the probable value of other procedural safeguards in the process. *Turner v. Rogers*. 564 U.S. 431 (2011) (citing *Mathews*). *Turner* confirms that the threatened loss of freedom from bodily restraint "demands due process protection" in the form of the right to counsel, or in the form of additional or substitute procedural safeguards. *Id.* at 446. The safeguards afforded to a respondent at a contempt hearing for an order to pay child support far surpass the protections afforded to RFL Respondents. The facts of *Turner* are inapposite with the present matter at least because in *Turner*, the adversary of the person without counsel was a co-parent, not the government. Even though the scales in *Turner* were significantly more balanced than in ERPO proceedings, *Turner* required that in lieu of representation of counsel, the Court provide the unrepresented defendant with additional procedural safeguards including adequate notice that their ability to pay was a critical issue, a restriction that the Court must collect relevant financial information directly from the defendant, and a guarantee that the Court would provide a fair opportunity for the defendant to present evidence in their favor and respond to questions of fact. *Id.*

14

at 447-48. All of these precautions were only available if the defendant's opponent was *also unrepresented by counsel. Id.*

One case that is more closely analogous to ERPO proceedings than *Turner* is *In Re Gault,* in which the Court required that the State pay for representation by counsel in a *civil* proceeding that could lead to incarceration, since it was "comparable in seriousness" to a criminal prosecution. 387 U.S. 1, 35-42 (1967). ERPO proceedings are closely parallel to criminal prosecutions. They are initiated by judicial authorization to search and/or seize an individual, (*i.e.* a warrant), they are intended to sanction an individual for some wrongful act, and they involve investigations that are designed to culminate in the filing of a petition which results in a significant restriction of fundamental rights (in this case- for a final ERPO, restricting rights for up to one year). *See generally,* §§ 5-603, 604, 610; *Cities4Life, Inc. v. City of Charlotte*, 341 F.Supp.3d 621, 630 (W.D.N.C. 2018); *Spring Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 81 (2013)).

The State Defendants make the unsupported claim that "if an indigent respondent were to be subject to prosecution for violating an extreme risk protective order, they would be provided counsel under principles and procedures generally applicable to criminal prosecutions." MTD at 53. But the RFL does not make such a guarantee. An indigent person subject to an ERPO proceeding is *never* guaranteed the right to counsel.

RFL Respondents are subject to restrictions not unlike criminal defendants in Maryland who have been released from custody pending trial. Courts in Maryland issue warrants for the arrest of criminal defendants released before trial and RFL Respondents alike, on the grounds that these individuals have violated the conditions imposed on them by an officer of the Court. *See* MD. CODE CRIM. PROC. § 5-213 (Authorizing issuance of a bench warrant for the arrest of a criminal defendant); PUB. SAFETY § 5-603(b)(2)(vi). Yet, the Maryland RFL does not protect a Respondents' right-to-counsel, as is required for criminal proceedings involving similar deprivations of rights.

15

Maryland RFL proceedings are an exercise of government power that results in the deprivation of property, often the deprivation of liberty, and invariably the deprivation of fundamental constitutional rights. These deprivations are executed without regard for the protections guaranteed by the Sixth and Fourteenth Amendments. Therefore, the Plaintiffs have a high likelihood of success on their Sixth and Fourteenth Amendment Claims. And, for all of the foregoing reasons, Plaintiffs are likely to succeed on their Fourth, Sixth, and Fourteenth Amendment claims.

### E.    Response to State Defendants' Preliminary Injunction Opposition

A preliminary injunction is warranted where the moving party can show (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in favor of the party seeking the injunctive relief, and; (4) that the injunctive relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Although all four factors favor granting relief, the first two elements are "most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Since the Maryland RFL authorizes issuance of warrants for the seizure of property based on a standard less than "probable cause", without informing an ERPO Respondent of their right to counsel, and without guaranteeing that a Temporary ERPO Respondent will have the opportunity to present evidence at a hearing, Plaintiffs have carried their burden of showing likelihood of success on the merits and of suffering irreparable harm in the absence of relief. Furthermore, the State Defendants would suffer no cognizable prejudice if an injunction were to issue, and the balance of equities heavily favors granting the requested relief.

### 1.    Plaintiffs Will Suffer Irreparable Harm Absent Judicial Intervention

The State Defendants have repeatedly asked this Court to take a flexible approach to protecting the fundamental rights of Plaintiffs and of the citizens of Maryland and allow the government to continue its wholesale infliction of irreparable harm without recourse.

The State Defendants contend that "reasonable grounds" is a sufficient burden of proof because it is consistent with the "emergency aid" and "special needs" doctrines that allow warrantless searches and seizures. However, these doctrines are only applicable in cases where there is *no time* to seek judicial approval for the government's intrusion. Rather than acknowledge the fact that ERPOs are warrants for the search of a Respondent's home, the State Defendants attempt to contort cases with diminished privacy interests (e.g., probationers, public employee workspaces, schools) or exigent circumstances (defined as *imminent threat* of injury) at bar. MTD at 32-33. ERPOs are precisely the opposite. They are judicially authorized orders directing the intrusion into a Respondent's home, for the purpose of restricting their fundamental rights.

The deprivation of a constitutional right, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Maryland Shall Issue, Inc. v. Montgomery Cnty., Maryland*, 680 F. Supp. 3d. 567 (D. Md. July 6, 2023) (Denial of a constitutional right qualifies as irreparable harm). Thus, when alleged deprivation of a constitutional right is involved, "most courts hold that no further showing of irreparable injury is necessary." 11A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. 2022). "The right of officers to thrust themselves into a home is a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance." *Chapman v. United States*, 365 U.S. 610, 615 (1961).

This irreparable harm to Plaintiffs is certainly capable of repetition. The facts of this matter are a near-perfect example of the types of governmental overreach that statutes like the Maryland RFL enable. As currently in force, the Maryland RFL requires that ERPO Respondent contend with (1) an evidentiary standard lower than the constitutional minimum for issuance of a warrant, (2) no protected right to counsel, and (3) in the case of Temporary ERPO, the possibility that they will have

*zero* opportunity to defend themselves (whether with counsel or *pro se*) prior to judicial restriction of their fundamental constitutional rights. It is certain that ERPOs will continue to be issued in a manner that does not comport with the Constitution.

The irreparable harm prong is satisfied upon establishing the denial of a constitutional right—here, the denial of Fourth, Sixth, and Fourteenth Amendment rights—by ongoing, daily issuance of ERPOs on less than "probable cause," against Respondents who have not been informed of their right to counsel, and in the case of all Interim and some Temporary ERPOs, without the opportunity to be heard. The entire Maryland RFL provides a framework for quasi-criminal proceedings that are currently devoid of constitutional protections. Its continued enforcement compromises the civil rights of Willey, members of SAF who reside in Maryland, and the members of the Maryland public.

As discussed *supra*, Plaintiffs have shown a high likelihood of success on the merits of their claims for violation of the Fourth, Sixth, and Fourteenth Amendments. Defendants' denial of those constitutional rights constitutes irreparable harm. *Ross v. Army*, 818 F.2d 875 (Fed. Cir. 1987). Therefore, Plaintiffs risk facing irreparable harm in the absence of the requested injunctive relief.

### 2.    Balance of Equities and Public Interest

As set forth in Plaintiffs' MPI, the balance of equities and public interest analyses are coextensive when the party opposing preliminary injunctive relief is the government. *Roe v. Dep't of Def.*, 947 F.3d 207, 230 (4th Cir. 2020), *as amended* (Jan. 14, 2020). There can be no questions that the public interest is served by enjoining unconstitutional government actions. *See*, *e.g.*, *Legend Night Club v. Miller*, 637 F.3d 291, 303 (4th Cir. 2001) ("upholding constitutional rights is in the public interest"); *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) ("upholding constitutional rights surely serves the public interest"). Further, "Plaintiffs are correct that the public has a strong interest in upholding constitutional rights and the State is not harmed by an injunction

preventing it from enforcing unconstitutional laws." *Kipke v. Moore*, 695 F. Supp. 3d 638, 663 (D. Md. 2023) (granting preliminary injunction enjoining enforcement of unconstitutional firearms laws). The balance of equities tips in Plaintiffs' favor and granting injunctive relief is in the public interest, at least since "identification and protection of fundamental rights is an enduring part of the judicial duty to interpret the Constitution." *Obergefell v. Hodges*, 576 U.S. 644, 663 (2015).

## IV.    CONCLUSION

For the foregoing reasons, the State Defendants' Motion to Dismiss should be denied. Additionally, Plaintiffs reiterate their request for a preliminary injunction enjoining Defendants' continued unconstitutional deprivation of Fourth, Sixth, and Fourteenth Amendment rights.

Date: April 28, 2025

Respectfully submitted,
*/s/ Edward Andrew Paltzik*
Serge Krimnus, Esq. (Bar No. 22072)
Edward Andrew Paltzik, Esq. (Bar No. 30785)
Bochner PLLC
1040 Avenue of the Americas, 15th Floor
New York, New York 10018
(516) 526-0341
edward@bochner.law
serge@bochner.law

*Attorneys for Plaintiffs*