

## TAYLOR DYKEMA

Edward Andrew Paltzik
Attorney
914 E 25th Street
Houston, TX 77009
edward@taylordykema.com
516-526-0341

January 9, 2026

**VIA ECF**

Hon. Brendan Abell Hurson
United States District Court
District of Maryland
101 West Lombard Street
Chambers 3D
Baltimore, MD 2101

Re:   *Willey et al v. Brown et al*; 1:2023-cv-02299
       Supplemental Briefing on Issues Identified During November 21, 2025 Oral Argument

Dear Judge Hurson:

   As you are aware, this firm represents Plaintiffs Donald Willey and the Second Amendment Foundation in the above-captioned action. We write, pursuant to this Court's request following the oral argument held on November 21, 2025, to supplement the briefing submitted in support of Plaintiff's Motion for Preliminary Injunction and Opposition to each of the Defendants' Motions to Dismiss.

## I.   <u>Appending "Probable Cause" to ERPO Issuance Is Improper</u>

   Defendants' proposed Constitutional "surgery"—cutting and grafting the words and meaning from a Fourth Amendment-compliant portion of the Maryland RFL onto the words and meaning of an unconstitutional portion of the Maryland RFL, in order to save the diseased, non-compliant portion of the statute, is not permitted. *See*, ECF 95 at p. 5. Defendants concede that the "reasonable grounds" standard that appears in *two* instances in MD. PUB. SAFETY § 5-601 *et seq.* (the "Maryland RFL"), ("probable cause" in MD. PUB. SAFETY §§ 5-603(a)(1), 5-604(a)(1)), used to seize firearms and ammunition from RFL respondents, is a standard less than the constitutionally-required "probable cause" (which appears in *five* instances in the Maryland RFL).

*Willey et al. v. Brown et al.*
Case No. 1:2023-cv-02299
January 9, 2026

This Court should reject Defendants' invitation to conflate the separate analytical processes which support the issuance of an ERPO under the Maryland RFL, and an emergency evaluation order pursuant to MD. HEALTH § 10-623(b).

First, as a threshold matter, "the Fourth Amendment's particularity requirement assures the subject of the search that a magistrate has duly authorized the officer to conduct a search of limited scope." *Groh v. Ramirez*, 540 U.S. at 554, 556-65 (2004) (invoking the importance of the "particularity requirement" no less than seventeen times). A search warrant[1] may only be as broad as the underlying probable cause permits. *United States v. Cox*, No. 3:24-cr-114, 2025 U.S. Dist. LEXIS 103449, at *25 (E.D. Va. May 30, 2025) (citing *United States v. Oloyede*, 982 F.2d 133, 138 (4th Cir. 1992) ("[The particularity] requirement ensures that the search is confined in scope to particularly described evidence relating to a specific crime for which there is probable cause.")). "For a warrant to be sufficiently particular, a description of the items sought should prevent 'the seizure of one thing under a warrant describing another.'" *United States v. Thomas*, No. 2:18-cr-58, 2018 U.S. Dist. LEXIS 225502, at *25 (E.D. Va. Dec. 10, 2018) (citing *Marron v. United States*, 275 U.S. 192 (1927); *United States v. Robinson*, 275 F.3d 371, 381-82 (4th Cir. 2011), *cert. denied*, 535 U.S. 1006 (2001)).[2]

In light of these universally recognized principles of Fourth Amendment jurisprudence, in order to satisfy the particularity requirement articulated in *Groh*, an independent finding of probable cause—distinct from the basis for an emergency evaluation order—must be established for an ERPO to be valid as applied to the case at bar involving Donald Willey and for that matter, any other RFL case involving any other RFL respondent. Put differently, probable cause which has been established for purposes of an emergency evaluation order may not be subsequently exported, or imputed, to an ERPO (issued on "reasonable grounds"), which under the current Maryland RFL, is improperly issued subject to a murky "reasonable grounds" determination, which by Defendants' own admission, has no clear definition and is "open to interpretation based on the context." Trans. at 38:3-4. Ultimately, Defendants' insistence that an ERPO may be properly issued and sustained based on an undefined and totally subjective "reasonable grounds"

---

[1] Although the Court is still considering the parties' extensive briefing on the issue of whether the ERPO qualifies as a warrant, should this Court ultimately determine that an ERPO, as a judicial order directing law enforcement officers to seize and inventory certain property (and issue a receipt for the same, also required by FED. R. CRIM. PROC. 41) is a warrant, it is facially deficient since Maryland RFL respondents are given "no written assurance that the Magistrate actually found probable cause." *Groh*, 540 U.S. at 553. As discussed in further detail *infra*, even if *arguendo*, this Court finds that ERPOs are not warrants, no exigent circumstances justify departure from the Fourth Amendment's probable cause standard.

[2] The record in this case, involving Donald Willey's circumstances, also does not support a finding of "probable cause." Although hearsay and information received from informants is acceptable evidence at this stage, (*United States v. DeQuasie*, 373 F.3d 509, 518 (4th Cir. 2004)), a magistrate must know something about the source of information before relying on it to find that probable cause exists. A finding of probable cause "must include a review of 'the veracity and basis of knowledge of persons supplying hearsay information.'" *United States v. Perez*, 393 F.3d 457, 461-62 (4th Cir. 2004) (internal citation omitted).



*Willey et al. v. Brown et al.*
Case No. 1:2023-cv-02299
January 9, 2026

standard cannot be supported by bootstrapping the standard for an emergency evaluation to the standard for seizure of firearms and ammunition.

Second, notably, the Maryland RFL clearly assigns two different subjects to its respective "reasonable grounds" and "probable cause" standards. In addition to the varying evidentiary standards that accompany two different inquiries, the resultant actions of each finding are distinguishable from each other. On one hand, pursuant to PUB. SAFETY § 603(a)(4), emergency evaluation orders require that a Maryland RFL respondent submit to an evaluation at a medical facility. Since the emergency evaluation requires surrender of the RFL Respondent's person, the liberty interests at issue are closely aligned to those protected by an arrest warrant. In contrast, the portion of the ERPO which orders a respondent to surrender their firearms and ammunition to law enforcement authorities and proscribes access to same, is more closely analogous to a search. The text of each statutory section is included below for side-by-side reference.

|  | **Emergency Evaluation** | **ERPO** |
|---|---|---|
| Evidentiary Standard | If the court finds "probable cause to believe… MD. HEALTH § 10-623(b). | If the court finds "reasonable grounds to believe… MD. PUB. SAFETY §§ 5-603(a)(1); 604(a)(1). |
| Object of Evidentiary Standard | …that the emergency evaluee has shown the symptoms of a mental disorder and that the individual presents a danger to the life or safety of the individual or of others." MD. HEALTH § 10-623(b). | …that the respondent poses an immediate and present danger of causing personal injury to the respondent, the petitioner, or another by possessing a firearm…" MD. PUB. SAFETY §§ 5-603(a)(1); 604(a)(1). |
| Resulting Judicial Action | "refer the respondent for emergency evaluation" MD. PUB. SAFETY § 5-604(a)(4) | (i) order the respondent to surrender to law enforcement authorities any firearm and ammunition in the respondent's possession; and (ii) prohibit the respondent from purchasing or possessing any firearm or ammunition for the duration of the [interim/temporary] extreme risk protective order." MD. PUB. SAFETY §§ 5-603(a); 604(a). |

Critically, both arrest warrants and search warrants "are subject to a probable cause determination," however, "'the interests protected by the two warrants differ.'" *United States v. Hill*, No. 2:04-CR-30, 2005 U.S. Dist. LEXIS 2263, at *22-23 (N.D. W.Va. Feb. 14, 2005)



*Willey et al. v. Brown et al.*
Case No. 1:2023-cv-02299
January 9, 2026

(quoting *Steagald v. United States,* 451 U.S. 204, 213 (1981)). Specifically, an arrest warrant is issued by a magistrate upon a showing of probable cause that the subject of the warrant has committed a specific offense. *Id.* And so, an arrest warrant primarily protects an individual from an unreasonable seizure of their person. *Id.* A search warrant, in contrast, is properly issued upon a showing of probable cause that the object of a search is "located in a particular place and, therefore, safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police." *Id.*

Appellate courts have frequently construed this particularity requirement to demand *new warrants for differing searches*. For example, law enforcement officers who were seeking review of electronic data stored on a cell phone that had been seized pursuant to a valid search warrant were required to obtain a separate warrant supported by a separate finding of probable cause. *United States v. Ray*, 141 F.4th 129, 132 (4th Cir. 2025). In another analogous case, the Fourth Circuit ruled that the extent of a search supported by probable cause to believe that a business was "permeated with fraud," was limited to only documents relating to the suspected criminal area and excluded "any severable portion of such documents relating to legitimate activities." *United States v. Oloyede*, 982 F.2d 133, 141 (4th Cir. 1992). Even though the *Oloyede* court affirmed the challenged convictions, the Fourth Circuit's analysis on the scope of conduct authorized by warrants is instructive here. *Oloyede* observed that even in cases where "the court found that the facts warranted a 'strong belief that [the] operation was*, solely and entirely, a scheme to defraud,'*" (citing *United States v. Brien*, 617 F.2d 299, 308 (1st Cir. 1980)), court-issued warrants authorized only the seizure of materials that the issuing judge found *probable cause* to believe were evidence of the scheme." *Id.* at 140.

Extending *Oloyede* to the matter at bar, a finding of probable cause to believe that an individual suffers from a mental illness[3] cannot be used to support an ERPO without more— specifically, a separate, independent finding of probable caused tied directly to the particular interests at stake under an ERPO. Although courts may consider some of the same facts, resolving the question of whether a person presents a danger in the abstract, as contemplated by MD. HEALTH § 10-623(b) for an emergency evaluation order, is not the same as evaluating the potential for "an immediate present danger of causing personal injury to the respondent, the petitioner, or another *by possessing a firearm.*" MD. PUB. SAFETY §§ 5-603(a), 604(a) (emphasis added).

---

[3] Notably, mental health and mental illness are exceedingly broad concepts. An emergency evaluation would be appropriate for an individual who is exhibiting symptoms consistent with the life-threatening condition of anorexia nervosa, a mental illness recognized by the Diagnostic and Statistical Manual of Mental Disorders. But there is no conceivable connection between probable cause of danger to the life of an individual suffering from an eating disorder and probable cause that such an individual presents a danger to self or others due to the possession of a firearm. So, too, hoarding disorder, narcolepsy, somatic symptom disorder, body dysmorphic disorder, agoraphobia, and sexual or paraphilic disorders (to name a few) may present a danger unrelated to firearms. *See generally,* AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (5th ed., 2013).



*Willey et al. v. Brown et al.*
Case No. 1:2023-cv-02299
January 9, 2026

Third, the Canons of Construction,[4] which are "useful in close cases, but [are] not a license for the judiciary to rewrite language enacted by the legislature" confirm that the "probable cause" and "reasonable grounds" standards should be considered to apply to different actions. *Chapman v. United States*, 500 U.S. 453, 464 (1991). The "prior construction" canon "derives from the principle that when Congress enacts legislation borrowing language with a settled meaning, the newly enacted legislation 'brings the old soil with it.'" *Eldridge v. Howard*, 70 F.4th 543, 556 (9th Cir. 2023) (quoting *Sekhar v. United States*, 570 U.S. 729, 733 (2013); Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 COLUM. L. REV. 527, 537 (1947)). "In other words, when Congress adopts a phrase with a settled judicial interpretation, absent some indication to the contrary, we presume that Congress chose to give the phrase its established meaning." *Id.* (citing *United States v. Randall*, 34 F.4th 867, 875 (9th Cir. 2022)). Under the prior-construction canon, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Id.* (citing *Lorillard v. Pons*, 434 U.S. 575, 580 (1978); *Chugach Mgmt. Servs. v. Jetnil*, 863 F.3d 1168, 1174 (9th Cir. 2017)).

There can be no question that the phrase "probable cause" has been frequently interpreted by courts, including the Supreme Court, since addition to the Constitution in 1792. Since this term is exceedingly well-defined, the choice to adopt it in certain parts of the Maryland RFL confirms that the enacting body understood the impact of their phrasing. And so, the Maryland RFL's use of "probable cause" in some sections, but "reasonable grounds" in others, is not properly considered an inadvertent oversight. The deliberate choices of the Maryland general assembly, which are made clear in the plain text of the Maryland RFL but even further emphasized when the relevant canons are applied, confirm that the "reasonable grounds" condition modifies only the decision to issue an ERPO, while the "probable cause" finding is condition precedent to an emergency evaluation order. Here, as in *Russell Motor Car Co. v. United States,* the meaning of the predicate words "is not doubtful" and they "obviously differ from one another" in their operative scope. 261 U.S. 514, 520-21 (1923) (severing two phrases in the same sentence into distinctly operative parts).

## II.    The Maryland RFL is Facially Invalid, and this Case Presents a Valid Facial Challenge under the Fourth Amendment, Irrespective of Whether Some RFL Respondents Turn Out to Not Possess Firearms

Defendants have argued that "if you don't have firearms, if you're not even alleged to have firearms we're not even in the Fourth Amendment context. There's no seizure, there's no search, there's just an order that says you may not possess or acquire firearms," and so, Plaintiffs' facial challenge of the Maryland RFL fails. Trans. at 30:17-18. While it is possible that an ERPO issued on a standard less than probable cause may not result in an arrest or seizure of property, whether the government found anything in their search is not dispositive. The violation occurs when an order authorizing a search and seizure *issues* on finding less than probable cause.

---

[4] These arguments are in addition to the other Canons of Construction arguments which were raised in prior briefing and at oral argument and which are not repeated herein. *See* Trans. 21:18.



*Willey et al. v. Brown et al.*
Case No. 1:2023-cv-02299
January 9, 2026

Although facial challenges are considered "the 'most difficult challenge[s] to mount successfully,'" *United States v. Rahimi*, 602 U.S. 680, 688 (2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)), the Supreme Court has definitively established "not only that facial challenges to statutes authorizing warrantless searches can be brought, but also that they can succeed." *City of L.A. v. Patel*, 576 U.S. 409, 418 (2015) (Finding that a statute which authorized arrest of a hotel owner who refused to comply with officer demand for guest registry on less than probable cause was facially invalid.). "To succeed in a typical facial attack, [Plaintiffs] would have to establish 'that no set of circumstances exists under which [the Maryland RFL] would be valid,' or that the statute lacks any 'plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 472 (2010) (quoting *Salerno*, 481 U.S. at 745; *Washington v. Glucksberg*, 521 U.S. 702, 740 n.7 (1997) (Stevens, J., concurring in judgment)). When adjudicating facial challenges, Courts "must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-50 (2008) (citing *United States v. Raines*, 362 U.S. 17, 22 (1960).

*Sibron v. New York* is one of several successful facial Fourth Amendment challenges acknowledged by the Supreme Court. 392 U.S. 40 (1968). As described in *Patel*, *Sibron* was a case in which "two criminal defendants challenged the constitutionality of a statute authorizing police to, among other things, 'stop any person abroad in a public place whom they reasonably suspect is committing, has committed or is about to commit a felony.'" *Id.,* at 43 (quoting then N.Y. CODE CRIM. PROC. §180-a) (cleaned up). Here, as in *Sibron*, Plaintiffs are challenging a statute—the Maryland RFL—that ultimately authorizes government intrusion without the appropriate Constitutional safeguards. Both the Maryland RFL and the statute at issue in *Sibron* authorize government intervention on the basis of potential future conduct (i.e., "danger of causing personal injury" and "about to commit a felony").

Here, the critical inquiry is whether probable cause exists at or before the issuance of an ERPO. "Probable cause must be evaluated at the time of the warrant application, not in light of subsequent developments." *United States v. Chatrie*, 136 F.4th 100, 153 (4th Cir. 2025) (citing *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017)). Indeed, the Fourth Amendment provides that "no warrants *shall issue*, but upon probable cause…" U.S. CONST. amend IV. (emphasis added).

Defendants have argued that "if you don't have firearms, if you're not even alleged to have firearms we're not even in the Fourth Amendment context. There's no seizure, there's no search, there's just an order that says you may not possess or acquire firearms," and thus, Plaintiffs' facial challenge of the Maryland RFL fails. Trans. at 30:17-18. In other words, Defendants assert that the Maryland RFL is facially valid due to the possibility that an ERPO results only in deprivation of liberty, without necessarily effectuating a seizure of property. However, allowing Defendants to invoke the possibility that they may be wrong about the presence of firearms altogether, in order to gloss over the core issue—that the Mayland RFL is predicated upon on an inappropriate standard—would effectively amount to rewarding the government for being wrong. Stated differently, a facial challenge to a statute that fails to abide by Constitutional standards does not evaporate merely because the law enforcement officers may come up empty handed. On the contrary, the proportion of RFL Respondents who do not possess firearms will only increase as



*Willey et al. v. Brown et al.*
Case No. 1:2023-cv-02299
January 9, 2026

the burden of proof is lowered. "Probable cause" is merely the standard sufficient to deter government endorsement of "exploratory rummaging [through] a person's belongings." *United States v. Ray*, 141 F.4th 129, 135 (4th Cir. 2025); (citing *United States v. Dargan*, 738 F.3d 643, 647 (4th Cir. 2013); *Andresen v. Maryland*, 427 U.S. 463, 480 (1976)). Conversely, "reasonable grounds" is plainly insufficient to protect the rights at issue in an ERPO, regardless of whether the Court authorizes a seizure of firearms, a restriction of fundamental liberties, or both.

Moreover, even if *arguendo*, if Defendants could maintain their dubious assertion that the ERPO itself "is not a warrant, it's an order that directs the respondent to surrender weapons to law enforcement," Trans. at 34:4-6 (contradicting their previous concession that ERPOs *are* warrants), the constitutional infirmity of the current Maryland RFL cannot be remedied. Indeed, even if ERPOS were not warrants, but rather a different type of writ such as an injunction, the result here must be the same because the end result is seizure of property, and probable cause is required even in the absence of a warrant, absent several narrowly defined exceptions.

It is uncontroverted that a warrant supported by probable cause is a threshold requirement for any government search or seizure, absent one of the very limited exceptions to the Fourth Amendment's warrant clause. As recognized in longstanding precedent established by the Supreme Court, "statutes which, by their own terms, authorize searches under circumstances which do not satisfy the traditional warrant and probable-cause requirements of the Fourth Amendment" are unconstitutional. *Michigan v. DeFillippo*, 443 U.S. 31, 39 (1979) (cleaned up). "Subject to a few well-defined exceptions, searches and seizures conducted **without prior judicial determination of probable cause are per se unreasonable**." *United States v. Turner*, 933 F.2d 240, 244 (4th Cir. 1991) (citing *United States v. Ross*, 456 U.S. 798, 825 (1982)) (emphasis added). Ultimately, "no amount of probable cause can justify a warrantless search or seizure absent exigent circumstances." *Horton v. California*, 496 U.S. 128, 137 (1990). "[E]ven where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure." *Id*. Similarly, "there is no standalone doctrine that justifies warrantless searches and seizures in the home" for police officers engaging in their "community caretaker function." *Caniglia v. Strom*, 593 U.S. 194, 196 (2021). Further to this point, it is "[t]he government [who] bears the burden of establishing that the circumstances of a warrantless search or seizure bring it within an exception to the warrant requirement." *United States v. Davis*, 657 F. Supp. 2d 630, 636 (D. Md. 2009), *aff'd*, 690 F.3d 226 (4th Cir. 2012) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971)).

Here, Defendants have simply failed to meet this burden and establish that Maryland RFL comports with the foregoing requirements or is exceptional under any set of circumstances. In the present case, exigent circumstances are by definition, absent, because the Maryland RFL is a statutory procedure which would necessarily be too slow to stop a potential shooter in real time. In fact, the Maryland RFL egregiously reverses the standard established at all levels of American jurisprudence, and places the burden on *citizens to demonstrate to the government* that they should not be subjected to the warrantless seizure of their property.



*Willey et al. v. Brown et al.*
Case No. 1:2023-cv-02299
January 9, 2026

In the present case, Defendants are effectively asking this Court to endorse infringing upon citizens' fundamental constitutional right to be secure in their own home, based on a standard which is lower than the one clearly prescribed by the Constitution. Specifically, the Maryland RFL directs courts to issue ERPOs requiring the surrender of a respondent's firearms (which notably, are described as "surrendered or seized" in MD. PUB. SAFETY § 608) when presented with "reasonable grounds." Notwithstanding the fact that ERPOs are typically served by law enforcement officers who ask a respondent whether they have any firearms, such restrictions on basic liberty are typically reserved for those who have been *actually found guilty* of breaking the law. *United States v. Knights*, 534 U.S. 118, 119 (2001). ("Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens."). For at least these reasons, it is clear that the Maryland RFL is facially invalid, accordingly, it should be struck down.

We thank the Court for its time and attention to this matter.

Respectfully Submitted,

*/s/ Edward Andrew Paltzik*
Edward Andrew Paltzik, Esq.
Taylor Dykema, PLLC
914 E 25th Street
Houston, TX 77009
516-526-0341
edward@taylordykema.com

*Counsel for Plaintiffs*



8