## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| DONALD S. WILLEY ET AL., | | |
| | * | |
| Plaintiffs, | | |
| | * | |
| v. | | |
| | * | Civil No. 23-2299-BAH |
| ANTHONY G. BROWN ET AL., | | |
| | * | |
| Defendants. | | |
| | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

### MEMORANDUM OPINION

Plaintiffs Donald S. Willey ("Willey") and The Second Amendment Foundation[1] (collectively "Plaintiffs") brought suit against Anthony G. Brown, in his official capacity as Attorney General of Maryland, and James W. Phillips, Jr., personally and in his official capacity as Sheriff of Dorchester County, Maryland (collectively the "State Defendants"), as well as against Dorchester County, Maryland ("Dorchester County"), and Susan E. Webb ("Webb"), personally and in her official capacity as Director of Planning and Zoning for Dorchester County (collectively the "County Defendants"). Plaintiffs challenge Maryland's "Red Flag Law" ("RFL") as violative of the Second, Fourth, Sixth, and Fourteenth Amendments of the United States Constitution, and Plaintiffs bring their constitutional claims against various Defendants pursuant to 42 U.S.C. § 1983 (Counts One – Four). Willey also brings a claim for First Amendment retaliation pursuant to 42

---

[1] Although both the "Second Amendment Foundation, Inc." and "The Second Amendment Foundation" are named as Plaintiffs on the docket, the second amended complaint identifies only the latter in the case caption. *See* ECF 53, at 1. Accordingly, the Clerk will be directed to update the docket to reflect that in this action The Second Amendment Foundation is the only Plaintiff other than Willey.

U.S.C. § 1983 (Count Five) and for malicious use of process under Maryland law (Count Six). *See* ECF 53 (second amended complaint).[2]

The Court previously issued a memorandum opinion and order denying Plaintiffs' former motion for a preliminary injunction, ECF 15, and denying the Defendants' pending motions to dismiss, ECFs 25 & 28, without prejudice to be re-filed pending resolution of two questions certified to the Supreme Court of Maryland. *See* ECF 41 (memorandum opinion); ECF 42 (order); ECF 43 (certification order). The Supreme Court of Maryland ultimately returned the certification order to the Court unanswered in light of the State Defendants' apparent change in position before that court. *See* ECF 49. Pending now before this Court are Plaintiffs' renewed motion for a preliminary injunction, ECF 58, the State Defendants' motion to dismiss and opposition to Plaintiffs' motion for a preliminary injunction, ECF 63, and the County Defendants' motion to dismiss or, in the alternative, for summary judgment and opposition to Plaintiffs' motion for a preliminary injunction, ECF 64. Plaintiffs filed an opposition to the State Defendants' motion, ECF 82, and to the County Defendants' motion, ECF 94. The State and County Defendants have filed their replies. ECF 95 (State Defendants' reply); ECF 96 (County Defendants' reply). All filings include memoranda of law, and some filings include exhibits.[3]

On November 21, 2025, the Court held a hearing on the pending motions. *See* ECF 99; ECF 102. At the conclusion of the hearing, the Court requested supplemental briefing from the parties, the last of which was filed on February 17, 2026. ECF 111 (Plaintiffs' response); ECF

---

[2] The original complaint is docketed at ECF 1, and the first amended complaint is docketed at ECF 5.

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

114 (State Defendants' response); ECF 115 (County Defendants' response). The Court has reviewed all relevant filings and has considered the issues in this case at length. Accordingly, for the reasons stated below, the State Defendants' motion to dismiss is **GRANTED**, the Plaintiffs' motion for a preliminary injunction is **DENIED as moot**, and the County Defendants' motion to dismiss is **GRANTED in part and DENIED in part**. Counts Five and Six of the second amended complaint as asserted by Willey against Webb in her personal capacity survive. Because those counts are asserted only by Willey, The Second Amendment Foundation is **DISMISSED** as a party to this action.

## I.   <u>BACKGROUND</u>

The Court restates the background described in its prior opinion. *See Willey v. Brown*, Civ. No. 23-2299-BAH, 2024 WL 3557937 (D. Md. July 25, 2024). Over twenty states and the District of Columbia currently have RFLs.[4] These laws permit a judicial officer to issue a protective order that temporarily prohibits an individual from possessing a firearm if that judicial officer makes a particularized determination that the individual poses a substantial risk of committing violence to himself or others. *See* Everytown for Gun Safety Support Fund & Johns Hopkins Ctr. for Gun Violence Solutions, Promising Approaches for Implementing Extreme Risk Laws: A Guide for Practitioners and Policymakers 8 (May 2023) (hereinafter "Promising Approaches for Implementing Extreme Risk Laws") ("ERPO laws provide a mechanism to act when warning signs are present that an individual may be at risk rather than waiting for a tragedy to occur.").

---

[4] As of 2023, these states included California, Colorado, Connecticut, Delaware, Florida, Hawaii, Illinois, Indiana, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, Virginia, and Washington. *See* Everytown for Gun Safety Support Fund & Johns Hopkins Ctr. for Gun Violence Solutions, Promising Approaches for Implementing Extreme Risk Laws: A Guide for Practitioners and Policymakers 46–48 (May 2023) (state survey).

3

Such laws are not uniform. They differ in name,[5] delineate different categories of individuals that may petition the court for the issuance of an order,[6] entail different requisite legal standards, and vary in the lengths of time an order issued may remain in effect.[7] However, all RFLs share a common trait: the recognition that in a manner consistent with the Constitution, a state legislature can temporarily disarm an individual that poses a substantial risk of committing violence to himself or others. *Cf. United States v. Rahimi*, 602 U.S. 680, 701 (2024) ("Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others.").

---

[5] For instance, Illinois' law permits issuance of a "firearms restraining order," Virginia courts may issue "substantial risk order[s]," and Delaware courts may issue "lethal violence protective order[s]." *Id.*; *see also* 430 Ill. Comp. Stat., § 67/5 ("'*Firearms restraining order*' means an order issued by the court, prohibiting and enjoining a named person from having in his or her custody or control, purchasing, possessing, or receiving any firearms or ammunition, or removing firearm parts that could be assembled to make an operable firearm." (emphasis added)); Va. Code Ann. § 19.2-152.13A. ("[U]pon a finding that there is probable cause to believe that a person poses a substantial risk of personal injury to himself or others in the near future by such person's possession or acquisition of a firearm, shall issue an ex parte *emergency substantial risk order.*" (emphasis added)); Del. Code. Ann. tit. 10, § 7701(3) ("'*Lethal violence protective order*' means an order issued by the Justice of the Peace Court or Superior Court prohibiting and enjoining a person from controlling, owning, purchasing, possessing, having access to, or receiving a firearm." (emphasis added)).

[6] For instance, "law enforcement officers (in all states), family members and domestic partners (in most states), and clinicians and other parties (in a few states) can petition a court to temporarily prevent a person from purchasing and possessing firearms if that person is at risk of harming themselves or others." Promising Approaches for Implementing Extreme Risk Laws, *supra* at 8.

[7] *Compare* Colo. Rev. State § 13-14.5-103(c)(3) (requiring a court to find by a "preponderance of the evidence" that the individual "poses a significant risk of causing personal injury" to oneself or others prior to issuing a temporary extreme risk protective order), *with* Md. Code Ann., Pub. Safety § 5-603(a)(1) (permitting a commissioner to issue an interim extreme risk protective order if there are "reasonable grounds" the individual poses an "immediate and present danger" to oneself or others), *and* Conn. Gen. Stat. Ann. § 29-38c(b)–(c) (requiring a "good faith belief" to initiate a law enforcement investigation, but requiring "probable cause" prior to the issuance of an extreme risk protective order).

4

## A.     Maryland's Red Flag Law

The present dispute concerns Maryland's RFL, which went into effect on October 1, 2018, and is codified in Title Five of the Public Safety Article of the Maryland Annotated Code. *See* Md. Code Ann., Pub. Safety ("PS") § 5-601 – 5-610.[8]  Maryland's RFL establishes a process by which a petitioner can seek an "extreme risk protective order," or "ERPO," preventing a respondent, for a limited time, from purchasing or possessing a firearm. *See id.*

The law authorizes state district court commissioners and state district court judges, upon civil commencement by a particular list of individuals, to issue an ERPO requiring the subject of the order to surrender all firearms and ammunition upon a showing that there exists "reasonable grounds" that the respondent poses an immediate danger to himself or others.  PS § 5-603(a)(1). The law is preventative in that it permits judicial intervention *before* an individual has committed an act of violence.  PS § 5-601 *et seq.* (creating a civil legal process to temporarily prohibit a person from purchasing and possessing a firearm based upon a court's particularized finding that the individual is at risk of harming themselves or others); *see also* Promising Approaches for Implementing Extreme Risk Laws, *supra*, at 8 ("Extreme risk laws . . . or red flag laws, have become a vital tool in efforts to proactively intervene to prevent gun violence.").  However, before issuing an ERPO, a judicial officer is required to find that the individual "poses an immediate and present danger of causing personal injury" to himself or others by possessing a firearm.  PS § 5-603(a)(1).

---

[8] The Maryland General Assembly enacted legislation in 2024 aiming to protect ERPO records. 2024 Md. Laws Ch. 929 (S.B. 905).  The legislation established that the Maryland Judiciary must require institutions of higher education that are studying ERPOs to enter into an agreement about the storage of such records. *Id.*; *see also* PS § 5-602(c)(vii), (d).  This amendment does not alter the Court's analysis of the constitutionality of Maryland's RFL.

To obtain an ERPO, a petitioner must: (1) fit into one of the classes of permissible petitioners, including law enforcement agents and certain classes of private citizens, such as the spouse, cohabitant, or legal guardian of the respondent, *see id.* § 5-601(e)(2)[9]; (2) swear under penalty of perjury specific facts "known to the petitioner that the respondent poses an immediate and present danger of causing personal injury to the respondent, the petitioner, or another by possessing a firearm," *id.* § 5-602(a)(1)(i)–(ii); and (3) file the petition with the District Court or, if the Office of the District Court Clerk is closed, a District Court commissioner. *Id.* § 5-602(b). There are three types of ERPOs that may issue: an interim, temporary, and final order. Each is described below.

### 1. An Interim ERPO may issue upon "reasonable grounds."

If the petition is filed with the District Court commissioner[10] under PS § 5-602(b)(2) because the Office of the District Court Clerk is closed, the commissioner may enter an

---

[9] Specifically, a petitioner may only include "a physician, psychologist, clinical social worker, licensed clinical professional counselor, clinical nurse specialist in psychiatric and mental health nursing, psychiatric nurse practitioner, licensed clinical marriage or family therapist, or health officer or designee of a health officer who has examined the individual"; "a law enforcement officer"; "the spouse of the respondent"; "a cohabitant of the respondent"; "a person related to the respondent by blood, marriage, or adoption"; "an individual who has a child in common with the respondent"; "a current dating or intimate partner of the respondent"; or "a current or former legal guardian of the respondent." PS § 5-601(e)(2). "Respondent" is defined as "a person against whom a petition for an extreme risk protective order is filed." *Id.* § 5-601(f).

[10] A district court commissioner is a type of judicial officer. *See Who Does What in District Court?*, Md. Cts., https://mdcourts.gov/district/selfhelp/whodoeswhat [https://perma.cc/6Q5V-LFD3] (last visited Mar. 20, 2026) ("For many people, commissioners are the first point of contact with the District Court of Maryland. Commissioners are judicial officers, appointed by the Chief Judge of the District Court of Maryland. There are more than 279 District Court commissioners around the state, available 24 hours a day, 365 days a year."). Identifying whether probable cause exists supporting criminal charges is one of the Commissioners' primary responsibilities. *Id.* (noting the first of four primary responsibilities is "Reviewing Applications for Statement of Charges to determine whether probable cause exists to issue charging documents").

interim order prohibiting the respondent from possession of a firearm only if the commissioner finds that there are "*reasonable grounds* to believe the respondent poses an immediate and present danger of causing personal injury to the respondent, the petitioner, or another by possessing a firearm." *Id.* § 5-603(a)(1) (emphasis added); *see also id.* § 5-603(a)(2) (requiring consideration of all relevant evidence presented by petitioner and the amount of time that has elapsed since any of the events described in the petition).

When issued, the interim ERPO requires the respondent to "surrender to law enforcement authorities any firearm and ammunition in the respondent's possession" and prohibits the respondent "from purchasing or possessing any firearm or ammunition for the duration of the interim extreme risk protective order." *Id.* § 5-603(a)(3); *see also id.* § 5-603(a)(4) (requiring commissioner to refer respondent to a law enforcement officer for an emergency mental health evaluation if the commissioner finds probable cause to believe the respondent meets the requirements for emergency evaluation under Md. Code Ann., Health-General ("HG") § 10-620); *see also* HG § 10-622 (outlining petitions for emergency evaluations for situations in which the respondent both "[h]as a mental disorder" and "[p]resents a danger to the life or safety of the individual or of others"); *see generally* HG §§ 10-620 – 10-630 (outlining process for and requirements of emergency mental health evaluations).

A respondent that receives an interim ERPO will also receive notice of the "date, time, and location for a temporary risk protective order hearing and a tentative date, time, and location for a final extreme risk protective order hearing." PS § 5-603(b)(1)(i). The interim ERPO also must include "a statement that the respondent may consult an attorney regarding any matter related to the order." *Id.* § 5-603(b)(2)(ii). An interim ERPO is effective until the temporary ERPO hearing

7

or the end of the second business day the Office of the District Court Clerk is open following the issuance of the interim order, whichever is earlier. *Id.* § 5-603(e).

### 2. A Temporary ERPO may issue upon "reasonable grounds."

When the Clerk of Court is open, petitioners file the petition with the District Court, which triggers the scheduling of a temporary ERPO hearing. PS § 5-604(a)(1). The hearing may be conducted on an *ex parte* basis. *See id.* ("After a hearing on a petition, whether ex parte or otherwise, a judge may enter a temporary extreme risk protective order . . . ."). The judge may issue a temporary ERPO to prohibit the respondent from possessing or purchasing a firearm if the judge finds that there are *"reasonable grounds* to believe that the respondent poses an *immediate and present danger* of causing personal injury to the respondent, the petitioner, or another by possessing a firearm." *Id.* § 5-604(a)(1) (emphasis added).

Generally, "the temporary extreme risk protective order shall be effective for not more than 7 days after service of the order." *Id.* § 5-604(c)(1). However, the judge may extend the temporary ERPO "as needed, but not to exceed 6 months, to effectuate service of the order where necessary to provide protection or for other good cause." *Id.* § 5-604(c)(2). Additionally, "[t]he judge may proceed with a final extreme risk protective order hearing instead of a temporary extreme risk protective order hearing if . . . the respondent appears at the hearing; the respondent has been served with an interim extreme risk protective order; or the court otherwise has personal jurisdiction over the respondent; and the petitioner and the respondent expressly consent to waive the temporary extreme risk protective order hearing." *Id.* § 5-604(d).

### 3. A Final ERPO may issue upon "clear and convincing evidence."

A final ERPO hearing must be held prior to the issuance of a final ERPO and the respondent shall have the opportunity to be heard. PS § 5-605(a). The respondent is entitled to notice of the final hearing in the temporary ERPO. *Id.* § 5-605(b)(2)(i) ("The temporary extreme risk protective

order shall include notice . . . that if the respondent fails to appear at the final extreme risk protective order hearing, a final extreme risk protective order may be entered in the respondent's absence . . . ."). The judge may only enter a final ERPO if "the judge finds by *clear and convincing* evidence that the respondent poses a danger of causing personal injury to the respondent, the petitioner, or another by possessing a firearm." *Id.* § 5-605(c)(1)(ii) (emphasis added). A final ERPO may be effective up to one year, *id.* § 5-605(f)(1), unless extended pursuant to the procedures outlined in PS § 5-606(a)(2). The order may be extended "for good cause shown" only after giving notice to the respondent and affected persons and conducting a hearing on the matter. *Id.* § 5-606(a)(2). A district judge's decision to extend a final ERPO is appealable to the circuit court for the county in which the district court is located, and the circuit court must hear the appeal within 60 days after it is filed. *Id.* § 5-606(b).

### 4. Noncompliance with an ERPO can result in a misdemeanor conviction, arrest, and a search for removal of a respondent's firearms.

Noncompliance with an interim, temporary, or final ERPO is a misdemeanor, and on conviction is subject to either a fine of up to $1,000 and/or imprisonment of up to 90 days for a first-time offense, or for a second time offense, a fine up to $2,500 and/or imprisonment not exceeding 1 year. PS § 5-610(a). Additionally, a law enforcement officer may arrest an individual if the officer has probable cause to believe the respondent is in violation of an effective ERPO. *Id.* § 5-610(b). This arrest may be effectuated "with or without a warrant." *Id.* Furthermore, on application by a State's Attorney or law enforcement officer with probable cause to believe the respondent possesses a firearm and failed to surrender the firearm in accordance with the order, law enforcement may, upon issuance of a search warrant, search and remove the firearm from any location identified in the application for the warrant. PS § 5-607.

9

5. <u>Law enforcement officers must return firearms upon expiration or termination of an ERPO with specific deadlines.</u>

Law enforcement officers taking possession of firearms or ammunition have duties to preserve a respondent's property, such as by issuing a receipt to the respondent identifying the firearms by make, model, and serial number, and by transporting the firearms in a manner intended to prevent damage to the firearm. PS § 5-608(a)(1)–(2). Further, upon expiration of an ERPO, law enforcement must notify the respondent and, upon request of the respondent, must return all firearms and ammunition to the respondent no later than fourteen days after the expiration of an interim or temporary ERPO, fourteen days after a court terminates a final ERPO, or forty-eight hours after the expiration of a final ERPO. *Id.* § 5-608(b).

**B.    Factual Background**

Willey resides in Dorchester County, Maryland. ECF 53, at 5 ¶ 11. He lawfully owns numerous firearms and ammunition. *Id.* Willey accuses Webb and Dorchester County of malicious use of process against him, claiming they have engaged in a two-decades-long practice of targeting and penalizing Willey for "*de minimis* nuisance and zoning infractions." *Id.* at 15 ¶¶ 52–53. This alleged history between Willey, Webb, and Dorchester County provides some context for Webb's filing of the ERPO petition on July 15, 2023. *See* ECF 58-4, at 2–4 (ERPO Petition).

1. <u>Willey and Webb's contentious history over zoning infractions.</u>

The portion of this dispute relevant to the matter presently before the Court began on May 3, 2021. ECF 53, at 15 ¶ 53. Willey alleges that Webb's zoning inspector sent him a letter indicating he was in violation of the County Code for "storage of [u]ntagged/unregistered/expired vehicles and junk, rubble, and trash" in his yard. *Id.* Willey received three citations requiring payment of fines, one relating to the condition of his yard, another for running an illegal business on his property, and a third for an "unpermitted disturbance to 100-foot tidewater buffer." *Id.*

10

A meeting took place between Willey, Willey's attorney, and Webb in which Willey alleges Webb acted aggressively and threatened to fine him $5,000 a day for the business infraction and $5,000 a day for the "tidewater buffer" infraction. *Id.* at 15–16 ¶ 53. Ultimately all three citations were withdrawn. *Id.* at 16 ¶ 54.

On July 6, 2022, Willey received a "Writ of Summons" and "Complaint to Abate Violations of Title 121 of the Dorchester County Code" based upon the conditions of his yard. *Id.* ¶ 55. The parties resolved the complaint by a Consent Order dated November 3, 2022, where Willey agreed to remediate yard infractions by May 31, 2023, and also agreed that Webb's inspectors could enter the property to assess compliance after notice to his attorney. *Id.*

On May 30, 2023, Webb and one of her inspectors, Tyler Bennett ("Bennett") conducted an inspection. *Id.* ¶ 56. On June 1, 2023, Willey received two Notices of Violations that indicated "tall grass/weeds/vegetation 12 [inches] or higher," which needed to be corrected by June 7, 2023, and "untagged/unregistered/expired/vehicles, trailers, junk, rubble, and or trash," which needed to be corrected by June 15, 2023. *Id.* at 16–17 ¶¶ 57–58. On June 6, 2023, Willey received a third violation notice for "a fence of various heights from 4 feet to 10 feet," which needed to be corrected by July 6, 2023. *Id.* at 17 ¶ 59.

The dispute regarding the condition of Willey's yard morphed into the present ERPO dispute on June 2, 2023. *See id.* at 17 ¶ 62. Webb and Bennett allegedly drove to Willey's property without notice to Willey or his attorney to serve "one or more of the Notices of Violation." *Id.* Willey was outside in his yard upon their arrival, and Willey contends that he informed Webb and Bennett that he wished for Webb to "communicate with [Willey's] attorney" and alleges that he "respectfully declined to accept in-hand service of the Notices." *Id.* Willey contends that Webb was "irate," "refused to leave," and "berated" Willey. *Id.* Willey claims he

11

was generally polite, though he admits he called Webb (or her behavior) "stupid." *Id.* Willey claims Webb became "even angrier" and "violently affixed" a Notice of Violation to the "fiberglass canopy of the boat using a staple gun or other tool," allegedly "damaging the cover in the process," before "storming off." *Id.* at 17–18 ¶¶ 62–63. Willey filed a complaint with the Sheriff's Office but alleges that Sheriff Phillips failed to act on it. *Id.* at 18 ¶ 64; *see also* ECF 5-7 (incident report), at 4–5.

### 2. Webb filed an ERPO Petition against Willey on June 15, 2023.

On June 15, 2023, Webb filed a petition for an ERPO against Willey in the District Court of Maryland in Dorchester County. ECF 53, at 18 ¶ 67. Webb, when identifying herself as a proper petitioner, checked the box for "law enforcement officer" and crossed out the word "law," writing in the word "code." ECF 58-4, at 2 (indicating she was a "code enforcement officer" from "County Planning & Zoning").

In the petition, Webb alleged Willey had been "making threats of violence by firearms to myself and other departmental employees on numerous occasions." ECF 53, at 19 ¶ 70; ECF 58-4, at 2. In a section seeming to call for a description of how Willey "has unlawfully, recklessly, or negligently used, displayed, stored, possessed, or brandished a firearm," Webb wrote only three dates. ECF 53, at 19 ¶ 72; ECF 58-4, at 2 (writing only "June 8th, 2023, June 9th, 2023, June 12, 2023"). Webb also checked box four on the ERPO petition indicating that Willey "has committed or threatened violence against himself/herself or others" and Webb wrote "on three recent occasions myself and staff were warned of threats of violence from Mr. Willey." ECF 58-4, at 3. Webb also indicated in box three that Willey possessed an "unknown" number of firearms including a handgun, a shotgun, a rifle, and an assault weapon. *Id.* at 2.

12

### 3. Willey received notice of his Temporary ERPO on June 15, 2023.

On June 15, 2023, the District Court of Maryland conducted an *ex parte* temporary ERPO hearing. ECF 85-1 (transcript of hearing).[11] Webb provided brief testimony at the hearing reflecting that Willey became "violent" during Webb's "last visit" to Willey's property. *Id.* at 1, 3:1–2. Webb also claimed that "several . . . neighbors" told a county contractor that Willey "is threatening to kill anybody that comes [to Willey's property] from the county, that he is prepared." *Id.* at 3:5–10. Webb stated that she received several phone calls related to Willey that left Webb feeling concerned for her safety:

> The next day I got a call from a counsel person that he was told personally by Mr. Willey that he was planning on shooting me at the property that he was already waiting and then I got a call Monday from his neighbor and she said that she felt she needed to warn me about what he is saying throughout the community that he is waiting. He is waiting for us to come and he is waiting to kill me and anybody else from the department that comes. So, I am concerned about the safety of my staff. I am concerned about the safety of him coming into the office for myself.

*Id.* at 3:10–21. Immediately after hearing this statement, the District Court for Dorchester County granted Webb's petition. *See id.* at 3:22–4:4.

That same day, Dorchester County Sheriffs served the Temporary ERPO on Willey, Willey permitted the officers to remove firearms and ammunition from his home, and the officers ultimately transported Willey for an emergency medical evaluation. ECF 53, at 21–22 ¶¶ 77–81. The temporary ERPO included the following information: (1) it indicated the petitioner was a law enforcement officer, ECF 58-3, at 2; (2) ordered Willey to surrender all firearms and ammunition

---

[11] "When deciding a motion to dismiss, a court may 'take judicial notice of matters of public record[.]'" *King v. Nalley*, Civ. No. TDC-17-0628, 2017 WL 4221062, at *2 (D. Md. Sept. 21, 2017) (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)), *aff'd*, 737 F. App'x 163 (4th Cir. 2018). The Court will take judicial notice of the temporary ERPO hearing here and therefore considers this exhibit in deciding the motions to dismiss. *See id.* ("As for the sentencing hearing transcript, while it is not integral to the Complaint, the Court will take judicial notice of both the sentencing hearing and the judgment in Judge Nalley's criminal case").

to law enforcement and prohibited him from purchasing or possessing any firearm or ammunition for the duration of the order, *id.*; (3) scheduled a Final ERPO hearing for June 22, 2023, at 9:00 a.m., *id.*; and (4) ordered Willey to immediately surrender all firearms and ammunition to the officer," *id.* at 3.

Additionally, the temporary ERPO included a summary of factual findings, likely from the temporary ERPO hearing on June 15, 2023, including that the petitioner is "a law enforcement officer"[12] and finding "reasonable grounds to believe" that Willey "poses an immediate and present danger of causing personal injury to the respondent, the petitioner, or another by possessing a firearm." *Id.* at 3. Willey was also served with an order for an emergency mental health evaluation based on the contents of the ERPO. *See id.* at 3, 7. Specifically, the District Court Judge issuing the order checked a box indicating that the court:

> finds *probable cause* to believe that the named individual (evaluee) has shown the symptoms of a mental disorder and presents a danger to the life of safety of the evaluee or others and, therefore, ORDERS that any peace officer take into custody and transport the evaluee to the nearest emergency facility, for examination by a physician within six hours after arrival at the facility and, if in the physician's opinion necessary, for emergency care and treatment; provided that the facility may not keep the evaluee for more than 30 hours under this order but is not precluded from voluntary or involuntary admission in accordance with Maryland Code, Health-General Article.

*Id.* at 7 (emphasis added).

Consistent with the notice, Willey was required to surrender his firearms and ammunition immediately to Dorchester County Sheriff's deputies. *See* ECF 58-3, at 2; ECF 53, at 21–22 ¶¶ 78–81. Willey complied and the officer seized three rifles, three handguns, two shotguns, and various ammunition from the residence. ECF 53, at 21 ¶ 79. Willey was then transported in the front seat

---

[12] On the same page, the temporary ERPO clarified in a "Comments" section that "PETITIONER IS A CODE ENFORCEMENT OFFICER." ECF 58-3, at 3 (capitalization unaltered).

of a marked Sheriff's Office vehicle to the University of Maryland Shore Medical Center at Cambridge for an involuntary mental health evaluation. *Id.* at 22 ¶ 81. According to Willey, the evaluation included "multiple non-consensual tests, including but not limited to a blood-alcohol test, comprehensive metabolic panel, a urinalysis drug screen, and forcibly drawing Willey's blood." *Id.* ¶ 82. Willey was discharged with a diagnosis of "acute stress reaction." *Id.* ¶ 83.

### 4. On June 22, 2023, the final ERPO hearing resulted in a voluntary dismissal of the petition.

Willey and Webb appeared at the final ERPO hearing on June 22, 2023. *Id.* at 22 ¶ 84. Additionally, Interim County Manager Jeff Powell ("Powell") was present. *Id.* "Powell and Webb informed the Court that the County and Webb would not be pursuing the case" and the proceeding was terminated. *Id.* at 23 ¶ 85. Since the matter ended in his favor, Willey did not have the opportunity to present legal arguments or testimony. *See id.* On June 27, 2023, Willey's firearms and ammunition were returned to him. *Id.* ¶ 87. In total, Willey was deprived of his personal property for twelve days. *Id.*

### C.   Procedural History

On August 22, 2023, Plaintiffs filed their original complaint. ECF 1; *see also* ECF 2 (supplement to the complaint). On August 28, 2023, Plaintiffs filed an amended complaint. *See* ECF 5 (and attachments). On September 8, 2023, Plaintiffs filed a motion for a preliminary injunction as to Counts One and Two of the first amended complaint. ECF 15. On October 13, 2023, the State Defendants filed a motion to dismiss. ECF 25. On October 27, 2023, the County Defendants filed a motion to dismiss. ECF 28. On October 31, 2023, this matter was re-assigned to the undersigned.

On July 25, 2024, the Court issued a memorandum opinion and implementing order, which denied Plaintiffs' motion for a preliminary injunction, ECF 15, and denied the motions to dismiss,

ECFs 25 & 28, without prejudice to be re-filed pending resolution of two questions certified to the Supreme Court of Maryland. ECF 41 (memorandum opinion); ECF 42 (implementing order). The same day, the Court issued a certification order, certifying the following questions to Maryland's highest court:

1.  What legal standard does the term "reasonable grounds" connote in Maryland's Red Flag Law, codified in Title Five of the Public Safety Article of the Maryland Annotated Code?

2.  Does the statute permit an extreme risk protective order to issue upon a standard less than probable cause?

ECF 43 (certification order), at 2, *also available at Willey v. Brown*, 329 A.3d 308 (Md. 2024) (per curiam). The Supreme Court of Maryland accepted the certified questions on August 13, 2024, and it heard arguments on the matter on December 10, 2024. *See* ECF 48. However, on January 23, 2025, the Supreme Court of Maryland returned the certified questions to this Court for further consideration "in light of the State Defendants' changes in position and the current posture of the case." ECF 49, at 4.[13]

After the certified questions were returned, Plaintiffs filed a second amended complaint on March 3, 2025. ECF 53. As with the first amended complaint, the second amended complaint alleges, both facially and as-applied to Willey, that Maryland's RFL violates the Fourth Amendment because it allows an ERPO to issue upon a standard less than probable cause (Count

---

[13] Specifically, the Supreme Court of Maryland identified two ways in which the State Defendants meaningfully changed their legal contentions. *See* ECF 49, at 3. "First, the State Defendants no longer argue, as they did before the District Court, that the phrase 'reasonable grounds' in the ERPO statute means 'probable cause.'" *Id.* Instead, they now argue that "'reasonable grounds' is a general reference to the Fourth Amendment's overall reasonableness standard, and that it can be less than probable cause." *Id.* "Second, . . . the State Defendants now argue that an ERPO is not actually or effectively a warrant." *Id.* This Court agrees with the Supreme Court of Maryland that those changes meaningfully alter the premises on which the Court originally certified the questions.

One).[14] ECF 53, at 30–34 ¶¶ 118–35. The second amended complaint also contains a Second Amendment claim (Count Six). *Id.* at 37–38 ¶ 150–54. However, Plaintiffs no longer allege that Maryland's RFL is facially unconstitutional under the Second Amendment—they only present an as-applied challenge, alleging that Sheriff Phillips and Webb, "via Webb's false RFL Petition and subsequent wrongful seizure of Willey's firearms and ammunition, deprived" Willey of his Second Amendment rights. *Id.* ¶ 153. And, as with the first amended complaint, the second amended complaint alleges various torts against Webb and Dorchester County relating to the initiation of the ERPO petition against Willey (Counts Four and Five). *Id.* at 38–39 ¶¶ 155–61.

Additionally, the second amended complaint adds two claims, asserted only against Attorney General Brown. First, in Count Two, Plaintiffs alleged that Maryland's RFL is unconstitutional under the Due Process Clause of the Fourteenth Amendment, both facially and as-applied to Willey, because "it contains no right to present evidence at a Temporary ERPO hearing." ECF 53, at 34–35 ¶¶ 136–39. Second, in Count Three, Plaintiffs allege that Maryland's RFL is unconstitutional under the Sixth Amendment, as incorporated against the states by the Fourteenth Amendment, both facially and as-applied to Willey, because the RFL lacks a right-to-counsel provision. *Id.* at 35–37 ¶¶ 140–49.

On March 28, 2025, Plaintiffs filed a "renewed" motion for a preliminary injunction, this time as to Counts One, Two, and Three of the second amended complaint. ECF 58. On April 14, 2025, the State Defendants filed a motion to dismiss, ECF 63, and on April 18, 2025, the County Defendants filed a motion to dismiss or, in the alternative, for summary judgment, ECF 64.

---

[14] In the first amended complaint, plaintiffs also alleged that Maryland's RFL violated the Fourth Amendment because that statute "authorize[s] searches and seizures based upon a finding of a subjective and undefined forbidden personal characteristic of the targeted individual (being a 'danger'), rather than upon an alleged objective and defined underlying violation of one or more laws." ECF 5, at 28 ¶ 100. Plaintiffs no longer pursue this claim in the second amended complaint.

Additionally, proposed amici have filed a motion for leave to file an amicus brief in support of Defendants' motions to dismiss and in opposition to the preliminary injunction.[15] ECF 69. These motions are all ripe for resolution.

## II.   LEGAL STANDARD

### A.   Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). To succeed on a motion for a preliminary injunction, a movant "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Centro Tepeyac v. Montgomery County*, 722 F.3d 184, 188

---

[15] "District courts have discretion to permit the filing of amicus brief by a third party." *United States v. Aigbekaen*, Crim. No. JKB-15-0462, 2024 WL 713903, at *3 (D. Md. Feb. 21, 2024) (citing *American Humanist Ass'n v. Md.-Nat'l Capital Park & Planning Comm'n*, 303 F.R.D. 266, 269 (D. Md. 2014)). However, "[t]he Federal Rules of Civil Procedure do not address motions for leave to appear as amicus curiae in a federal district court. District courts therefore have discretion to grant or deny such leave and often look for guidance to Federal Rule of Appellate Procedure 29, which applies to amicus briefs at the federal appellate level." *Nat'l Shooting Sports Found., Inc. v. Brown*, Civ. No. RDB-25-1115, 2025 WL 1530050, at *1 (D. Md. May 29, 2025) (collecting cases). "Rule 29 indicates that amici should state the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case." *Id.* (citing Fed. R. App. P. 29(b)(2)). "The aid of *amici curiae* has been allowed at the trial level where they provide helpful analysis of the law, they have a special interest in the subject matter of the suit, or existing counsel is in need of assistance." *Id.* (citing *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 728 (D. Md. 1996)). The Court finds that proposed amici Brady Center to Prevent Gun Violence, Giffords Law Center to Prevent Gun Violence, Marylanders to Prevent Gun Violence, and Kelly Roskam offer both helpful analysis of the law in their proposed amicus brief and also have a special interest in the subject matter of this suit. Accordingly, the Court will **GRANT** the motion for leave to file an amicus brief in support of Defendants' motions to dismiss and in opposition to Plaintiffs' motion for a preliminary injunction.

(4th Cir. 2013) (alteration in original) (citing *Winter*, 555 U.S. at 20). "To secure a preliminary injunction, a plaintiff must 'make a "clear showing" that [he is] likely to succeed at trial, [but he] need not show a certainty of success.'" *Ass'n of Am. Publishers, Inc. v. Frosh*, 586 F. Supp. 3d 379, 388 (D. Md. 2022) (quoting *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013)).

Given the extraordinary nature of the relief, the court has "broad discretion in deciding what evidence to consider in connection with a motion for preliminary injunction, including hearsay." *Fitzhugh v. Wells Fargo Bank, N.A. as Tr. for IMPAG CMB Tr. Series 2005-3*, 594 F. Supp. 3d 265, 268 (D. Mass. 2022); *S.C. Progressive Network Educ. Fund v. Andino*, 493 F. Supp. 3d 460, 465–66 (D.S.C. 2020). To the extent necessary, the Court exercises its discretion to consider Plaintiffs' exhibits attached to the motion for preliminary injunction. *See* ECFs 58-3 – 58-9.

### B.    Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time,

19

a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## C.    Rule 56 Motion for Summary Judgment

A motion to dismiss styled in the alternative as a motion for summary judgment implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd* 684 F.3d 462 (4th Cir. 2012). Conversion of a motion to dismiss into one for summary judgment under Rule 12(d) is permissible where a plaintiff has notice that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261; *see also Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 657 (D. Md. 2021) ("Notably, 'the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion.'" (quoting *Ridgell v. Astrue*, Civ. No. DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012))).

However, "[s]uch conversion is not appropriate where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011) (citing *Gay v. Wall*, 761 F.2d 175, 178 (4th Cir.1985) ("Because Gay was not afforded an opportunity for reasonable discovery, the district court's treatment of the motion to dismiss as a motion for summary judgment was an abuse of discretion.")); *see also Boyle v. Azzari*, 107 F.4th 298, 301–02 (4th Cir. 2024). "Consistent with that general rule, Federal Rule

20

of Civil Procedure 56(d) allows a district court faced with a motion for summary judgment to defer considering the motion, deny the motion, allow time for discovery, or issue any other appropriate order upon a showing by the nonmovant that it 'cannot present facts essential to justify its opposition.'" *Boyle*, 107 F.4th at 301 (quoting Fed. R. Civ. P. 56(d)). "[R]elief under Rule 56(d) should be 'liberally granted to protect nonmoving parties from premature summary judgment motions.'" *Id.* (quoting *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 484 (4th Cir. 2014)).

In support of the County Defendants' motion to dismiss or, in the alternative, for summary judgment, they attach several additional exhibits, none of which are included or referenced in the second amended complaint. *See* ECF 64-2 – 64-14. Plaintiffs point out that no defendant has yet filed an answer to the second amended complaint, let alone engaged in discovery, "so it is not even possible for the parties to know which facts are currently in dispute and which are admitted." ECF 94, at 16. Plaintiffs thus "request that this Court deny such motion as premature." *Id.* The Court agrees with Plaintiffs. Typically, "a "nonmovant presents such opposition in the form of a Rule 56(d) affidavit.'" *McCall v. Rounds*, Civ. No. 22-357-BAH, 2025 WL 2784605, at *5 (D. Md. Sept. 29, 2025) (quoting *Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023)). Plaintiffs have filed a Rule 56(d) affidavit, ECF 94-1, putting the Court on notice of the absence of discovery in this case and the arguable relevance of discovery to some claims at issue in the County Defendants' motion. Accordingly, the Court construes the County Defendants' motion as a motion to dismiss.

## III.  ANALYSIS

The Court first addresses the Defendants' motions to dismiss, beginning with the State Defendants' motion, before turning to Plaintiffs' motion for a preliminary injunction. *See Sierra Club v. Von Kolnitz*, No. 2:16-CV-03815-DCN, 2017 WL 3480777, at *3 (D.S.C. Aug. 14, 2017) ("The court addresses the motion to dismiss first, and then turns to plaintiffs' motion for preliminary injunction."); *Trex Co., Inc. v. CPG Int'l LLC*, No. 5:17-CV-00005, 2017 WL

21

3272013, at *1 (W.D. Va. Aug. 1, 2017) ("The court will address the motion to dismiss first because a dismissal of all claims would effectively moot the motion for preliminary injunction.").

## A.    State Defendants' Motion

The State Defendants move under Rule 12(b)(6) to dismiss all claims against them. *See* ECF 63. The State Defendants argue that (1) Plaintiffs' claims should be dismissed to the extent they seek damages against the State Defendants in their official capacities, (2) Sheriff Phillips should be dismissed from this action, and (3) Maryland's RFL does not violate the Fourth, Fifth, or Sixth Amendments. *See* ECF 63-1, at 2–3. The Court starts by assessing Plaintiffs' constitutional claims, beginning first with the Fourth Amendment.

### 1. Count One: Fourth and Fourteenth Amendments

It is well established that "a seizure of personal property [is] per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause . . . ." *United States v. Place*, 462 U.S. 696, 701 (1983). However, "a warrantless seizure . . . can still be valid 'if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.'" *Allen v. County of Lake*, 71 F. Supp. 3d 1044, 1050–51 (N.D. Cal. 2014) (quoting *Place*, 462 U.S. at 701).

Count One of the operative complaint asserts an as-applied and facial challenge to Maryland's RFL pursuant to the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983. ECF 53, at 30. Plaintiffs contend that Maryland's RFL violates the Fourth Amendment because it permits an ERPO, which Plaintiffs contend is a warrant, to issue upon a standard less than probable cause, and that such an ERPO was in fact issued against Willey. ECF 53, at 30–34.¶¶ 118–135. The State Defendants argue that ERPOs are not warrants, ECF 63-1, at 27, or, in the alternative, that a recognized exception to the warrant requirement applies in circumstances where an ERPO may issue, *id.* at 31 n.22. The State Defendants also argue that the standard upon which an ERPO

22

issues under Maryland's RFL is consistent with the general reasonableness standard underlying the Fourth Amendment. *Id.* at 32.

It bears noting that Justice Alito identified such an argument was likely to arise in his concurring opinion in *Caniglia v. Strom*, 593 U.S. 194, 202 (2021). As he observed, "[p]rovisions of red flag laws may be challenged under the Fourth Amendment, and those cases may come before us." *Id.* (Alito, J., concurring). Plaintiffs believe that they bring such a case.[16] However, for the reasons discussed below, the Court disagrees and finds that the unique facts of this case do not permit the Court to fully address the type of challenge Justice Alito foretold.

### i.     Estoppel

As an initial matter, the Court addresses the scope of the parties' Fourth Amendment arguments. Plaintiffs argue that the State Defendants should be judicially estopped from arguing "that (1) ERPOs are not warrants and (2) 'reasonable grounds' is the same as 'probable cause'" because these arguments have been waived. *See* ECF 58-1, at 25–27. "Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation." *Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 457 (4th Cir. 2017) (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28 (4th Cir. 1995)). "The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *Id.* (quoting *John S. Clark Co.*, 65 F.3d at 29). "Even so, courts must apply the doctrine with caution." *Id.* To that end, the Fourth Circuit "has identified four elements that must be met before a court may apply

---

[16] This case appears to contain the first fully fledged constitutional challenge to Maryland's RFL. *But see United States v. Somerlock*, 602 F. Supp. 3d 791, 799 n.4 (D. Md. 2022) ("Defendant included in the Motion a skeletal constitutional challenge to Maryland's red flag law, as applied. But, at the Motion hearing, the defense asked the Court to defer consideration of that issue." (internal citation omitted)).

judicial estoppel: (1) 'the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation;' (2) 'the position sought to be estopped must be one of fact rather than law or legal theory;' (3) 'the prior inconsistent position must have been accepted by the court;' and (4) 'the party sought to be estopped must have intentionally misled the court to gain unfair advantage.'" *Id.* (quoting *Lowery v. Stovall*, 92 F.3d 219, 223–24 (4th Cir. 1996)).

To the extent Plaintiffs invoke judicial estoppel, their argument fails at the first prong. Judicial estoppel is appropriate where a party is taking "a position that is inconsistent with a stance taken in *prior* litigation." *Id.* (emphasis added). It does not govern an instance in which a party changes its position in the midst of ongoing litigation. *See id.* Moreover, the Fourth Circuit has held that "[j]udicial estoppel applies only to the making of inconsistent statements of fact," not to legal contentions. *Pittston Co. v. United States*, 199 F.3d 694, 701 n.4 (4th Cir. 1999) (citing *Folio v. City of Clarksburg*, 134 F.3d 1211, 1217–18 (4th Cir. 1998)). The Court also notes a general absence of any indication on this record that the State Defendants intentionally misled the court to gain unfair advantage.

The question remains, however, how the Court should treat the State Defendants' change in position. The State Defendants argue that they have never conceded in this litigation that an ERPO is not a warrant, ECF 63-1, at 27, notwithstanding this Court's assertion in its prior memorandum opinion that the State Defendants did not "contest that the ERPO is effectively a warrant," ECF 41, at 16. Accordingly, the State Defendants contend their current argument that an ERPO is not a warrant is not inconsistent with any prior position. *See* ECF 63-1, at 27. In sum, the State Defendants argue they "cannot be bound to a position that they never took." *Id.*

24

The Court agrees that the State Defendants did not expressly state their view on whether an ERPO was effectively a warrant in their prior motion to dismiss, although it bears noting that their silence on that point was in the context of Plaintiffs' express characterization of the ERPO as a warrant in the first amended complaint, *see, e.g.*, ECF 5, at 1. Ordinarily, an argument that a party failed to present in its principal memorandum may be considered waived. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument — even if its brief takes a passing shot at the issue."); *Survivor A v. Arnold*, Civ. No. 24-1571-BAH, 2025 WL 2677291, at *5 n.11 (D. Md. Sept. 18, 2025). Moreover, the Court observes that a significant change in legal argument, insofar as it undermines premises upon which a court certifies questions, risks wasting the limited time and resources of both the certifying and receiving courts.

Nevertheless, this case presents a unique circumstance. The Court dismissed the State Defendants' prior motion to dismiss without prejudice and expressly permitted such motions to be refiled upon resolution of the certification. *See* ECF 41. Moreover, Plaintiffs have filed a new operative complaint. *See* ECF 53. Plaintiffs identify no authority to support the contention that State Defendants cannot advance a new legal argument in re-filed motions seeking dismissal of a new amended complaint. Further, there is no unfairness to Plaintiffs, who have had ample notice of the State Defendants' new arguments and thoroughly responded to such arguments both in extensive briefing and at a hearing. Accordingly, the Court will consider in full the State Defendants' arguments as presented in their motions to dismiss.

### ii. As-Applied Challenge

Willey brings an as-applied Fourth Amendment challenge to Maryland's RFL. *See* ECF 53, at 30 ("As-Applied to Plaintiff Willey"). An as-applied challenge consists of a challenge to a statute's application only to the party before the Court. *See Newsom ex rel. Newsom v. Albemarle*

*Cnty. Sch. Bd.*, 354 F.3d 249, 257 n.4 (4th Cir. 2003); *see also Adams Outdoor Advert. Ltd. P'ship v. Town of Mount Pleasant*, No. 2:20-CV-03741-DCN, 2023 WL 4491197 (D.S.C. July 12, 2023). "If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable." *Newsom*, 354 F.3d at 257 n.4 (citing *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 758–59 (1988)).

In Count One, Plaintiffs allege that Maryland's RFL is unconstitutional as applied to Willey because it authorized a "warrant" to issue upon a standard less than probable cause in violation of the Fourth Amendment's warrant clause, as made applicable to the states through the Fourteenth Amendment. *See* ECF 53, at 30. State Defendants primarily counter that "because extreme risk protective orders are not warrants, Plaintiffs' claim under the Warrant Clause of the Fourth Amendment fails." ECF 63-1, at 25. The Court need not wade too deep into the details of Willey's as-applied challenge because the Court concludes that the ERPO issued against Willey *was* unquestionably based on probable cause.[17]

As discussed, Maryland's RFL provides that a judge may issue a temporary ERPO if there are "reasonable grounds to believe that the respondent poses an immediate and present danger of causing personal injury to the respondent, the petitioner, or another by possessing a firearm." PS § 5-604(a)(1). In the same proceeding, however, "[i]f the judge finds probable cause to believe that the respondent meets the requirements for emergency evaluation under Title 10, Subtitle 6 of

---

[17] The State Defendants argue that this means Willey does not have Article III standing to assert his as-applied claim. *See* ECF 114, at 2–4. However, the Court observes the Fourth Circuit's warning that it "must not confuse standing with the merits." *Covenant Media Of SC, LLC v. City of N. Charleston*, 493 F.3d 421, 429 (4th Cir. 2007) (quoting *Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1256 (10th Cir. 2004)). Because Willey alleges a personal injury—issuance of the ERPO against him—that was authorized by the alleged unconstitutional RFL and could be redressable by nominal damages, the Court concludes that Willey has standing to assert the as-applied challenge. Nevertheless, the Court concludes that Willey's as-applied challenge fails on the merits.

the Health–General Article, the judge *shall* refer the respondent for emergency evaluation." PS § 5-604(a)(4) (emphasis added). Under § 10-623 of the Health–General Article, the Court must approve a petition for an emergency evaluation if it "finds probable cause to believe that the emergency evaluee has shown the symptoms of a mental disorder and that the individual presents a danger to the life or safety of the individual or of others." HG § 10-623(b).

The State Defendants point out that the "statutory scheme calls on a judge to make the same underlying finding, based on the same underlying record, with respect to both the issuance of an extreme risk protective order and a referral for an emergency evaluation." ECF 114, at 3. "Thus, when a judge makes a finding that there is probable cause to support a referral for an emergency evaluation, that same judge will have in turn made a finding that there is probable cause to support the issuance of an extreme risk protective order." *Id.* In other words, where a judge finds probable cause of an imminent danger necessary to support a referral for an emergency evaluation, that judge will necessarily have also found by probable cause the imminent danger sufficient to support issuance of an ERPO. *See id.*

That is exactly what occurred here. At the temporary ERPO hearing, the judge, without referencing any particular standard, first announced that the "[c]ourt finds that the Respondent posed an immediate and present danger to cause personal injury to the Petitioner and others." ECF 85-1, at 1, 4:2–4. Then, the judge stated: "Having found probable cause under title 10, subtitle 6 (inaudible) shown symptoms of a mental disorder and present a danger to the life and safety of themselves or others. The court refers the Defendant for an emergency evaluation as well." *Id.* at 2, 6:8–14. As indicated on the temporary ERPO issued to Willey, the District Court of Maryland ordered Willey to surrender all firearms and ammunition in his possession to law enforcement

27

authorities and prohibited him from purchasing or possessing any firearm or ammunition for the duration of the order, and also stated:

> *Having found probable cause* under Title 10, Subtitle 6 of the Health General Article that the respondent has shown symptoms of a mental disorder and that they present danger to the life and safety of themself or others, the court refers the respondent for an emergency evaluation. An Endorsement and Order for Emergency Evaluation Based on Petition for Extreme Risk protective Order . . . is attached.

ECF 58-3, at 3 (emphasis added).

Willey asserts that statute was unconstitutional as-applied to him because a temporary ERPO, which he describes as a warrant, issued upon a standard less than probable cause and thus subjected him to an unreasonable seizure of his firearms. *See* ECF 53, at 34 ¶ 135. However, even assuming that the ERPO is a warrant, Willey was not subject to the unconstitutional application he alleges because the District Court of Maryland actually found by probable cause that Willey presented an imminent danger of physical harm to himself or others related to symptoms of a mental disorder, which in his case necessarily related to his possession of firearms. ECF 85-1, at 2, 6:8–14. Plaintiffs counter that the Fourth Amendment's particularity requirement prevents that conclusion because a "search warrant may only be as broad as the underlying probable cause permits," and the ERPO and the emergency evaluation have different scopes. ECF 111, at 2.[18] Assuming without deciding that an ERPO is effectively a warrant under the Fourth Amendment, it is of course true that "[t]he Fourth Amendment requires that a warrant be 'no broader than the

---

[18] To the extent this is an attempt to assert an argument about the Fourth Amendment warrant clause's particularity requirement, the Court notes that Plaintiffs have not sufficiently argued that Maryland's RFL violates the particularity requirement of the Fourth Amendment's warrant clause, nor is any lack of particularity in the ERPO the injury Willey complains of in this lawsuit. *See* ECF 53, at 30 ¶ 118 (emphasizing the "probable cause" standard in the text of the Fourth Amendment); ECF 53-1, at 53–54 ¶ 93 (striking from the second amended complaint discussions of particularization related to probable cause); *see also* ECF 58 (not containing any argument related to particularity requirement); ECF 82 (same); ECF 94 (same).

28

probable cause on which it is based.'" *United States v. Hurwitz*, 459 F.3d 463, 473 (4th Cir. 2006) (quoting *United States v. Zimmerman*, 277 F.3d 426, 432 (3rd Cir. 2002)). But the probable cause which may justify an emergency evaluation will sometimes be based on and encompass the same factual showing that justified the issuance of the temporary ERPO. *Compare* PS § 5-604(a)(1) (permitting judge to issue temporary ERPO if there are "reasonable grounds to believe that the respondent *poses an immediate and present danger of causing personal injury to the respondent, the petitioner, or another by possessing a firearm*" (emphasis added)), *with* HG § 10-623(b) (requiring Court to approve petition for emergency evaluation if "probable cause to believe that the emergency evaluee *has shown the symptoms of a mental disorder and that the individual presents a danger to the life or safety of the individual or of others*" (emphasis added)). Importantly, and fatal to Willey's as-applied challenge, this overlap in relevant findings occurred here. The scope of the probable cause that supported Willey's referral for an emergency evaluation was identical to the reasonable grounds that supported the issuance of the temporary ERPO against him because both arose from the same set of facts. *See* ECF 85-1, at 1–2. Accordingly, Willey's as-applied challenge to Maryland's RFL pursuant to the Fourth and Fourteenth Amendments fails.

### iii.    *Facial Challenge*

Plaintiffs also bring a facial challenge to Maryland's RFL. *See* ECF 53, at 30. "A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles v. Patel*, 576 U.S. 409, 415 (2015). Facial challenges "are 'the most difficult . . . to mount successfully.'" *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Facial challenges tend to be "'disfavored' because they 'often rest on speculation,' 'short circuit the democratic process,' and 'run contrary to the fundamental principle of judicial restraint.'" *Bianchi v. Brown*, 111 F.4th 438, 451 (4th Cir. 2024) (en banc) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008)). "Under a facial challenge, a plaintiff may sustain

its burden in one of two ways." *Educ. Media Co. at Va. Tech v. Insley,* 731 F.3d 291, 298 n.5 (4th Cir. 2013). "First, a plaintiff asserting a facial challenge 'may demonstrate that no set of circumstances exists under which the law would be valid, or that the law lacks any plainly legitimate sweep.'" *Id.* (internal quotation marks omitted) (quoting *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.,* 721 F.3d 264, 282 (4th Cir. 2013) (en banc)). "Second, a plaintiff asserting a facial challenge may also prevail if he or she 'show[s] that the law is overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Greater Balt. Ctr. for Pregnancy Concerns, Inc.,* 721 F.3d at 282).

The Supreme Court has clarified that facial challenges to statutes authorizing searches brought under the Fourth Amendment "are not categorically barred or especially disfavored." *Patel,* 576 U.S. at 415. In *City of Los Angeles v. Patel,* the Supreme Court observed that its "precedents demonstrate not only that facial challenges to statutes authorizing warrantless searches can be brought, but also that they can succeed." *Id.* at 418; *see also id.* at 416–17 (collecting cases). When assessing whether "a 'law is unconstitutional in all of its applications,'" the Court considers "only applications of the statute in which it actually authorizes or prohibits conduct." *Id.* at 418 (quoting *Washington State Grange v. Washington State Republican Party,* 552 U.S. 442, 449 (2008)).

However, before the Court considers the merits of Plaintiffs' facial challenge, it considers whether they have standing to assert such a challenge as a prudential matter. "Under the Article III case-or-controversy requirement, a litigant must assert a concrete interest of his own." *MacDonald v. Moose,* 710 F.3d 154, 161 (4th Cir. 2013) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)). As the Supreme Court has explained, "[a] party has standing to

30

challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights. As a general rule, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations."[19] *Cnty. Ct. of Ulster Cnty., N. Y. v. Allen*, 442 U.S. 140, 154–55 (1979) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973)). The Supreme Court's ruling on standing to pursue a facial challenge in *Ulster County* "depended on an unfavorable threshold resolution of an as-applied challenge." *MacDonald*, 710 F.3d at 162. "If the statute had been unconstitutionally applied to the petitioners in *Ulster County*, their own rights would have been adversely affected, and, therefore, reaching the merits of their facial challenge may have been appropriate." *Id.* However, where the opposite is true, *Ulster County* establishes that plaintiffs whose rights have not been adversely affected generally have no standing to assert a facial challenge. *See Ulster Cnty.*, 442 U.S. at 154–55 (holding that the lower court had unnecessarily addressed the issue of a statute's facial validity).

The Court is thus constrained to find that the failure of Willey's as-applied challenge dooms Plaintiffs' facial challenge. As Judge Agee recently emphasized, *Ulster County* offers "clear guidance: if the alleged constitutional defect does not arise with respect to [a plaintiff], then he lacks standing to bring a facial challenge on behalf of other potential" plaintiffs.[20] *See United*

---

[19] "A limited exception has been recognized for statutes that broadly prohibit speech protected by the First Amendment." *Ulster Cnty.*, 442 U.S. at 155.

[20] Plaintiff The Second Amendment Foundation also purports to assert the facial Fourth Amendment challenge. *See* ECF 53, at 30. "In determining whether organizational standing exists, 'a court conducts the same inquiry as in the case of an individual.'" *Edmondson Cmty. Org., Inc. v. Mayor & City Council of Baltimore*, 797 F. Supp. 3d 497, 519 (D. Md. 2025) (quoting *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1250 (4th Cir. 1991)). However, The Second Amendment Foundation has not asserted injury to itself as an organization here. Instead, The Second Amendment Foundation attempts to establish what is sometimes referred to as "associational standing" to bring a facial challenge. *See Equal Access Educ. v.*

31

*States v. Price*, 111 F.4th 392, 414 n.3 (4th Cir. 2024) (Agee, J., concurring), *cert. denied*, 145 S. Ct. 1891 (2025); *cf. Schuchardt v. Sousa*, 803 F. Supp. 3d 1100, 1106 (D. Idaho 2025) ("'[C]ourts are not roving commissions assigned to pass judgement on the validity of the Nation's laws,' and constitutional judgments 'are justified only out of the necessity of adjudicating rights in particular cases between the litigants brought before the Court.' As [a] result, courts must usually examine a

---

*Merten*, 305 F. Supp. 2d 585, 600 (E.D. Va. 2004). "[A]n association has standing to bring suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted or the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). "The Supreme Court has clarified that to show that its members would have standing, an organization must 'make specific allegations establishing that at least one *identified member* had suffered or would suffer harm.'" *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (emphasis in original) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)). "This requirement of naming the affected members has never been dispensed with in light of statistical probabilities, but only where *all* the members of the organization are affected by the challenged activity." *Summers*, 555 U.S. at 498–99.

The Second Amendment Foundation asserts that it "and its other members, and all other individuals who own or otherwise possess firearms in Maryland, face the certainty that the unconstitutional issuance of Interim and Temporary ERPOs upon less than 'probable cause' and without any right to counsel will be repeated, since Maryland's formidable and prolific Red Flag Assembly Line operates at a furious pace." ECF 53, at 23 ¶ 88. However, as State Defendants observe, the second amended complaint contains no factual allegations beyond this general assertion that other members face an actual or imminent injury in fact. As the Fourth Circuit has explained, "[t]he threatened injury must be certainly impending,' and '[a]llegations of possible future injury' are insufficient." *Hierholzer v. Guzman*, 125 F.4th 104, 113 (4th Cir. 2025) (quoting *Buscemi v. Bell*, 964 F.3d 252, 259 (4th Cir. 2020)). And any assertion Willey has made, as a member of The Second Amendment Foundation, that there is an "actual or imminent" possibility that he will be subject to an ERPO again is doubtful, given that nearly three years have passed without such a harm coming to pass. *See* ECF 114, at 4 n.1; *cf. City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 413–14 (2015) (considering a standalone facial Fourth Amendment challenge where the parties agreed the sole issue in the action would be the facial challenge and "stipulated that respondents ha[d] been subjected to mandatory record inspections under the ordinance without consent or a warrant"); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (finding plaintiff did not show sufficient likelihood he would suffer future injury to establish standing for injunctive relief, despite having alleged he suffered the wrong in the past). Accordingly, the Court concludes that The Second Amendment Foundation has not established the first prong of associational standing without Willey grounding its facial challenge.

challenged statute as applied to the plaintiff before considering whether the statute is void on its face." (alterations added) (quoting *Kashem v. Barr*, 941 F.3d 358, 375 (9th Cir. 2019)). Accordingly, Plaintiffs' facial Fourth Amendment challenge will also be dismissed.

### 2. Count Two: Fourteenth Amendment

In Count Two, Plaintiffs allege that Maryland's RFL is unconstitutional under the Due Process Clause of the Fourteenth Amendment "because [the RFL] contains no right to present evidence at a Temporary ERPO hearing." ECF 53, at 35 ¶ 138 (alteration added). Here, too, Plaintiffs assert both an as-applied challenge as to Willey and a facial challenge. *See id.* at 24. The Court begins with Willey's as-applied challenge.

As an initial matter, the Court observes that Maryland's RFL does not require a temporary ERPO hearing to be an *ex parte* proceeding. *See* PS § 5-604(a)(1) ("After a hearing on a petition, whether ex parte *or otherwise*, a judge may enter a temporary extreme risk protective order . . . ." (emphasis added)). It is true that in the context of an interim ERPO, which will only issue outside of court hours when a petition is presented to a District Court commissioner, the consideration of the petition is necessarily *ex parte*. *See* PS §§ 5-602(b)(3), 5-603. Indeed, with an interim ERPO, the RFL does not explicitly require a hearing to be held. *See id.* § 5-603. However, if an interim ERPO issues, then when the respondent is served with the interim ERPO, the respondent necessarily receives notice of the temporary ERPO hearing, to be held within two business days. *See* PS § 5-603(b). Having received such notice, the respondent may attend the temporary ERPO hearing and the presiding judge may permit the respondent to present evidence. *See* PS § 5-604(a)(1). In other instances, as was the case here, the temporary ERPO proceeding is the first step in the ERPO process, and the respondent is not likely to have notice of the proceedings.

State Defendants first advance an argument about the scope of Plaintiffs' challenge. *See* ECF 63-1, at 42–43. They assert that because the facts at issue here did not involve the issuance

33

of an interim ERPO, but only a temporary ERPO, "no plaintiff in this case has standing" to challenge "due process as to a *second*-step temporary extreme risk protective order hearing." ECF 63-1, at 42 (emphasis in original). The Court agrees that Willey may only advance an as-applied challenge to the provisions of Maryland's RFL which were actually enforced against him and turns to the merits of his as-applied challenge. *Cf. Pack v. O'Malley*, Civ. No. L-05-3081, 2007 WL 9735469, at *2 n.5 (D. Md. Feb. 16, 2007) ("Because but no such law was ever applied to him, Pack has no standing to sue on this issue.").[21]

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (alteration in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "[T]he specific dictates of due process generally requires consideration of three distinct factors:"

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

---

[21] Willey does not challenge the process afforded by the final ERPO hearing, nor could he as the process he claims he is due is explicitly provided for in the statute. A final ERPO hearing must be held prior to the issuance of a final ERPO; respondent receives notice of the hearing and is required to have the opportunity to be heard. PS § 5-605(a), (b)(2)(i); *see Todman v. Mayor & City Council of Baltimore*, 631 F. Supp. 3d 314, 328 (D. Md. 2022) ("At bottom, procedural due process requires fair notice of impending state action and an opportunity to be heard." (citation omitted)), *aff'd*, 104 F.4th 479 (4th Cir. 2024). Additionally, Willey cannot argue he was subject to unconstitutional procedural due process during the final ERPO hearing because before the presentation of evidence, "Powell and Webb informed the Court that the County and Webb would not be pursuing the case." ECF 53, at 23 ¶ 85. "Consequently, the proceeding was terminated in Willey's favor on the record but without any opportunity to make legal arguments or offer substantive testimony." *Id.*

*Id.* at 335; *see also Miranda v. Garland*, 34 F.4th 338, 358 (4th Cir. 2022).

The Supreme Court has "indicated that due process ordinarily requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." *Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 299 (1981). However, "summary administrative action may be justified in emergency situations." *Id.* at 299–300 (collecting cases); *see also Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 396 (4th Cir. 1990). ("[T]here is no constitutional requirement of a pre-deprivation hearing under emergency circumstances."). "The question then, is whether [Maryland's RFL] falls under this emergency situation exception to the normal rule that due process requires a hearing prior to deprivation of a property right." *See Hodel*, 452 U.S. at 300. For the reasons described below, the Court concludes that it does.

The Supreme Court "has permitted the government to deprive an individual of a constitutionally protected interest without a pre-deprivation hearing in" a significant number of cases, including, to name a few, "ordering the sequestration of a debtor's personal property," "seizing movable property prior to a forfeiture action," and "terminating disability benefits." Joseph Blocher & Jacob D. Charles, *Firearms, Extreme Risk, and Legal Design: "Red Flag" Laws and Due Process*, 106 Va. L. Rev. 1285, 1322–23 (2020) (first citing *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 619–20 (1974); then citing *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 664 (1974); and then citing *Mathews*, 424 U.S. at 335, 349). In a particularly poignant example, the Fourth Circuit has observed that a prior hearing is not always required in child custody matters since "[d]ue process does not mandate a prior hearing in cases where emergency action may be needed to protect a child." *Weller*, 901 F.2d at 393. "[I]n those extra-ordinary situations where deprivation of a protected interest is permitted without prior process, the constitutional requirements of notice and an opportunity to be heard are not eliminated, but merely

postponed." *Id.* (internal quotation marks omitted) (quoting *Hooks v. Hooks*, 771 F.2d 935, 942 (6th Cir. 1985)).

Here, like those cases, Maryland's RFL is premised on the existence of an emergency: that respondent "poses an immediate and present danger of causing personal injury to the respondent, the petitioner, or another by possessing a firearm." PS § 5-602(a)(l)(i)-(ii). The Court thus applies the *Mathews* factors to the process Willey was subject to keeping in mind the exigencies necessarily at the heart of ERPO proceedings. First, the Court considers "the private interest that will be affected by the official action." *Mathews*, 424 U.S. at 335. Here, Willey's interest is in the continued possession of his firearms and ammunition. That interest is significant. As this Court has before observed, "interest in the continued ownership of [ ] personal possessions" concerns 'the most basic of property interests encompassed by the due process clause.'" *Todman v. Mayor & City Council of Baltimore*, 631 F. Supp. 3d 314, 327 (D. Md. 2022) (quoting *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1031 (9th Cir. 2012)), *aff'd*, 104 F.4th 479 (4th Cir. 2024). Moreover, possession of the property at issue here—firearms—is a constitutional right. *See* U.S. Const. Amend. II.

Second, the Court must consider "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Here, significant procedural protections exist to mitigate the risk of such erroneous deprivation. First, the individual petitioning for an ERPO must swear under penalty of perjury that there are specific facts known to the petitioner establishing that the respondent "poses an immediate and present danger of causing personal injury to the respondent, the petitioner, or another by possessing a firearm." PS § 5-602(a)(l)(i)-(ii). Moreover, the petition is evaluated by a judicial officer—either a commissioner, for an interim ERPO, or a District Court

36

judge, for a temporary ERPO—who must find that there are "reasonable grounds" for its issuance. PS §§ 5-603(a)(1), 5-604(a)(1). And in making that determination, the officer is commanded to consider not just the "relevant evidence presented by the petitioner," but also "the amount of time that has elapsed since any of the events described in the petition." PS §§ 5-603(a)(2), 5-604(a)(2).

In addition to *pre*-deprivation judicial ratification, a respondent subject to a temporary ERPO is entitled to prompt *post*-deprivation judicial ratification, too. As the Fourth Circuit remarked in *Weller*, "in those 'extra-ordinary situations' where deprivation of a protected interest is permitted without prior process, the constitutional requirements of notice and an opportunity to be heard are not eliminated, but merely postponed." 901 F.2d at 393; *see also id.* ("If followed, Maryland's custody statutes may well be constitutionally adequate, since they provide for a hearing prior to a change in custody, or shortly after the emergency removal of a child."). Under Maryland's RFL, a temporary ERPO is effective for seven days after it is served, during which time a final ERPO hearing must be held. PS § 5-604(c). A respondent has the right to be heard at the final hearing, and a petitioner faces a heightened burden of proof—the "clear and convincing" standard. *See id.* § 5-605. Further, upon expiration of an ERPO, law enforcement must notify the respondent and, upon request of the respondent, must return all firearms and ammunition to the respondent no later than fourteen days after the expiration of an interim or temporary ERPO, fourteen days after a court terminates a final ERPO, or forty-eight hours after the expiration of a final ERPO. *Id.* § 5-608(b).

Indeed, Willey's case exemplifies the value of prompt post-deprivation judicial ratification. The temporary ERPO issued on June 15, 2023, and Willey surrendered his firearms to law enforcement that same day. ECF 53, at 21 ¶¶ 77–78. Seven days later at the final ERPO hearing, on June 22, 2023, where Webb faced a heightened standard of proof and "Willey appeared," the

37

petition was ultimately dismissed. *Id.* at 22–23 ¶¶ 84–86. On June 27, 2023, the deputies returned Willey's firearms and ammunition. *Id.* at 23 ¶ 87. In total, he was deprived of his firearms for twelve days. *Id.* While the resolution and total length of deprivation in Willey's case will likely not be every respondent's experience under Maryland's RFL, Willey's case reflects the relatively short length of time respondents can be deprived of their property without a full-blown hearing on the matter.

Finally, the Court must weigh "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. The government's interest in conducting a summary proceeding to prevent grievous physical injury or loss of life weighs heavy. "Indeed, deprivation of property to protect the public health and safety is '[o]ne of the oldest examples' of permissible summary action." *Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 300 (1981) (quoting *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 599 (1950)). As the First Circuit has succinctly observed, "[t]he need for speed, in other words, permits the government to take action that may cause a loss to property without first notifying the owner of the property or waiting to hear what that owner has to say, even though the government might have saved itself from making a costly mistake by taking the time to give notice and to wait for a response." *S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc.*, 775 F.3d 82, 86 (1st Cir. 2014); *see also San Geronimo Caribe Project, Inc. v. Acevedo-Vila*, 687 F.3d 465 (1st Cir. 2012) ("In a situation involving a potential emergency, as here, to require additional predeprivation safeguards would defeat the very purpose of the emergency statute.").

For those reasons, the Court cannot conclude that Maryland's RFL failed to provide Willey with constitutionally adequate pre-deprivation process and post-deprivation remedy, nor can it

38

conclude that the statue is facially deficient for the same reasons. *See United States v. Timms,* 664 F.3d 436, 449 n.12 (4th Cir. 2012) ("To prevail on their facial challenge, plaintiffs must establish that no set of circumstances exists under which the Act would be valid. By finding the statute valid as applied to these plaintiffs, the facial challenge fails as well." (quoting *Urofsky v. Gilmore,* 216 F.3d 401, 427 n.1 (4th Cir.2000)). Accordingly, Plaintiffs' procedural due process challenge fails, and Count Two of the complaint is dismissed.

### 3. Count Three: Sixth and Fourteenth Amendments

In Count Three, Plaintiffs allege that Maryland's RFL is unconstitutional as-applied to Willey and facially under the Sixth Amendment, as incorporated against the states by the Fourteenth Amendment,[22] because it "contains no right-to-counsel provision, as is required for quasi-criminal proceedings." ECF 53, at 37 ¶ 148. However, there is no Sixth Amendment right to counsel in the types of proceedings at issue here, and so Plaintiffs' Sixth Amendment § 1983 claim fails as a matter of law.

"The Sixth Amendment guarantees indigent defendants, in state and federal criminal proceedings, appointed counsel in any case in which a term of imprisonment is imposed." *United States v. Bryant,* 579 U.S. 140, 143 (2016) (citing *Scott v. Illinois,* 440 U.S. 367, 373–74 (1979)). The Sixth Amendment's right to counsel does not depend on an explicit request by an individual, but rather attaches "when formal judicial proceedings are initiated against an individual by way of indictment, information, arraignment, or preliminary hearing." *United States v. Gouveia,* 467 U.S.

---

[22] "A right to counsel must find its constitutional basis in either the commands of the Sixth Amendment or the general guarantee of fundamental due process granted by the Fourteenth Amendment." *Ferguson v. Gathright,* 485 F.2d 504, 505–06 (4th Cir. 1973). However, Plaintiffs have styled their right-to-counsel claim solely under the Sixth Amendment, not the Due Process Clause of the Fourteenth Amendment. *See* ECF 53, at 35–36 ¶¶ 140–42, 149.

180, 185 (1984). "[T]he right to counsel given by the Sixth Amendment extends only to criminal or quasi-criminal cases[.]" *Ferguson v. Gathright*, 485 F.2d 504, 505 (4th Cir. 1973).

Plaintiffs attempt to characterize interim and temporary ERPO hearings as "quasi-criminal" proceedings to which the Sixth Amendment right attaches. But *Ferguson v. Gathright* illustrates why Plaintiffs' argument fails. There, the Fourth Circuit considered whether a driving license revocation proceeding was invalid for failure of the state to furnish an individual with counsel. 485 F.2d at 505. Answering that question in the negative, the Fourth Circuit explained why a license revocation proceeding was distinct from a parole revocation proceeding, which is regarded as quasi-criminal and within the coverage of the Sixth Amendment. *Id.* at 506. "At the parole revocation, an adverse finding brings an immediate and automatic loss of liberty. No such result follows from a license revocation." *Id.* Rather, the individual subject to license revocation "comes under the threat of incarceration *only if* he subsequently determines to take the law into his own hands and to operate a motor vehicle on the public highway without a valid permit." *Id.*

Plaintiffs assert that ERPO proceedings "often" result in "the deprivation of liberty." ECF 53, at 36 ¶ 147. Even assuming that is true, Plaintiffs conflate the actual consequences of such proceedings with their downstream effects, as the appellant did in *Ferguson*. A respondent would "come under threat of incarceration" for violating an ERPO only if that respondent took, or failed to take, some additional action related to the possession of firearms following the ERPO's issuance. *See Ferguson*, 485 F.2d at 506. Consequently, appointment of counsel in a temporary ERPO hearing is not mandated under the Sixth Amendment. *See Haverstraw Town Police v. C.G.*, 190 N.Y.S.3d 588, 599 (N.Y. Sup. Ct. 2023) (finding that New York's RFL did not violate the Sixth Amendment because "[a]n ERPO proceeding is not criminal" and "[t]he suggestion that there could be future criminal proceedings is purely speculative").

Plaintiffs' arguments to the contrary are primarily based on the Third Circuit's unpublished decision in *Greco v. Bruck*, No. 21-1035, 2022 WL 1515375 (3d Cir. May 13, 2022). *See* ECF 58-1, at 30–31. However, in that decision, which is not binding on this Court, the Third Circuit held that the state-court proceedings at issue, which arose under New Jersey's red-flag law, were quasi-criminal for purposes of *Younger* abstention, not for purposes of appointment of counsel pursuant to the Sixth Amendment. *See Greco*, 2022 WL 1515375, at *1–3. Moreover, as State Defendants point out, the term "quasi-criminal" is likely broader in the abstention context than it is for purposes of determining whether an individual is entitled to appointed counsel. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79 (2013) (noting that quasi-criminal proceedings "are characteristically initiated *to sanction* the federal plaintiff, *i.e.,* the party challenging the state action, for some wrongful act" (emphasis added)).

Plaintiffs' invocation of the Supreme Court's opinion in *Lassiter v. Department of Social Services of Durham County, North Carolina* is likewise unpersuasive. *See* ECF 58-1, at 32–33. It is true that the Supreme Court there observed that "it is the defendant's interest in personal freedom, and not simply the special Sixth and Fourteenth Amendments right to counsel in criminal cases, which triggers the right to appointed counsel." *Lassiter*, 452 U.S. 18, 25 (1981). But the Court went on to state that "as a litigant's interest in personal liberty diminishes, so does his right to appointed counsel." *Id.* at 26. Accordingly, the Supreme Court has held that even indigent probationers do not have a per se right to counsel at their revocation hearings. *See id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)). And "the Court has refused to extend the right to appointed counsel to include prosecutions which, though criminal, do not result in the defendant's loss of personal liberty." *Id.* (citing *Scott v. Illinois*, 440 U.S. 367 (1979)).

41

Accordingly, the Court concludes that Plaintiffs' Sixth Amendment claims fail as a matter of law, and Count Three of the second amended complaint will be dismissed.

### 4. State Immunity & the Eleventh Amendment

Defendants argue that, to the extent that Plaintiffs assert Counts One, Two, Three, and Four against the State Defendants in their official capacities as claims for money damages under 42 U.S.C. § 1983, such claims must be dismissed. *See* ECF 63-1, at 17. Eleventh Amendment immunity "limits the Article III jurisdiction of the federal courts to hear cases against States and state officers acting in their official capacities." *Kitchen v. Upshaw*, 286 F.3d 179, 183 (4th Cir. 2002). "The Eleventh Amendment grants 'an unconsenting State [immunity] from suits brought in federal court by her own citizens as well as by citizens of another State.'" *TFWS, Inc. v. Schaefer*, 242 F.3d 198, 204 (4th Cir. 2001) (quoting *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)). Although Maryland waived its sovereign immunity for certain actions brought in its state courts under the Maryland Torts Claims Act, Md. Code Ann., State Gov't §§ 12-101 – 12-110, it has not waived its immunity under the Eleventh Amendment for suits brought in federal courts. *Weller*, 901 F.2d at 397 ("The waiver of sovereign immunity in the Maryland Torts Claims Act clearly limits the state's waiver of immunity to actions brought in the Maryland state courts.").

There can be no dispute that any suit seeking money damages from Attorney General Brown—as a state official acting in his official capacity—fails to pass Eleventh Amendment muster. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office[, and a]s such, it is no different from a suit against the State itself." (citations omitted)). The question of Sheriff Phillips' immunity could, in some instances, be a more complicated question. Generally, "[u]nder Maryland law, the Sheriff is a *state* officer, not a *municipal* officer." *Valentine v. PrimeCare Med., Inc.*, 697 F. Supp.

3d 431, 447 (D. Md. 2023) (citing *Rossignol v. Voorhaar*, 321 F.Supp.2d 642, 651 (D. Md. 2004));

*Santos v. Frederick Cnty. Bd. of Comm'rs*, 346 F. Supp. 3d 785, 793 (D. Md. 2018) ("Sheriffs in

Maryland may be considered either state or, in limited circumstances, county officials."); *Dotson

v. Chester*, 937 F.2d 920, 928 (4th Cir. 1991) ("It all depends on the particular function the Sheriff

is performing."); *cf. McMillian v. Monroe County, Ala.*, 520 U.S. 781, 793 (1997) ("Alabama

sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their

counties."). Plaintiffs allege that Sheriff Phillips was enforcing a state law in his capacity as a

state officer, not that he was undertaking any duties of a Maryland county. *See, e.g.*, ECF 53, at 4

¶ 9. Accordingly, Eleventh Amendment immunity bars the claims for money damages against

both State Defendants. *Will*, 491 U.S. at 70.

### 5. Claims Against Sheriff Phillips

Plaintiffs assert two claims against Sheriff Phillips—Count One and Count Four. *See* ECF

53, at 30, 37. In Count One, Plaintiffs allege that Sheriff Phillips, through the issuance and service

of the ERPO, has "deprived and continue[s] to deprive Willey, other members of SAF, and all

RFL Respondents, of their fundamental and clearly established constitutional rights to be free from

unreasonable seizures and to not be subjected to seizures via warrant except upon 'probable

cause.'" ECF 53, at 34 ¶ 135 (alteration added). Because the Court concludes Count One should

be dismissed in full on other grounds, it need not address the State Defendants' arguments for the

dismissal of this claim as asserted against Sheriff Phillips.

In Count Four, which alleges a § 1983 claim for violation of the Second Amendment,

Plaintiffs allege that Sheriff Phillips, "via Webb's false RFL Petition and subsequent wrongful

seizure of Willey's firearms and ammunition, deprived Willey of his fundamental right to keep

and bear arms in his home and elsewhere." ECF 53, at 37–38 ¶ 153. The State Defendants make

two arguments for the dismissal of these claims against Sherriff Phillips. Among other things, the

43

State Defendants argue that Sheriff Phillips is shielded from liability for the claim asserted in Count Four. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal citation marks omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* (internal quotation marks omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

Officers whose only alleged wrongdoing is the enforcement of an order issued by a neutral magistrate are generally considered to have acted in an objectively reasonable manner. *See Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) ("Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or in 'objective good faith.'"); *Salmon v. Schwarz*, 948 F.2d 1131, 1140 (10th Cir. 1991) ("Schwarz contends that because he had no role in preparing the affidavit, and because the warrant issued by the magistrate was facially valid, his execution of the warrant is protected by the doctrine of qualified immunity. We agree."); *Turner v. Dammon*, 848 F.2d 440, 447 (4th Cir. 1988) (affirming the district court's finding of qualified immunity where the "trial court found that because the search was conducted pursuant to a valid warrant, the officers were entitled to immunity from any claim arising out of this search based upon the objective reasonableness of their conduct").

44

So too here. First, there is no allegation that Sheriff Phillips executed or served the ERPO on Willey. *See generally* ECF 53. But even if he had, a judicial officer, acting as authorized by Maryland's RFL, issued the ERPO in this case. *See* ECF 53, at 21 ¶ 76. Plaintiffs counter that "State Defendants declined to include the Supreme Court's full statement from *Messerschmidt v. Millender*, which clarified that 'the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure *does not end the inquiry into objective reasonableness.*'" ECF 82, at 12 (emphasis in original) (citation omitted). Rather, Plaintiffs point out that a "warrant may be so facially deficient—*i.e.,* in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Groh v. Ramirez*, 540 U.S. 551, 565 (2004) (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). But for the reasons explained in the Court's discussion of Count One, even assuming the ERPO is equivalent to a warrant, an executing officer reviewing the ERPO could rightly assume that the ERPO was ordered after a probable cause finding based on information provided by a qualified petitioner. *See* ECF 58-3, at 3. Moreover, there is no indication that the ERPO suffers from the infirmities Willey claims as it is not clearly deficient on its face and includes all details that such orders appear to require. *Id.* at 2–7. The Court thus agrees with State Defendants that, "[u]nder these circumstances, neither Sheriff Phillips nor his deputies had any reason to believe—whether as a matter of fact or of law—that the" ERPO was unconstitutional. ECF 63-1, at 23. Because any actions Sheriff Phillips took with respect to the ERPO satisfy the prong of qualified immunity related to objective legal reasonableness, the Court concludes that Count Four must be dismissed insofar as it is asserted against him.

45

### B.    County Defendants' Motion

The County Defendants move to dismiss all claims brought against them.[23]  *See* ECF 64. Specifically, the second amended complaint asserts Counts One (§ 1983 Fourth Amendment challenge), Four (§ 1983 Second Amendment challenge), Five (§ 1983 First Amendment retaliation challenge), and Six (malicious use of process under Maryland law) against the County Defendants. *See* ECF 53, at 30, 37–39.  For the same reasons described above, Count One is dismissed as to the County Defendants.  The Court addresses the remaining counts below, beginning with the state claim and then turning to the federal claims.

#### 1. Count Six: Malicious Use of Process

Count Six of the second amended complaint alleges a claim of malicious use of process under Maryland law.  ECF 53, at 39 ¶¶ 160–61.  As an initial matter, the Court notes that "Maryland regards suits for malicious use of process with disfavor because '[p]ublic policy requires that citizens be free to resort to the courts to resolve grievances without fear that their opponent will retaliate with a malicious use of process lawsuit against them.'"  *Wallace v. Mercantile Cnty. Bank*, 514 F. Supp. 2d 776, 789 (D. Md. 2007) (alteration in original), *aff'd*, 307 F. App'x 720 (4th Cir. 2009) (quoting *One Thousand Fleet Ltd. P'ship v. Guerriero*, 694 A.2d 952, 955–56 (Md. 1997)).

"The cause of action for malicious use of process has five elements and all must co-exist to maintain the action."  *One Thousand Fleet Ltd. P'ship*, 694 A.2d at 956.  Those elements are "(1) a civil proceeding instituted against the plaintiff; (2) without probable cause; (3) with malice; (4) that terminated in favor of the plaintiff; and (5) that inflicted a special injury upon the plaintiff

---

[23] The County Defendants "incorporate" in their motion "the legal defense of the statute contained in the State's Opposition to Motion for Preliminary Injunction and in support of its Motion to Dismiss." ECF 64-1, at 3.

which would not necessarily result in all such suits." *Hill v. B. Frank Joy, LLC*, Civ. No. TDC-15-1123, 2016 WL 11807298, at *1 (D. Md. Feb. 8, 2016) (citing *One Thousand Fleet Ltd. P'ship*, 694 A.2d at 956). The Supreme Court of Maryland has defined probable cause in this context as "a reasonable ground for belief in the existence of such state of facts as would warrant institution of the suit or proceeding complained of." *Wallace*, 514 F. Supp. 2d at 791–92 (quoting *One Thousand Fleet Ltd. P'ship*, 694 A.2d at 956), *aff'd*, 307 F. App'x 720 (4th Cir. 2009).

"The element that sets a particularly high bar for maintenance of the action is the establishment of damages by the plaintiff by 'arrest or imprisonment, by seizure of property, or other special injury which would not necessarily result in all suits prosecuted to recover for a like cause of action.'" *Id.* at 789–90 (quoting *One Thousand Fleet Ltd. P'ship*, 694 A.2d at 956). "To qualify as a 'special injury,' the damages must be different than those that ordinarily result from all suits for like causes of action." *Traore v. Baltimore Police Dep't*, Civ. No. MJM-22-793, 2023 WL 8600553, at *27 (D. Md. Dec. 12, 2023) (quoting *One Thousand Fleet Ltd. P'ship*, 694 A.2d at 959). "The mere expense and annoyance of defending a civil action is not a sufficient special damage or injury to sustain an action" for malicious use of process. *Id.* (quoting the same).

The County Defendants contend that dismissal is appropriate for two reasons. First, they argue that because Webb had probable cause to institute the ERPO proceeding against Willey, Willey is incapable of establishing the second element. ECF 64-1, at 12. Second, the County Defendants argue that because the matter was not terminated in Willey's favor but rather was dismissed at the request of Webb based on an agreement between the parties, Willey is incapable of establishing the fourth element. *Id.* Plaintiffs respond that the second amended complaint alleges in detail facts establishing that the County Defendants did not have probable cause to institute the ERPO proceeding. *See* ECF 94, at 11. Plaintiffs also contend that Maryland law

47

makes clear that a proceeding which is abandoned or dismissed is considered a favorable termination. *Id.* at 11–12.

As stated, probable cause in this context means "a reasonable ground for belief in the existence of such state of facts as would warrant institution of the suit or proceeding complained of." *Wallace*, 514 F. Supp. 2d at 791–92. "'[A]s a matter of law, a judgment or decree by a court of competent jurisdiction adverse to the defendant [in the original suit] is, in general, conclusive proof of probable cause,' even if the judgment is later reversed on appeal." *Charles v. Charles*, 336 A.3d 728, 742 (Md. App. 2025) (alteration in original) (internal quotation marks omitted) (quoting *Campbell v. Lake Hallowell Homeowners Ass'n*, 852 A.2d 1029, 1045 (Md. App. 2004)). The Appellate Court of Maryland has held, for example, that there was "conclusive proof" of "probable cause" where "the district court ruled in the appellee's favor in the initial suit and issued a peace order against the appellant" but "the circuit court later vacated the peace order on appeal." *Id.* (quoting the same). Accordingly, in *Charles v. Charles*, Maryland's intermediate appellate court held that where "a judicial officer found reasonable grounds to issue a protective order for [a w]ife," "[a]s a matter of law, then, [the w]ife had probable cause to initiate protective order proceedings against [her h]usband." *Id.* at 743. The same is true here. A Maryland district judge granted Webb's petition and found "reasonable grounds" to issue a temporary ERPO as to Willey, as well as "probable cause" to refer Willey for an emergency evaluation under the statute. *See* ECF 85-1, at 1, 4:2–4, at 2, 6:8–14; ECF 58-3, at 3. The Maryland courts have made clear that this establishes effectively conclusive evidence that probable cause existed based on the facts alleged to initiate the proceedings. *See Charles*, 336 A.3d at 743.

However, Willey does not just argue that Webb's accusations were legally insufficient to support "probable cause." Willey also argues that Webb made "perjurious accusations" that

48

Willey "had been 'making threats of violence by firearms to [Webb] and other departmental employees on numerous occasions.'" ECF 94, at 11 (alteration added) (quoting ECF 53, at 20 ¶ 75); *see also* ECF 53, at 20–21 ¶ 75 ("Webb's *false* and malicious allegations fell far short of 'probable cause' . . . ." (emphasis added)). In the parallel malicious prosecution context,[24] the Maryland appellate courts are clear: "[i]f the facts or inferences drawable from the 'probable cause' that motivated a criminal charge are clear and undisputed, the question is one of law for the court, but if such facts or inferences are disputed, it is a question of fact for the jury." *W. T. Grant Co. v. Guercio*, 238 A.2d 855, 858–59 (Md. 1968); *Keeton v. Darcars of Branch Ave., Inc.*, No. 1432, Sept. Term, 2024, 2025 WL 3771342, at *2 n.1 (Md. Ct. Spec. App. Dec. 31, 2025) ("In a claim for malicious prosecution, any underlying factual disputes pertaining to the existence of probable cause are for the jury to resolve, but the ultimate question of whether those facts establish probable cause is for the court alone to decide."). Although the Court has not located a Maryland case applying this principle to a malicious use of process claim, the Court concludes that it logically applies with equal force to such a claim. As Plaintiffs suggest, the question of, for example, whether Webb's statements that Willey had been making threats were truthful depends on the resolution of factual disputes based on evidence not yet before the Court. *See* ECF 94, at 11 (discussing affidavit of Webb attached to County Defendants' motion to dismiss).

The County Defendants' argument that the ERPO proceeding did not terminate in Willey's favor is also unavailing. The Supreme Court of Maryland has cited with favor Section 674(b) of the Second Restatement of Torts on the issue of favorable termination. *See One Thousand Fleet Ltd. P'ship*, 694 A.2d at 958 (citing Restatement (Second) of Torts § 674 cmt. j). Comment j of

---

[24] "'Malicious prosecution' in Maryland applies to criminal charges, but otherwise shares the same elements as malicious use of process." *One Thousand Fleet Ltd. P'ship*, 694 A.2d at 955.

49

the Second Restatement of Torts provides examples of when civil proceedings are terminated in favor of the person against whom they are brought, including "the withdrawal of the proceedings by the person bringing them." Restatement (Second) of Torts § 674 cmt. j (A.L.I. 1977). That is precisely what is alleged to have occurred here. *See* ECF 53, at 23 ¶ 85 ("However, before Webb could perjure herself again, Powell and Webb informed the Court that the County and Webb would not be pursuing the case."). Accordingly, Willey's malicious use of process claim against Webb in her personal capacity, Count Six, survives the County Defendants' motion to dismiss.

### 2. Federal Claims

#### i. *County Liability*

As an initial matter, the County Defendants argue that all federal claims against Dorchester County should be dismissed because Willey's § 1983 claims as alleged in Counts Four and Five challenge Webb's conduct, and "[t]here is no respondeat superior liability under Section 1983." ECF 64-1, at 15. By way of response, Plaintiffs argue that the County Defendants' argument "ignores the allegations that Webb acted in concert with the other members of her staff and employees of Dorchester County." ECF 94, at 14. The County Defendants have the better argument.

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims, and a municipality "cannot be held liable in a § 1983 action under a theory of respondeat superior." *Lee v. O'Malley*, 533 F. Supp. 2d 548, 553 (D. Md. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may

50

be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Liability attaches to a county in a § 1983 action only where the county "*itself* causes the constitutional violation at issue," such as if it causes a deprivation through an official custom, practice, or policy. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). The Supreme Court has established that a suit against a county for unconstitutional conduct can only be brought "under the standard set forth in *Monell*." *Nicholson v. Balt. Police Dep't*, Civ. No DKC-20-3146, 2021 WL 1541667, at *10 (D. Md. Apr. 20, 2021); *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 783 (1997) ("If the sheriff's actions constitute county 'policy,' then the county is liable for them." (citing *Monell*, 436 U.S. at 694)); *see also Peprah v. Williams*, Civ. No. GLR-18-990, 2019 WL 224245, at *5 (D. Md. Jan. 15, 2019). Plaintiffs nowhere reference *Monell* in their complaint or in their opposition to the County Defendants' motion to dismiss. *See* ECF 53, at 37–38; ECF 94, at 14–15.

Regardless, even if Plaintiffs had purported to assert their claim against Dorchester County pursuant to *Monell*, "[t]o adequately plead a *Monell* claim, a complaint must include more facts that could enable the Court to infer that the allegedly impermissible policy affected more than just the plaintiff." *Jacques v. Baltimore City Police Dep't*, Civ. No. 21-2682-BAH, 2023 WL 3198122, at *11 (D, Md. May 2, 2023). Plaintiffs' reference to the allegations that "Webb acted in concert with the other members of her staff and employees of Dorchester County, including at least Tyler Bennett ('Bennett'), who was present during at least one interaction between Webb and Willey, was responsible for damaging Willey's boat, and was present for at least one of the ERPO hearings before Judge Jews," ECF 94, at 14, does not permit the Court to infer that an impermissible *policy*

51

existed. Plaintiffs invoke the actions of just one other "employee" of Dorchester County, whose actions the County likewise cannot be held liable for under a respondeat theory of liability—whether the employee's actions were taken in concert with another employee or not. *See Peprah*, 2019 WL 224245, at *5. Accordingly, the remaining § 1983 claims asserted against Dorchester County cannot survive, and Dorchester County will be dismissed as a defendant in this action.

### *ii.    Count Four: The Second and Fourteenth Amendments*

Count Four of the second amended complaint alleges that "Webb's false RFL Petition and subsequent wrongful seizure of Willey's firearms and ammunition, deprived Willey of his fundamental right to keep and bear arms in his home and elsewhere" in violation of Willey's "fundamental and clearly established constitutional rights under the Second and Fourteenth Amendments." ECF 53, at 37–38 ¶¶ 153–54.

The County Defendants argue that Maryland's RFL is constitutional under the Second Amendment "[f]or the reasons stated in the State's briefing." ECF 64-1, at 10. However, the State Defendants' motion to dismiss does not advance directly relevant dismissal arguments related to Count Four as to the County Defendants.[25] *See* ECF 63-1; ECF 53. Even so, the County Defendants argue in the alternative that even if Maryland's RFL "were to be held unconstitutional" under the Second Amendment, "it was certainly not clearly established and [ ] Webb would be entitled to qualified immunity." ECF 64-1, at 10 (citing *City & Cnty. of San Francisco, Calif. v.*

---

[25] The claim is also asserted against Sheriff Phillips, but the State Defendants argue for dismissal of the claim as to him on other grounds. *See* ECF 63-1, at 20–24. The absence of the Second Amendment claim from the focus of the litigation at present is a noticeable departure from Plaintiffs' prior focus in this case, *see, e.g.*, ECF 15 (first motion for preliminary injunction; *see also Willey*, 2024 WL 3557937, at *13–19 (discussing the likelihood of success on the merits of Plaintiffs' Second Amendment claim). The shift in focus is perhaps related to the Supreme Court's recent decision in *United States v. Rahimi*, 602 U.S. 680 (2024), which was issued approximately one month before this Court's prior ruling on Plaintiffs' first motion for a preliminary injunction. *See Willey*, 2024 WL 3557937, at *13 n.14, *18 n.19.

*Sheehan*, 575 U.S. 600, 611 (2015)). Plaintiffs' opposition does not mention Count Four or attempt to defend its Second Amendment claim generally, nor does it respond to the qualified immunity arguments advanced by the County Defendants as to Webb specifically. *See* ECF 94.

"Judges in this district have held that, by failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim." *Muhammad v. Maryland*, Civ. No. ELH-11-3761, 2012 WL 987309, at *1 n.3 (D. Md. Mar. 20, 2012) (collecting cases). "Nevertheless, 'the Court need not grant a motion to dismiss based on the failure to file a timely opposition when the motion is plainly lacking in merit.'" *Id.* (quoting *United States v. Sasscer*, Civ. No. Y-97-3026, 2000 WL 1479154, at *2 n.6 (D. Md. Aug.25, 2000)). However, for the reasons stated below, the Court avoids attempting to parse the County Defendants' vague arguments related to Count Four because it concludes that Webb is entitled to qualified immunity as to this count. *See infra* Section III.B.2.iv.

### iii.   *Count Five: The First and Fourteenth Amendments*

Count Five of the second amended complaint alleges that the County Defendants retaliated against Willey in violation of the First Amendment, as incorporated against the states through the Fourteenth Amendment, because Willey contested the citations and notices of violation issued by Webb. ECF 53, at 38 ¶ 157. Specifically, Willey alleges that Webb's petition for a temporary ERPO as to Willey was the act of retaliation. *Id.* at 38–39 ¶ 158. Reciting the purported bases for Webb's ERPO petition, the County Defendants argue that "there is no plausible claim that [the ERPO] was the product of unlawful retaliation." ECF 64-1, at 10.

"To state a colorable First Amendment retaliation claim, a plaintiff 'must allege that (1) []he engaged in protected First Amendment activity, (2) the defendant[] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between

[his] protected activity and the defendant['s] conduct.'" *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (alterations in original) (quoting *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017)).

"The First Amendment protects both the affirmative right to speak and the right to be free from a public official's retaliation for exercising that right." *Heggins v. City of High Point*, No. 1:16-CV-977, 2017 WL 6514681, at *3 (M.D.N.C. Dec. 20, 2017) (citing *Adams v. Trs. of the Univ. of N.C.–Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011)). Willey alleges that he engaged in protected First Amendment activity by "consistently and over an extended period exercis[ing] his right 'to petition the Government for a redress of grievances,'" including "by contesting the Citations and Notices of Violation issued by Webb both in and out of court, including at his property, thereby angering her." ECF 53, at 38 ¶ 157 (alteration added) (citation omitted); *see also, e.g., id.* at 16 ¶ 54 (describing meeting between Willey, Willey's attorney, and Webb regarding citations), ¶ 55 (parties resolved complaint by consent order related to Willey's alleged yard infractions), at 17–18 ¶¶ 62–63 (Willey objected to Webb's behavior and called Webb or her behavior "stupid" during Webb's visit to Willey's property to serve notice of pending violations).

The County Defendants do not contest that Willey's conduct was protected First Amendment activity. Nor do County Defendants contest that Webb's filing of and pursuing an ERPO against Willey would constitute retaliation insofar as it would be "likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (citation omitted). Rather, the County Defendants instead rely on exhibits extraneous to the operative complaint to contend that there was no causal relationship between Willey's protected activity and Webb's conduct. *See*

54

ECF 64-1, at 12–11.[26] In response, Plaintiffs argue that the additional evidence County Defendants have attached to their motion suggests "they are continuing to actively target and harass Willey because of his participation in this lawsuit, in further violation of his First Amendment rights." ECF 94, at 22.

As an initial matter, the Court notes that it does not consider the non-integral exhibits the County Defendants cite in support of their arguments because, as discussed above, the Court construes the County Defendants' motion as a motion to dismiss. *See supra* Section II.C. Turning to the issue of causation, the Fourth Circuit has held that to establish a causal connection for purposes of a First Amendment retaliation claim, "a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of [the plaintiff] engaging in protected activity." *Constantine*, 411 F.3d at 501. "'Knowledge alone, however, does not establish a causal connection' between the protected activity and the adverse action." *Id.* (quoting *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)). "There must also be some degree of temporal proximity to suggest a causal connection." *Id.* Here, Willey alleges a contentious history, continuing over a period of two years, between Willey and Webb related to alleged zoning infractions. *See* ECF 53, at 15–18 ¶¶ 53–64. That contentious history culminated in an interaction on June 2, 2023, *see id.* at 17 ¶ 62, where Willey spoke out against Webbs' alleged behavior, and 13 days later Webb filed an ERPO petition against Willey, *see id.* at 18 ¶ 67. Where a period of

---

[26] Although it is somewhat unclear what the County Defendants' argument for dismissal is with respect to Willey's § 1983 First Amendment retaliation claim, the Court interprets the County Defendants' argument as a challenge to causation. *See* ECF 64-1, at 10 ("On the basis stated above regarding the reasons and actions of Ms. Webb in seeking the ERPO, there is no plausible claim that it was the product of unlawful retaliation . . . ."), at 11 ("Inexplicably, Plaintiffs again called this public servant who had been informed she was subject to death threats a perjurer in this litigation and elsewhere. These Defendants respectfully request that the Court put an end to this now.").

days elapsed from the last instance[27] Willey complained about Webb's alleged behavior related to zoning infractions to the alleged retaliatory conduct, the Court is satisfied that the operative complaint adequately alleges a causal connection between the First Amendment activity and Webb's alleged misconduct. *Cf. Constantine*, 411 F.3d at 501 (concluding that causation was sufficiently pled for a First Amendment retaliation claim where, "[a]t most, four months elapsed from the time [the plaintiff] complained about [a professor's] exam and the grade appeals process to the time of the defendants' alleged retaliatory conduct"). Accordingly, the Court will not dismiss Count Five on that basis.

---

[27] Willey alleges that he "promptly filed a complaint against Webb with the Sheriff's Office, which Phillips ultimately failed to act upon," and attached to an earlier complaint an exhibit purporting to be a "true and accurate copy of the Sheriff's Incident Report" related to the incident. ECF 53, at 18 ¶ 64; ECF 5-7, at 2–5. Although the second amended complaint does not allege when Willey filed the complaint, an earlier exhibit indicates that it was reported on June 2, 2023. ECF 5-7, at 2.

### iv. Qualified Immunity as to Webb

Finally, the Court addresses the County Defendants' argument that Webb is "entitled to qualified immunity"[28] with respect to the § 1983 claims Willey brings against her.[29] *See, e.g.*, ECF 64-1, at 9. "To sustain an action under § 1983, a plaintiff must demonstrate that: (1) he suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation was committed by a person acting under color of law." *Harts v. Calvert Cnty. Sheriff*, Civ. No. 22-3192-BAH, 2024 WL 944321, at *5 (D. Md. Mar. 5, 2024) (citing *Prigg v. Balt. Cnty. Dep't of Corr.*, Civ. No. JRR-22-3105, 2022 WL 17989640, at *2 (D. Md. Dec. 29, 2022)). "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that

---

[28] "Qualified immunity generally is not a defense to suits brought against county officials in their official capacities." *Cooper v. Smith*, No. CV293-70, 1994 WL 904047 (S.D. Ga. Aug. 4, 1994) (citing *Moore v. Morgan*, 922 F.2d 1553, 1556 (11th Cir. 1991)); *see also Fox v. Cnty. of Saginaw*, No. 19-CV-11887, 2021 WL 120855, at *8 n.7 (E.D. Mich. Jan. 13, 2021) ("Qualified immunity does not extend to counties, and the personal immunity of a county official does not shield the county from suit."), *aff'd sub nom. Fox v. Saginaw Cnty., Michigan by Bd. of Commissioners*, No. 21-1108, 2022 WL 523023 (6th Cir. Feb. 22, 2022). Accordingly, qualified immunity is available to Webb only to the extent that this suit is asserted against her in her individual capacity. *See* ECF 53, at 1 (suing Webb "personally and in her official capacity as Director of Planning & Zoning for Dorchester County"). To the extent the operative complaint alleges claims against Webb in her official capacity, such "official capacity claims against county officials are routinely dismissed as duplicative of claims against the county." *Fox*, 2021 WL 120855, at *8; *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell, supra*, local government units can be sued directly for damages and injunctive or declaratory relief.").

[29] County Defendants are not entitled to Eleventh Amendment immunity. By its terms, the Eleventh Amendment applies to states. *See* U.S. Const. Amend. XI. "Accordingly, the Supreme Court has ruled that the Amendment generally does not immunize political subdivisions of the state, such as counties and municipalities, even though such entities may execute part of the state's power." *Houck & Sons, Inc. v. Transylvania Cnty.*, 852 F. Supp. 442, 447 (W.D.N.C. 1993), *aff'd*, 36 F.3d 1092 (4th Cir. 1994). "[C]ounty officials sued in their official capacities would similarly not be protected by Eleventh Amendment immunity." *Id.* (citing *Dotson v. Chester*, 937 F.2d 920, 930 n.11, 932 (4th Cir. 1991)).

57

their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

When assessing a claim of entitlement to qualified immunity, courts apply a two-part test. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Under the first prong, courts determine "whether a constitutional right would have been violated on the facts alleged," and under the second prong, whether that constitutional right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 200. As to the second prong, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the law." *Id.* at 202. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Though often fashioned as a test in two parts, the Court may consider either prong of the test first. *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018); *see also Pearson*, 555 U.S. at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

Willey argues that a determination on qualified immunity is inappropriate at this stage of litigation because its resolution "'depends entirely on a credibility determination' between Plaintiffs' and the County Defendants' diverging portrayals of the dispute regarding Willey's property." ECF 94, at 18–19. However, a defendant can raise the qualified-immunity defense at both the motion to dismiss and summary judgment stage. *See Tobey v. Jones*, 706 F.3d 379, 393–94 (4th Cir. 2013) (citing *Behrens v. Pelletier*, 516 U.S. 299 (1996)); *see also Sales v. Grant*, 224 F.3d 293, 301 (4th Cir. 2000) (Widener, J., concurring in part and dissenting in part). "So long as qualified immunity does not turn on *disputed facts*, 'whether the officer's actions were reasonable

is a question of pure law.'" *Raub v. Bowen*, 960 F. Supp. 2d 602, 608 n.8 (E.D. Va. 2013) (emphasis in original) (quoting *Henry*, 652 F.3d at 531).

With respect to the Second Amendment claim, the Court concludes that Webb is entitled to qualified immunity. Although the Court's prior opinion addressed Plaintiffs' prior motion for a preliminary injunction related to the then-asserted facial constitutional challenge to Maryland's RFL under the Second Amendment, the Court observed that "[i]n the wake of *Bruen*, challenges to ERPO laws have been few and far between at both the state and federal level, and as of this writing, none of those challenges have been successful." *Willey*, 2024 WL 3557937, at *18 (collecting cases). Further, the Court cited with approval the statement that "there is nothing in the jurisprudence of *Heller* and *Bruen* to suggest that such proceedings are an affront to the Second Amendment." *Id.* (quoting *Haverstraw Town Police v. C.G.*, 190 N.Y.S.3d 588, 593–94 (N.Y. Sup. Ct. 2023)). The Court is not aware of, and Plaintiffs do not invoke, any case law which undermines those statements. Accordingly, the Court cannot conclude that Webb's conduct violated a "clearly established" Second Amendment right "of which a reasonable person would have known" based on case law existing at the time. *See King v. Riley*, 76 F.4th 259, 264–66 (4th Cir. 2023).

However, with respect to Willey's § 1983 First Amendment retaliation claim, the Court does not reach the same conclusion on the issue whether Webb enjoys qualified immunity. The County Defendants do not cite any case law or engage, beyond conclusory assertions, with the question of Webb's qualified immunity with respect to Count Five. *See* ECF 64-1, at 9 ("In any event, Defendant Webb did nothing wrong and her actions are entitled to qualified immunity for the reasons previously discussed and it cannot be said that Defendant Webb violated clearly established constitutional rights of Plaintiff."); ECF 94, at 18–19; ECF 96 (containing no mention

59

of the First Amendment retaliation claim); ECF 115 (stating without citation that Webb "should also be entitled to qualified immunity from the federal claims"). This omission is problematic, given that the burden of establishing entitlement to qualified immunity rests upon a defendant who invokes it. *See Henry v. Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007). Additionally, the Court does not believe the operative complaint provides it with sufficient facts to conduct the necessary qualified immunity analysis regarding whether Webb could have reasonably believed her actions were lawful. *See McDowell v. Town of Sophia*, No. 5:12-CV-01340, 2012 WL 3778837, at *11 (S.D.W. Va. Aug. 30, 2012) ("Thus, in order to determine if Defendants Capehart and Doe # 1 are entitled to qualified immunity, the Court would have to make a determination as to whether they 'could reasonably believe their actions were lawful.'" (citation omitted)), *report and recommendation adopted*, No. 5:12-CV-01340, 2013 WL 525177 (S.D.W. Va. Feb. 11, 2013). In the absence of robust briefing and in light of the potential of a developed factual record to bear on the issue, the Court will defer the question of Webb's qualified immunity as to Count Five until the record is developed more. *Cf. Tobey v. Jones*, 706 F.3d 379, 393 (4th Cir. 2013) ("It may be that discovery will reveal there is no genuine issue of material fact. Should this be the case, Appellants can move for summary judgment [on the issue of qualified immunity]."). Count Five thus survives as asserted against Webb in her personal capacity.

## C.    Preliminary Injunction

Plaintiffs renew their motion for a preliminary injunction prohibiting Defendants "from taking any action to enforce, or otherwise require any person or entity to comply with" Maryland's Red Flag Law, § 5-601 of the Public Safety Article of the Maryland Code. ECF 58, at 1. Plaintiffs' motion is limited to Counts One, Two, and Three of the second amended complaint, "as those Counts address Defendants' [alleged] denial, deprivation, and infringement of constitutional rights" related to Maryland's RFL. *Id.* at 19 (arguing that Plaintiffs have "a substantial likelihood

60

of success on the merits on their Fourth, Sixth, and Fourteenth Amendment claims"). Plaintiffs' request for a preliminary injunction necessarily overlaps with the Defendants' motions to dismiss Plaintiffs' claims that Maryland's RFL is unconstitutional. Because the Court, in resolving the motions to dismiss, concludes that Counts One, Two, and Three of the second amended complaint are dismissed, the Court will deny the pending motion for a preliminary injunction as moot.

## IV.   CONCLUSION

For the foregoing reasons, the State Defendants' motion to dismiss is **GRANTED**, Plaintiffs' motion for a preliminary injunction is **DENIED** as moot, and the County Defendants' motion is **GRANTED in part and DENIED in part**. Counts Five and Six of the second amended complaint as asserted by Willey against Webb in her personal capacity survive. Because those counts are asserted only by Willey, The Second Amendment Foundation is **DISMISSED** as party to this action.

A separate implementing order will issue.

Dated: <u>March 20, 2026</u>  

_____/s/_____  
Brendan A. Hurson  
United States District Judge
